William Hays Weissman, Bar No. 178976
wweissman@littler.com
Michael W. Nelson, Bar No. 287213
mwnelson@littler.com
LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, California  94597
Telephone:    925.932.2468
Fax No.:       925.946.9809

Attorneys for Defendant
MAXIM, INC., MAXIM MEDIA, INC. AND BIGLARI
HOLDINGS INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFRONIA

| | |
|---|---|
| JANE DOE, an Individual, | Case No. |
| Plaintiff, | |
| v. | **DEFENDANTS MAXIM, INC., MAXIM MEDIA, INC AND BIGLARI HOLDINGS INC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. SECTIONS 1331, 1441 AND 1446** |
| MAXIM, INC.; MAXIM MEDIA, INC.; Tl ADVERTISING LLC; BIGLARI HOLDINGS INC.; THOMAS HERD, individually; and DIMETRI HOGAN, individually, | |
| Defendant. | |

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4859-3235-2556.1 / 117062-1001

1  TO: THE CLERK OF THE ABOVE TITLED COURT, PLAINTIFF JANE DOE AND HER

2  COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE that Defendants MAXIM INC., MAXIM MEDIA INC., and

4  BIGLARI HOLDINGS INC. ("Maxim Defendants") hereby effect the removal of the below-

5  referenced action from the Superior Court in the State of California for the County of Los Angeles to

6  the United States District Court for the Central District of California. In support of its Notice of

7  Removal, the Maxim Defendants state the following grounds:

8      **1.**    *State Court Complaint:* On June 8, 2022, Plaintiff Jane Doe ("Plaintiff") filed this

9  action against Defendants in Superior Court of the State of California, County of Los Angeles, entitled

10  *Jane Doe v. Maxim, Inc., Maxim Media, Inc., T1 Advertising LLC, Biglari Holdings Inc., Thomas*

11  *Herd and Dimetri Hogan*, Case No. 22STCV18854. The Complaint alleges that Defendants enticed

12  Plaintiff to travel to Florida and Saint Lucia for photo shoots, where she was subjected to sexual

13  harassment and promised the cover and photo spread in Maxim Magazine. The Complaint contains 19

14  Causes of Action including: (1) Trafficking Victims Protection Act, 18 U.S.C. § 1591, (2) sexual

15  battery, (3) sexual assault, (4) gender violence, (5) sexual harassment in violation of the Fair

16  Employment and Housing Act ("FEHA") (Cal. Gov't Code §12940), (6) discrimination in violation

17  of FEHA, (7) failure to prevent harassment and discrimination in violation of FEHA, (8) retaliation in

18  violation of FEHA, (9) wrongful termination in violation of public policy, (10) aiding and abetting in

19  violation of FEHA, (11) discrimination in violation of Title VII of the Civil Rights Act of 1964, as

20  amended, (12) hostile work environment and quid pro quo sexual harassment in violation of Title VII,

21  (13) retaliation in violation of Title VII, (14) negligence, (15) negligent supervision, (16) negligent

22  failure to warn, train or educate, (17) intentional infliction of emotional distress, (18) negligent

23  infliction of emotional distress, and (19) violation of Saint Lucia's Equality Opportunity and

24  Treatment in Employment and Occupation Act.  Not all causes of action are alleged against all

25  Defendants. A true and correct copy of the Complaint service packet, including the Summons, is

26  attached as **Exhibit A**.

27      **2.**    *Service of Complaint:* On June 29, 2022, Plaintiff served the Maxim Defendants with

28  the Summons and Complaint by personal service through CSC.  **Exhibit A** comprises the entirety of

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4859-3235-2556.1 / 117062-1001

2

the pleadings, process, and orders that have been served on the Maxim Defendants in this matter.

**3.**     *Hearing on Complaint in State Court:* There is currently a hearing scheduled on an order to show cause for Plaintiff's failure to file a proof of service, scheduled for September 15, 2022, at 11:30 a.m. at the Superior Court of the State of California, County of Los Angeles, Department 62, located at 111 Hill Street, Los Angeles, California. A true and correct copy of court's minute order is attached as **Exhibit B**.

**4.**     *Federal Question Basis for Removal:* This case is a civil action over which this Court has original jurisdiction under 28 U.S.C. §1331, and is one which may be removed to this Court by the Maxim Defendants pursuant to 28 U.S.C. §§ 1441(a) given the claims arising under two federal laws, including the Trafficking Victims Protection Act, 18 U.S.C. § 1591 and Title VII of the Civil Rights Act of 1964, as amended, and the claims set forth in the Complaint thus arise out of the United States Constitution and the laws of the United States.

**5.**     *Timing of Removal*:  This removal is filed within thirty (30) days of June 29, 2022, the date on which Maxim Defendants were served with a copy of the Summons and Complaint.  *See* 28 U.S.C. 1446(b); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 346 (1999) (the thirty-day removal period runs from the service of the summons and complaint).

**6.**     Only the Maxim Defendants have been served in the state court action, and therefore no other defendants are required to join this Notice of Removal.  *See Destfino v. Reiswig*, 630 F.3d 952, 955 9th Cir. 2011) (codefendants not properly served need not join).

**7.**     This Notice of Removal has been signed by counsel for Maxim Defendants, in compliance with the requirements of 28 U.S.C. § 1446(a).

**8.**     Under 28 U.S.C. § 1441(a), venue of the removed action is proper in this Court as the district and division embracing the place where the state action is pending.

**9.**     The Notice to State Court and Plaintiff of Removal to Federal Court was filed in state court and served simultaneously herewith, in accordance with 28 U.S.C. §1446(d).

//

//

//

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4859-3235-2556.1 / 117062-1001

3

1    WHEREFORE, the Maxim Defendants respectfully submit that they have properly and timely

2  removed this action from the Superior Court of the State of California, County of Los Angeles, to this

3  Court.

4

5  Dated: July 29, 2022

6                                              LITTLER MENDELSON, P.C.

7

8                                              */s/ Michael W. Nelson*
                                               William Hays Weissman
9                                              Michael W. Nelson

10                                             Attorneys for Defendants Maxim Inc., Maxim
                                               Media Inc., and Biglari Holdings Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4859-3235-2556.1 / 117062-1001

4

# Exhibit A

Del: 6-29-22

**DEREK SMITH LAW GROUP, LLP**
Matt E.O. Finkelberg, (SBN 329503)
633 West 5th Street, Suite 3250
Los Angeles, CA 90071
Telephone:     (310) 602-6050
Facsimile:      (310) 602-6350
Email:          matt@dereksmithlaw.com

*Attorneys for Plaintiff JANE DOE*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JANE DOE,[1] an Individual, <br><br> Plaintiff, <br><br> vs. <br><br> MAXIM, INC.; MAXIM MEDIA, INC.; T1 ADVERTISING LLC; BIGLARI HOLDINGS INC.; THOMAS HERD, individually; and DIMETRI HOGAN, individually; <br><br> Defendants. | Case No. 22STCV18854 <br><br> COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES <br><br> 1. Trafficking Victims Protection Act 18 U.S. Code § 1591 <br> 2. Sexual Battery <br> 3. Sexual Assault <br> 4. Gender Violence <br> 5. Sexual Harassment in Violation of the Fair Employment and Housing Act [Cal. Gov't Code §12940(j)] <br> 6. Discrimination [Cal. Gov't Code §12940(A)] <br> 7. Failure to Prevent Harassment and Discrimination From Occurring in Violation of the Fair Employment and Housing Act [Cal. Gov't Code §12940(k)] <br> 8. Retaliation in Violation of the FEHA [Cal. Gov't Code §§12940(h)] <br> 9. Wrongful Termination in Violation Of Public Policy <br> 10. Aiding and Abetting In Violation Of Gov't Code §§12940 Et Seq. <br> 11. Discrimination Under Title VII <br> 12. Hostile Work Environment and Quid Pro Quo Sexual Harassment Under Title VII <br> 13. Retaliation Under Title VII <br> 14. Negligence <br> 15. Negligent Supervision |

---

[1] Because of the nature of the allegations herein, Plaintiff is identified by a pseudonym in order to preserve her confidentiality and to avoid any potential vilification or harm, pursuant to applicable law, including *Starbucks Corp. v. Superior Ct.* (2008) 168 Cal. App. 4th 1436.

16. Negligent Failure to Warn, Train, or Educate
17. Intentional Infliction of Emotional Distress
18. Negligent Infliction of Emotional Distress
19. Violation of Saint Lucia's Equality
    Opportunity and  Treatment in employment
    and Occupation Act

DEMAND FOR JURY TRIAL

**COMES NOW PLAINTIFF, JANE DOE,** and for causes of action against the Defendants and each of them, alleges as follows upon information and belief:

## I.

## PARTIES

1.      At all times relevant for purposes of this Complaint, Plaintiff, JANE DOE ("Plaintiff") was and is an individual female residing in Los Angeles, California.

2.      At all times material, Defendant MAXIM, INC. ("MAXIM") was and is a professional corporation doing business in the State of California, with their principal place of business located at 415 Madison Avenue, New York, NY 10017. Defendant MAXIM held supervisory authority over Plaintiff, controlling various tangible aspects of Plaintiff's employment, including the ability to hire and fire Plaintiff.

3.      At all times material, Defendant MAXIM MEDIA ("MEDIA") was and is a corporation doing business in the State of California, with their principal place of business located at 415 Madison Avenue, New York, NY 10017. Respondent MEDIA held supervisory authority over Plaintiff, controlling various tangible aspects of Plaintiff's employment, including the ability to hire and fire Plaintiff.

4.      At all times material, Defendant T1 ADVERTISING LLC ("T1") was and is a limited liability company doing business in the State of California, with their principal place of business located at 2655 COLLINS AVE APT 1812, Miami, FL 33140. Defendant T1 held supervisory

authority over Plaintiff, controlling various tangible aspects of Plaintiff's employment, including the ability to hire and fire Plaintiff. Defendant T1 ADVERTISING LLC has an identity in interest with Defendants HERD and HOGAN, as well as with MAXIM, MEDIA, and BIGLARI.

5.      At all times material, Defendant BIGLARI HOLDINGS INC. ("BIGLARI") was and is a corporation doing business in the State of California, with their principal place of business located at 17802 IH 10 West, Suite 400, San Antonio, TX 78257. Defendant BIGLARI was and is the parent company of MAXIM and MEDIA, and jointly and severally held supervisory authority over Plaintiff, controlling various tangible aspects of Plaintiff's employment, including the ability to hire and fire Plaintiff. Defendant BIGLARI has an identity in interest with MAXIM and MEDIA.

6.      At all times material, Defendant THOMAS HERD ("HERD") was and is a reporter/writer and employee for Defendants MAXIM, MEDIA, T1,and BIGLARI, who held supervisory authority over Plaintiff, controlling various tangible aspects of Plaintiff's employment, including the ability to hire and fire Plaintiff.  Defendant HERD is also the CEO and owner of Defendant T1.

7.      At all times material, Defendant DIMETRI HOGAN ("HOGAN") was and is a photographer and employee for Defendants T1, MAXIM, MEDIA, and BIGLARI, who held supervisory authority over Plaintiff, controlling various tangible aspects of Plaintiff's employment, including the ability to hire and fire Plaintiff.

8.      Each Defendant was the principal, agent, partner, joint venturer, officer, director, subsidiary, affiliate, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

9.      Each Defendant acted pursuant to and within the scope of the relationships alleged

1  above, that each Defendant knew or should have known about, and authorized, ratified, adopted,

2  approved, controlled, and aided and abetted the conduct of all other Defendants.

3      10.     Defendants MAXIM, MEDIA, T1 and BIGLARI operate as joint and several

4  employers, who during the relevant times jointly and severally employed Plaintiff, and are

5  hereinafter referred to collectively as "ALL DEFENDANTS."

6

7      11.     Plaintiff is informed and believes, and based thereon alleges, that at all times

8  mentioned herein, each of the Defendants was the agent, servant, employee, co-venturer, and/or

9  coconspirator of each of the remaining Defendants, and was at all times mentioned herein acting

10  within the course, scope, purpose, consent, knowledge, ratification, and authorization of such

11  relationship.

12      12.     Plaintiff is informed and believes, and based thereon alleges, that each of the

13  Defendants was acting in a single or joint employer, agency, employer, and/or alter ego capacity

14  such that they are liable for the acts of their agents and/or employees.

15

16                                    **II.**

17                              **<u>JURISDICTION</u>**

18      13.     Defendants MAXIM, MEDIA, T1, and BIGLARI are subject to suit under the

19  California Fair Employment and Housing Act ("FEHA") as they regularly employ five or more

20  persons in the State of California. [Gov't Code § 12926(d).]  FEHA prohibits discrimination and

21  retaliation on the basis of race, sex, color, national origin, ancestry and age, among other acts, by an

22  employer against an employee.

23

24      14.     Defendants HERD and HOGAN are individuals subject to suit under FEHA.  [Gov't

25  Code § 12940(j)(3)].

26

27

28

15.     Plaintiff has exhausted all administrative remedies necessary with the Department of Fair Employment and Housing and Equal Employment Opportunity Commission and has timely brought this action.

16.     Venue properly lies in the County of Los Angeles in that the Plaintiff resided in the county during the relevant times; all Defendants reside in this county, do business in, and/or committed wrongful acts alleged herein within the County of Los Angeles.

17.     This court has jurisdiction to hear both statutory and common law claims against Defendants.

## III.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

18.     At all times material, Plaintiff was and is a model and social media influencer.

19.     Defendant HERD is a columnist, employee, and agent for Defendants MAXIM, MEDIA, and BIGLARI, with more than 25 published articles on the MAXIM.com website. https://www.maxim.com/author/thomas-herd.

20.     Defendant HOGAN is Defendant HERD's business partner and go-to photographer, taking photos for Defendants HERD, MAXIM, MEDIA, and BIGLARI when Defendant HERD is writing for MAXIM, MEDIA, and BIGLARI. https://www.maxim.com/news/photographer-pays-tribute-to-classic-naomi-campbell-photos-2019-12.

21.     Around the beginning of July 2020, Defendants MAXIM, MEDIA, T1, BIGLARI, and HERD hired Plaintiff to pose for a MAXIM photo-shoot that would take place around July 26, 2020 in Florida. Defendant HERD told Plaintiff she would be featured in a MAXIM article for Defendants MAXIM, MEDIA, and BIGLARI., along with Plaintiff's photos.

22.     Plaintiff flew to Florida and posed for the photo-shoot. Defendant HOGAN took the photos of Plaintiff for Defendants HERD, MAXIM, MEDIA, T1, and BIGLARI.

23.     Throughout the time Plaintiff was in Florida for the photo-shoot, Defendant HOGAN made romantic and sexual overtures to Plaintiff, which Plaintiff rebuffed.

24.     Defendant HERD and HOGAN's actions were sexually predatorial, as they held a position of power over Plaintiff.

25.     In retaliation for Plaintiff rebuffing Defendant HOGAN's advances, Defendant HOGAN sent Plaintiff very aggressive and angry messages, including messaging Plaintiff that he is, ***"super disappointed with [Plaintiff], when [Plaintiff] could have had the world from [Defendant HOGAN],"*** and telling Plaintiff that he does not respect Plaintiff and Plaintiff would never have a professional relationship with him.

26.     Defendant HOGAN sexually harassed Plaintiff.

27.     Defendant HOGAN discriminated against and harassed Plaintiff because of Plaintiff's sex and gender.

28.     Defendants HERD, HOGAN, BIGLARI, MEDIA, T1, and MAXIM stripped Plaintiff of her MAXIM article and did not publish the article or the photo-shoot as promised to Plaintiff, because Plaintiff rebuffed Defendant HOGAN's sexual advances.

29.     Defendants MAXIM, MEDIA, BIGLARI, T1, and HOGAN subjected Plaintiff to quid pro quo sexual harassment.

30.     Defendants MAXIM, MEDIA, BIGLARI, T1, and HOGAN discriminated against and harassed Plaintiff because of Plaintiff's sex and gender; retaliated against Plaintiff for refusing to engage in a sexually intimate relationship by failing to hire Plaintiff and wrongfully terminating Plaintiff by not including Plaintiff in the magazine.

31.     Defendants HOGAN and Herd leveraged their relationship, employment, and agency of Defendants MAXIM, MEDIA, BIGLARI, and T1 to place themselves in a position of power and authority over Plaintiff to force Plaintiff to engage in sexual acts.

32.     Because Plaintiff worked for Defendants, Defendants HERD and HOGAN thought they were entitled to sexually abuse and harass Plaintiff. Moreover, Defendant HOGAN believed he was able to sexually assault and batter Plaintiff because he provided Plaintiff with work, work which Defendants all profited from.

33.     Defendants MAXIM, MEDIA, BIGLARI, T1, HERD, and HOGAN created a scheme of recruiting and coercing women to have sexual relations with them in exchange for employment opportunities.

34.     In short, it was Defendants' scheme and common practice for Defendant HOGAN and HERD to sexually harass, use, and exploit females interested in working for Defendants, to Defendants HOGAN and HERD, thereby affecting interstate commerce.  This affected interstate commerce because Defendants sexually harassed, assaulted, and battered Plaintiff in exchange for putting Plaintiff in Defendants magazines, articles, and websites which are distributed nationally and worldwide.  Defendants also would have profited off of pictures of Plaintiff, and would have obtained revenue, employment, and future employment for Plaintiff.

35.     Thereafter, Defendant HERD pursued Plaintiff romantically, including, for example, messaging Plaintiff, *"Baby girl* (devil face and heart emojis) *come on you have to love the combination of a young, handsome self made guy and thoroughbred stannions on the malibu coast* (horse emojis)."* Plaintiff maintained a friendly relationship with Defendant HERD, not wanting to upset someone with so much clout at MAXIM.

36.     After some time had passed, around December 26, 2020, Defendant HERD reached out to Plaintiff with a new job/employment offer for a MAXIM photo-shoot.

37.     Defendant HERD wrote to Plaintiff, "I wanted to write you today as *I have a simply breathtaking New Years invitation for you that comes loaded with a Maxim Magazine COVER Feature as the cherry on top.* For context, I've rented my own villa on the cliffs of St. Lucia's west

coast from Dec 29- Jan 4. While I'm there, *the Maxim Magazine Head Publisher Susan McKinley asked me to do a travel inspiration piece to be published Jan 5 on the cover of Maxim.com.* Since *my VP Dimetri will be joining me (who doubles as a world class GQ & Maxim photographer)*, we decided why not shoot an amazing piece at the breathtaking promontory."

38.     Defendant HERD told Plaintiff that the trip would be with her and a group of Defendants' friends, and would include, flights, villa stay, a chartered yacht, a private chef, a private masseuse, a DJ and a mixologist. The description reassured Plaintiff of the validity of the MAXIM photo-shoot being run by Defendants MAXIM, MEDIA, and BIGLARI.

39.     Plaintiff responded with interest and asked whether she would have her own room on the trip, particularly in light of the fact that Defendant HOGAN would be present. Defendant HERD assured Plaintiff that she would have her own room or would share a room with another female. Plaintiff accepted the job and Defendant HERD booked Plaintiff a ticket, hiring Plaintiff for the photoshoot.

40.     Around the December 31, 2020, Defendants MAXIM, MEDIA, T1, BIGLARI, and HERD hired Plaintiff to pose for a MAXIM magazine photo-shoot.

41.     Around December 31, 2020, Plaintiff arrived to St. Lucia and discovered that Defendant HERD lied about the accommodations and the invitees. Instead of a group of people, including other women, a private masseuse, DJ, mixologist, and personal chef, Plaintiff found herself alone with Defendants HERD and HOGAN. Plaintiff immediately asked if Defendants HERD and HOGAN were in fact shooting a MAXIM photo-shoot. Defendants HERD and HOGAN assured Plaintiff that the MAXIM photo-shoot would take place as planned.

42.     That same day, immediately upon Plaintiff's arrival, Defendants HERD and HOGAN asked Plaintiff, *"Are you going to make us food and dinner?"* and insisted, *"We are young gods," "We can make anyone popular if they asked,"* and *"Nobody can tell us what to do."* Defendants

HERD and HOGAN were incessantly rude and degrading towards Plaintiff and any staff on site to project superiority and power over Plaintiff.

43.     That evening, Plaintiff and Defendants had dinner at a nearby hotel and returned to the villa. Plaintiff immediately went into her room early to avoid interaction with Defendants, particularly because Plaintiff was unexpectedly alone with both men and had been told a group was attending including other women.

44.     The next morning, around January 1, 2021, Plaintiff again asked Defendants HERD and HOGAN whether there would be a MAXIM photo-shoot. Defendant HOGAN stated the photo-shoot will be on January 2, 2021, at 11 AM.

45.     Defendants then left the villa and Plaintiff was relieved to be alone.

46.     Around 3:00 pm a young woman named "A", who Defendant HERD had been talking to online, arrived at the villa while the Defendants were out. "A" asked Plaintiff if Plaintiff is "there for Demitri" implying that Plaintiff was to engage in a sexual relationship with Defendant HOGAN while "A" pursued Defendant HERD. Plaintiff explained that she was there for the MAXIM photo-shoot. "A" explained that she came to meet and pursue a romantic relationship with Defendant HERD.

47.     Soon thereafter Plaintiff and "A" met up with Defendants at the beach of a nearby hotel. "A" and Defendant HERD immediately became very affectionate and physical. Defendant HOGAN began making physical advances toward Plaintiff, including touching Plaintiff's back and pulling Plaintiff towards him. Plaintiff rebuffed these advances.

48.     After dinner, the group returned to the villa and Defendant HERD and "A" engaged in sexual acts on the couch. Plaintiff became uncomfortable and retreated to her room upstairs.

49.     Soon thereafter, Defendant HOGAN texted Plaintiff to come to his room and asked her *"can you rub my back?"* Plaintiff felt pressured and was fearful of losing the MAXIM cover

shoot, as well as the power that Defendants had over Plaintiff's career, so Plaintiff went to Defendant HOGAN's room and gave him a massage. Defendant HOGAN immediately made sexual advances toward Plaintiff, including touching Plaintiff's breasts, buttocks, and vagina throughout the massage and telling Plaintiff that he wanted to *"make [Plaintiff] squirt."* Plaintiff rebuffed these advances stating, *"No, no, I'm not interested," "No, I'm on my period,"* and *"No, I have a boyfriend."* Defendant HOGAN refused to stop and badgered Plaintiff to perform oral sex on Defendant HOGAN. Specifically, Defendant HOGAN said to Plaintiff, ***"What, can you at least give me a fucking blow job."*** Fearing for her career, Plaintiff gave in to the pressure and performed oral sex on Defendant HOGAN, but stopped and rebuffed it again before Defendant HOGAN ejaculated. When Plaintiff stopped, Defendant HOGAN became visibly upset.

50.     Defendant HOGAN then badgered Plaintiff to have sexual intercourse with him, and Plaintiff repeatedly refused, and eventually made an excuse and told Defendant HOGAN that she was on her period and feeling bloated. Plaintiff was then able to finally leave and retreated to her room.

51.     Feeling disgusted and ashamed, Plaintiff finally fell asleep for a few hours and woke up very early in the morning of January 2, 2021, and could not fall asleep. Plaintiff decided that Plaintiff was going to confront Defendant HOGAN and express that she was in fear that Defendants HOGAN and HERD will only put Plaintiff in Maxim if she has sex with Defendant HOGAN. Plaintiff was afraid that because she rebuffed Defendant HOGAN's sexual advances she will no longer be put in the magazine.  Plaintiff texted Defendant HOGAN to see if he was awake, and he said he was, so Plaintiff went to Defendant HOGAN's room fully clothed. When Plaintiff arrived, Defendant HOGAN said ***"Oh, you are wearing clothes," "Why are you wearing clothes?"*** and ***"Why are your clothes on?"*** indicating that he expected Plaintiff to be nude and to have sex with him.

52.     Plaintiff became fearful of losing the MAXIM cover shoot and for Plaintiff's career and stated, *"I am not feeling well, let's just talk,"* and changed the topic and talked about family and religious beliefs. Defendant HOGAN again attempted to initiate sex with Plaintiff and repeatedly placed Plaintiff's hand on Defendant HOGAN's groin. Terrified of Defendant HOGAN, Plaintiff again made an excuse that she is not feeling well, is feeling bloated, has a headache, and needs more rest.  Plaintiff was eventually able to get away and return to Plaintiff's room.

53.     Defendant HOGAN sexually harassed, assaulted, and battered Plaintiff.

54.     Defendant HOGAN discriminated against and harassed Plaintiff because of Plaintiff's sex and gender.

55.     Defendants HERD, HOGAN, BIGLARI, MEDIA, T1, and MAXIM stripped Plaintiff of her MAXIM article and did not publish the article or the photo-shoot as promised to Plaintiff, because Plaintiff rebuffed and refused to comply with Defendant HOGAN's sexual advances.

56.     Defendants MAXIM, MEDIA, BIGLARI, T1, and HOGAN subjected Plaintiff to quid pro quo sexual harassment.

57.     About an hour later, while Plaintiff was in Plaintiff's room, Plaintiff received a voice note message from Defendant HOGAN cancelling the MAXIM photo-shoot. Defendant HOGAN said, ***"I spoke to Tommy and I told him that you weren't feeling too well today, so him and I both agreed that you can just send in a couple photos to MAXIM along with a bio*** that you want us to include kind of talking about some of the things that you have coming up and we will have one of the journalists kind of write up like an insert in there cuz the maxim story is going to be like a feature with like a few different girls included in it, and its going to have like a headline with your name on it. ***So, if you just want to send over like a couple of photos that are horizontal that maybe you have shot with other photographers that we could use those images for the shoot, because I know like everybody is tired today, and I know you are feeling bloated and like you have a***

*headache, so I don't want to like force you to shoot. Either way like you will get MAXIM, 100*

*percent."*

58.     Plaintiff responded that they should still try to get some photos that day and that

sending in other photos could be a backup. Plaintiff expressed that Plaintiff wanted to shoot with

Defendants HOGAN, and that once Plaintiff was ready for the day they could take some photos for

at least a few minutes and see what they get.

59.     Despite Plaintiff's pleas to have a photo shoot so that she was able to perform the

work she was asked to do, Defendants HOGAN and HERD refused to take any photos of Plaintiff in

retaliation for Plaintiff rebuffing Defendant HOGAN's sexual advances and refusing to have sex

with Defendant HOGAN.

60.     Defendants MAXIM, MEDIA, BIGLARI, T1, HERD, and HOGAN discriminated

against and harassed Plaintiff because of Plaintiff's sex and gender; retaliated against Plaintiff for

refusing to comply and rebuffing Respondent HOGAN's sexual harassment, assault, and battery by

failing to hire Plaintiff and wrongfully terminating Plaintiff by not including Plaintiff in the

magazine.

61.     When Plaintiff left on January 3, 2021, she asked Defendants again about the photo-

shoot and article, and Defendant HERD assured Plaintiff that it would proceed as planned, and that

he would send her the interview questions for the article within a few days. Defendant HERD told

Plaintiff that the cover feature of Plaintiff would be published by MAXIM on January 5, 2021.

62.     To this date, Plaintiff has not heard from Defendant HOGAN, HERD, BIGLARI,

MEDIA, T1, or MAXIM, and has been stripped of the cover feature and article with MAXIM,

because Plaintiff rebuffed Defendant HOGAN's sexual advances.

63.     Defendants discriminated against Plaintiff because of Plaintiff's sex and gender and retaliated against Plaintiff for rebuffing Defendants' sexual advances and for complaining of discrimination on a constant basis.

64.     Defendants sexually harassed, assaulted, and battered Plaintiff, disparately treated Plaintiff, disparately impacted Plaintiff, subjected Plaintiff to quid prop quo sexual harassment and retaliated against Plaintiff because of Plaintiff's sex and gender, as well as because of Plaintiff's complaints of discrimination and rebuffing Defendants' sexual advances.

65.     Defendants wrongfully terminated Plaintiff because she rebuffed, refused to comply, and complained of Defendant HOGAN's sexual advances, harassment, assault, and battery.

66.     As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer from anxiety, loss of sleep, stress, depression, and severe emotional distress.

67.     Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

68.     As Defendants; conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

69.     Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

70.     Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting conditions as a result of Defendants' discriminatory conduct.

71.     Alternatively, Plaintiff claims constructive discharge.

72.     Plaintiff claims alternatively (in the event Defendant Claims so or that the Court determines) that Claimant is an Independent Contractor, Volunteer, or Applicant, and Claimant

makes all applicable claims for the above conduct and facts under the applicable laws pertaining to Independent Contractors, volunteers, or applicants.

73.     Furthermore, in such, case, Plaintiff claims that Defendant owed and breached its duty to Plaintiff to prevent the harassment/discrimination/retaliation and is liable therefore for negligence.

74.     The above are just some of the examples of the unlawful discrimination and disparate treatment to which the Defendants subjected the Plaintiff on a continuous and on-going basis throughout Plaintiff's employment.

**IV.**

**FIRST CAUSE OF ACTION FOR TRAFFICKING VICTIMS PROTECTION ACT (TVPA)**

(Against All Defendants)

75.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

76.     In addition to what is stated above, Defendants BIGLARI, MAXIM, MEDIA, T1, HOGAN, and HERD engaged in interstate commerce as described herein through, inter alia, their use of the internet, magazines, phones, text messages, advertising, promotion, and interstate concerts. Furthermore, the above position, employment, and "Maxim Magazine COVER Feature" Defendants were using to entice Plaintiff for sex acts was a position which would have distributed Plaintiff's image on the internet and in print throughout the world from which Defendants would have and do profit from.  Defendants, in effecting interstate commerce by producing, running, and creating a media company and magazine, through the enticement and recruitment of putting Plaintiff in their Magazine and Website, enticed and recruited Plaintiff to travel with Defendants and be sexually assaulted and battered in exchange for a "Maxim Magazine COVER Feature."  Thereafter, because Plaintiff was not a willing and enthusiastic participant in the sexual harassment, assault and

battery, Defendants failed to place Plaintiff in the "Maxim Magazine COVER Feature," on

Defendants website, or on any of Defendants articles, preventing Plaintiff from additionally being

compensated for her work and all future work which would have come from it had she complied.

Defendants enticed and recruited Plaintiff for this position and committed the sexual assault and

battery on Plaintiff by force.  Through Defendants' sexual assault and battery, Defendants all would

have profited and obtained revenue from Plaintiff if she was included in the magazine, article, and

website.  It was Defendants' scheme to profit from the exploitation of females by using them to

obtain viewership and revenue from Defendants' readers and viewers.  Through this scheme and

attempted prostitution of Plaintiff, Defendants continued to produce Maxim Magazine, made money

off of the Magazine, and attempted to make money by using Plaintiff's photographs, had she not

complained of and rejected the sexual assault and battery of Defendants.

77.     Plaintiff brings this claim pursuant to all applicable sections of 18 U.S.C.A. §§ 1591,

1595 in that "An individual who is a victim of a violation of Section 1589, 1590, or 1591 of title 18,

United States Code, may bring a civil action in any appropriate district court of the United States.

The court may award actual damages, punitive damages, reasonable attorneys' fees, and other

litigation costs reasonably incurred." 18 U.S.C.A. §1595(a).

78.     18 USC § 1591. Sex trafficking of children or by force, fraud, or coercion states as

follows:

**(a)** Whoever knowingly--
**(1)** in or affecting interstate or foreign commerce, or within the special maritime and
territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides,
obtains, advertises, maintains, patronizes, or solicits by any means a person; or
**(2)** benefits, financially or by receiving anything of value, from participation in a venture
which has engaged in an act described in violation of paragraph (1),
knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in
reckless disregard of the fact, that means of force, threats of force, fraud, coercion described
in subsection (e)(2), or any combination of such means will be used to cause the person to
engage in a commercial sex act, or that the person has not attained the age of 18 years and
will be caused to engage in a commercial sex act, shall be punished as provided in subsection
(b).

**(b)** The punishment for an offense under subsection (a) is--
**(1)** if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or
**(2)** if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.
**(c)** In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.
**(d)** Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be fined under this title, imprisoned for a term not to exceed 25 years, or both.
**(e)** In this section:
**(1)** The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.
**(2)** The term "coercion" means--
**(A)** threats of serious harm to or physical restraint against any person;
**(B)** any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or
**(C)** the abuse or threatened abuse of law or the legal process.
**(3)** The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.
**(4)** The term "participation in a venture" means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1).
**(5)** The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.
**(6)** The term "venture" means any group of two or more individuals associated in fact, whether or not a legal entity.

79.     Additionally, 18 USCA § 1595. Civil remedy states as follows:

(a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

(b)(1) Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.
(2) In this subsection, a "criminal action" includes investigation and prosecution and is pending until final adjudication in the trial court.
(c) No action may be maintained under subsection (a) unless it is commenced not later than the later of--
(1) 10 years after the cause of action arose; or
(2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

80.     Broad, expansive language is employed in Trafficking Victims Protection Act (TVPA) and its remedial provision, which permits civil actions for damages under TVPA. *Noble v Weinstein*, 335 F Supp 3d 504 [SDNY 2018], mot to certify appeal denied, 17-CV-09260 (AJN), 2019 WL 3940125 [SDNY Aug. 5, 2019]

81.     Defendants subjected Plaintiffs to commercial sex acts by force and coercion, including both physical and financial.

82.     18 U.S.C. 1591 § (e)(3) defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."

83.     A commercial sex act means any sex act, on account of which anything of value is given to or received by any person. The specific conditions are the use of force, fraud, or coercion, or conduct involving persons under the age of 18. See the Department of Justice's definition: https://www.justice.gov/crt/involuntary-servitude-forced-labor-and-sex-trafficking-statutesenforced. "Section 1591 criminalizes sex trafficking, which is defined as causing a person to engage in a commercial sex act under certain statutorily enumerated conditions. A commercial sex act means any sex act, on account of which anything of value is given to or received by any person. The specific conditions are the use of force, fraud, or coercion, or conduct involving persons under the age of 18."

84.     Defendants conditioned Plaintiff's employment, on Defendants' ability to continue to sexually assault and engage in forced sex acts. Additionally, the financial aspect to the relationship was also an element of the "forced" sex acts.

85.     Defendants knowingly recruited, enticed, harbored, and/or obtained Plaintiff through means of force, threats of force, and by a combination of such forceful means, and forcibly caused Plaintiff to engage in an unwanted sexual act for a commercial benefit.

86.     18 USC 1594 further provides liability for "Whoever conspires with another to violate section 1591" Defendants further conspired to violate 1591 as stated herein.

87.     18 USC 1594 further states that it shall be unlawful for anyone who "obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section." Assuming Defendants take such retaliatory action as stated above, Plaintiff makes a claim for such.

88.     Defendants are liable to Plaintiffs under 18 USCA § 1591, 1594 and 1595.

## V.

## **SECOND CAUSE OF ACTION FOR SEXUAL BATTERY**

(Against Defendants BIGLARI, MAXIM, MEDIA, T1, and HOGAN)

89.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

90.     As described herein above, Defendant HOGAN caused, and intended to cause, imminent apprehension of a harmful and offensive contact with an intimate part of another.  In doing these acts, Defendant HOGAN caused, and intended to cause, imminent apprehension of a harmful and offensive contact with Plaintiff, in violation of, inter alia, Civil Code section 1708.5, and related laws. At no time did Plaintiff consent to any of the acts of Defendant HOGAN described herein.

91.     As a result of Defendant HOGAN's conduct, Plaintiff was placed in apprehension and fear for Plaintiff's physical well-being.

92.     Defendant HOGAN's sexual battery involved actual physical contact.

93.     Defendant HOGAN did the aforementioned acts with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff's person and would offend a reasonable sense of personal dignity. Further, said acts did cause a harmful or offensive contact with an intimate part of Plaintiff's person that would offend a reasonable sense of personal dignity.

94.     Because of Defendant HOGAN's position of authority over Plaintiff, and Plaintiff's mental and emotional state, Plaintiff was unable to, and did not, give legal consent to such acts.

95.     As a direct, legal and proximate result of the acts of Defendant HOGAN, Plaintiff sustained serious and permanent injuries to Plaintiff's person, all of Plaintiff's damage in an amount to be shown according to proof and within the jurisdiction of the Court.

96.     Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI knew or should have known, of the assaults and batteries, but ratified the conduct, as described herein above, by failing to adequately, or at all take remedial steps against Defendant HOGAN, refusing to intervene to protect Plaintiff, among other acts of ratification.  As Plaintiff's employers and by ratifying Defendant HOGAN's misconduct, Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI are liable to Plaintiff for battery and assault.

97.     As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code sections 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

98.     As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress.  Plaintiff has further experienced other physical symptoms arising from the wrongful acts of Defendants, and each of them.  Plaintiff will continue to experience said pain and physical and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

99.     The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner pursuant to California Civil Code Section 3294, in order to injure and damage Plaintiff, thereby justifying an award to them of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

## VI.

## THIRD CAUSE OF ACTION FOR SEXUAL ASSAULT

(Against Defendants BIGLARI, MAXIM, MEDIA, T1, and HOGAN )

100.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

101.    Defendant HOGAN committed several overt acts of sexual abuse, assault, and battery against Plaintiff.

102.    Defendant HOGAN intended to inflict a harmful or offensive conduct against Plaintiff and intended to cause Plaintiff to fear such contact.  Defendant HOGAN knew that the consequence of an offensive contact was certain to result, as Defendant HOGAN's sexual abuse was intentionally inflicted.

103.    Defendant HOGAN's actions placed Plaintiff in apprehension of an immediate harmful or offensive contact.

104. Plaintiff did not consent to Defendant HOGAN's harmful or offensive contact with Plaintiff's person, or to Defendant HOGAN's conduct, putting Plaintiff in imminent apprehension of such contact.

105. In doing the things herein alleged, Defendant HOGAN violated Plaintiff's right under California Civil Code § 43 of protection from bodily restraint or harm, and from personal insult. In doing the things herein alleged, Defendant HOGAN violated his duty, pursuant to California Civil Code §1708, to abstain from injuring the person of Plaintiff or infringing upon Plaintiff's rights.

106. As a result of the above-described conduct and wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

107. Defendant HOGAN's sexual assault is a substantial factor in bringing about these harms to Plaintiff.

108. The conduct of Defendants was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and were carried out with a conscious disregard of Plaintiff's right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code section 3294, entitling Plaintiff to punitive damages against Defendant HOGAN's in an amount appropriate to punish and set an example of Defendants.

## VII.

### FOURTH CAUSE OF ACTION FOR GENDER VIOLENCE

(Against Defendant HOGAN)

109.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

110.    Plaintiff was subjected to one or more acts of Defendant HOGAN that constituted a crime under California law involving the use, attempted use, or threatened use of physical force against Plaintiff. Specifically, Defendant HOGAN committed the crime of sexual battery and sexual assault against Plaintiff, and those crimes involve the use, attempted use, or threatened use of physical force against the person of another.

111.    Defendant HOGAN committed the crime at least in part based on Plaintiff's gender.

112.    Plaintiff was subjected to Defendant HOGAN's physical intrusion or physical invasion of a sexual nature under coercive conditions. Defendant HOGAN made a physical intrusion of invasion of a sexual nature including, but not limited to, pressuring Plaintiff to perform oral sex on Defendant HOGAN, and the conditions were coercive because Defendant HOGAN was Plaintiff's supervisor.

113.    As a proximate result of Defendant HOGAN's acts, Plaintiff is entitled to actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. Plaintiff is also entitled to an award of attorney's fees and costs pursuant to Civil Code § 52.4, against Defendant HOGAN.

## VIII.

**FIFTH CAUSE OF ACTION FOR SEXUAL HARASSMENT IN VIOLATION OF FEHA**

**[Cal. Gov't Code §12940(j)]**

(Against Defendants BIGLARI, MAXIM, MEDIA, T1, HERD, and HOGAN)

114.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

115.    At all times relevant for purposes of this Complaint, Gov't Code §12900 et seq. were in full force and effect and were binding on all Defendants.  Gov't Code §12940(j)(1) states that it is unlawful "[f]or an employer…or any other person, because of…sex, gender, national origin, race, and color…to harass an employee…."

116.    During Plaintiff's employment, Plaintiff was subjected to harassment from Defendants HERD and HOGAN.  Said conduct was severe, pervasive, constant and continuous, and was offensive, humiliating and harassing to Plaintiff and would have been offensive to a reasonable person under Plaintiff's circumstances.

117.    Defendants HERD and HOGAN subjected Plaintiff to quid pro quo sexual harassment.

118.    Defendants HERD and HOGAN engaged in sexually harassing conduct, and Defendants HERD and HOGAN harassed Plaintiff based on Plaintiff's sex and gender that included, but was not limited to comments, gestures, physical touching, and sexual battery.  Plaintiff complained to Defendants about this harassing conduct by Defendants HERD and HOGAN and Defendants failed to take action.

119.    By failing to conduct a reasonable investigation and not taking proper remedial action, Defendants MAXIM, MEDIA, T1, and BIGLARI ratified Defendants HERD and HOGAN's unlawful conduct.

120.    As a proximate result of Defendants' conduct, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial.

121.    As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress and has incurred and will likely incur, medical expenses as a result.  Plaintiff will continue to experience said pain and mental and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

122.    The conduct of Defendants, and each of them, and their agents and employees as described herein, was malicious, fraudulent, and oppressive, and done with a willful and conscious disregard for Plaintiff's rights.

123.    As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute Plaintiff's claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith.  Plaintiff is entitled to recover such attorneys' fees and costs under California Government Code Section 12965(b).

124.    The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

## IX.

## SIXTH CAUSE OF ACTION FOR DISCRIMINATION BASED ON SEX AND GENDER IN

## VIOLATION OF FEHA [Cal. Gov't Code §12940(a)]

(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

125.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

126.    At all times relevant for purposes of this Complaint, the FEHA, Gov't Code §12940(a) was in full force and effect and binding on Defendants.  FEHA makes it unlawful for an employer, on the basis of sex, gender, national origin, race, color, and association "to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

127.    Plaintiff, a female, was subjected to harassment based on Plaintiff's sex and gender. Defendants and each of them treated Plaintiff differently in the terms and conditions of employment in comparison to the other employees that were not of the same sex and gender as Plaintiff.

128.    Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI failed to take any remedial actions against Defendants HERD and HOGAN, even after Plaintiff complained and or rebuffed sexual harassment by Defendants HERD and.  Instead, Defendants ignored Plaintiff's complaints and rebuffs and as a result the harassment continued and worsened, leading to further retaliation, assault, battery, and Plaintiff's wrongful termination.

129.    As a proximate result of Defendants' conduct, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil

Code Sections 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

130.    As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress and has incurred and will likely incur, medical expenses as a result.  Plaintiff will continue to experience said emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

131.    As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute Plaintiff's claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover such attorneys' fees and costs under California Government Code Section 12965 (b).

132.    The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

## X.

## SEVENTH CAUSE OF ACTION FOR FAILURE TO PREVENT HARASSMENT AND DISCRIMINATION IN VIOLATION OF THE FEHA [Cal. Gov't Code §12940(k)]

(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

133.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

134.    At all times relevant for purposes of this Complaint, the FEHA, Gov't Code § 12900 et seq., was in full force and effect and binding on Defendants.  FEHA requires Defendants, among

other things, "to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

135.   In perpetrating the above-described acts and failures to act, Defendants violated California *Government Code* § 12940 by failing to ensure a workplace free of harassment. Defendants are responsible for assuring that DFEH provisions are followed, including provisions prohibiting sexual harassment against employees.

136.   In perpetrating the above-described acts and failures to act, Defendants violated California *Government Code* § 12940 by failing to take all reasonable steps necessary to prevent such discrimination based on sex from occurring.

137.   Instead, Defendants created and fostered a hostile, offensive, inappropriate and intolerable work environment, where harassment was condoned, encouraged, tolerated, sanctioned, and ratified.

138.   Defendants repeatedly violated Gov't Code § 12940(k).  Defendants failed to provide Plaintiff with any sexual harassment training.  Additionally, Defendants' acts and failures to act include, but are not limited to, the following:

> (a)   Having no policies, practices and procedures and/or failing to implement policies, practices and procedures and/or having ineffective policies, practices, and procedures regarding Defendants' obligations to refrain from discrimination and harassment;

> (b)   Having no policies, practices and procedures and/or failing to implement policies, practices and procedures and/or having ineffective policies, practices, and procedures regarding the handling of complaints of discrimination and harassment;

> (c)   Failing to investigate when discrimination and harassment were reported,

despite there being such reports;

(d)   Failing to provide any and/or adequate training, education, or information to their personnel, and most particularly to management and supervisory personnel with regard to policies and procedures regarding preventing discrimination and harassment;

(e)   Failing to appoint a qualified, neutral third party to investigate an employee's allegations;

(f)   Failing to transfer employee to a new supervisor under the same terms and conditions of employment;

(g)   Failing to review the employer's anti-harassment policy with the harasser and imposing counseling or discipline as appropriate; and

(h)   Failing to take permanent remedial steps reasonably calculated to end the current harassment and deter future harassment from the same offender or others.

139.   As a proximate result of Defendants' conduct, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial.

140.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress and has incurred and will likely incur, medical expenses as a result. Plaintiff will continue to experience said pain and mental and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

141.     The conduct of Defendants, and each of them, and their agents and employees as described herein, was malicious, fraudulent, and oppressive, and done with a willful and conscious disregard for Plaintiff's rights.

142.     As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute Plaintiff's claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith.  Plaintiff is entitled to recover such attorneys' fees and costs under California *Government Code* Section 12965(b).

143.     The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

**XI.**

**EIGHTH CAUSE OF ACTION FOR RETALIATION IN VIOLATION OF FEHA [Cal. Gov't Code §§12940(h)]**

(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

144.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs as though fully stated herein.

145.     It is an unlawful employment practice to discharge, expel, or otherwise discriminate against any person because the person has engaged in protected activity under *Government Code* §12940.  [Cal. Gov't Code §12940(h)].  Plaintiff engaged in protected activity by making complaints of sexual harassment and discrimination, and by taking disability leave as set forth above.

146.     When Plaintiff would reject the advances of Defendants HERD and HOGAN, they would retaliate against Plaintiff.  For example, when Plaintiff rejected Defendant HERD, the sexual

harassment worsened as Defendant HERD continued to make sexually abusive comments and sexually battered Plaintiff. Moreover, when Plaintiff complained and /or objected to Defendants HOGAN and HERD's discrimination, sexual harassment, assault, and battery, Defendants took no corrective action which resulted in Plaintiff being subjected to continued discrimination, harassment, sexual harassment, sexual assault, and sexual battery.

147. Plaintiff made complaints and/or objected to Defendants HERD and HOGAN's conduct, yet the harassment, discrimination, sexual battery, and retaliation continued.

148. As a result of engaging in protected activity, Plaintiff suffered adverse employment actions by Defendants as set forth above.

149. There is a causal link between Plaintiff's protected activity and the adverse employment actions taken against Plaintiff due to Defendants' knowledge of Plaintiff's protected activity, the proximity of time between said protected activities and the retaliatory employment actions, the pattern of Defendants' conduct, and the pretextual reason for terminating Plaintiff.

150. Defendants' conduct as alleged above constituted unlawful retaliation in violation of the FEHA.

151. As a proximate result of the wrongful acts of Defendants, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to *Civil Code* Sections 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

152. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish,

and emotional distress and has incurred and will likely incur, medical expenses as a result. Plaintiff will continue to experience said pain and mental and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

153.    As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute Plaintiff's claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover such attorneys' fees and costs under California *Government Code* Section 12965(b) and/or any other provision of law providing for attorney's fees and costs.

154.    The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendants.

## XII.

## NINTH CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF

## PUBLIC POLICY

(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

155.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

156.    At all times mentioned in this Complaint, the FEHA was in full force and effect and was binding on Defendants. This law requires Defendants to refrain, among other things, from discriminating or retaliating against any employee on the basis of engagement in protected activity, sex, gender, and any complaints of sexual harassment, sexual assault, sexual battery, and retaliation.

157.    At all times mentioned in this Complaint, it was a fundamental policy of the State of

California that Defendants cannot discriminate and/or retaliate against any employee on the basis of engagement in protected activity, sex, gender, and any complaints of sexual harassment, sexual assault, sexual battery, and retaliation.

158.    Plaintiff's engagement in protected activities such as complaining of/objection to sexual harassment, quid pro qui sexual harassment, sexual assault, sexual battery, harassment, and discrimination based on Plaintiff's sex and gender, discrimination and retaliation, and/or some combinations thereof, were factors in Defendants' conduct as alleged hereinabove.

159.    Such discrimination and retaliation, resulting in the wrongful termination of Plaintiff's employment on the basis of Plaintiff's sex, gender, engagement in protected activity, and/or some combinations thereof, were a proximate cause in Plaintiff's damages as stated below.

160.    The above said acts of Defendants constitute violations of the Government Code and the public policy of the State of California embodied therein as set forth above. Defendants violated these laws by discriminating and retaliating against Plaintiff and terminating Plaintiff's employment in discrimination of Plaintiff's protected classes and in retaliation for Plaintiff's exercise of protected rights.

161.    As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

162.    As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to Plaintiff's damage in a sum according to proof.

163.    The foregoing conduct of Defendants individually, or by and through their managing agents, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff

to cruel and unjust hardship in conscious disregard of Plaintiff's right to be free from interference

by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion,

such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff

to punitive damages in an amount appropriate to punish or make an example of Defendants.

## XIII.

## TENTH CAUSE OF ACTION FOR HARASSMENT AND AIDING AND ABETTING IN

## VIOLATION OF CAUSE OF GOV'T CODE §§12940 ET SEQ.

(Against All Defendants)

164.    Plaintiff incorporates by reference and re-alleges the preceding

paragraphs, inclusive, as though set forth fully herein.

165.    At all times relevant for purposes of this Complaint, the FEHA, Gov't Code § 12940

et seq., was in full force and effect and binding on Defendants.  FEHA states that it is an unlawful

employment practice "(i) for any person to aid abet, incite, compel, or coerce the doing of any of the

acts forbidden under this part, or to attempt to do so."

166.    As such term is used under FEHA, "any of the acts forbidden under this part this

part" means or refers to discrimination and harassment on the bases of one or more of the protected

characteristics under FEHA such as sex and gender.

167.    Defendants aided and abetted each other in the discrimination, harassment, sexual

harassment and retaliation that Defendants HERD and HOGAN subjected Plaintiff to.

168.    These laws set forth in the preceding paragraph require Defendants to

refrain from harassing, or creating, or maintaining a hostile work environment

against an employee based upon Plaintiff's sex and gender, and for aiding and abetting harassment

and retaliation.

169.   Defendants' harassing conduct was severe and pervasive, was unwelcome by Plaintiff, and a reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile and abusive.

170.   Defendants violated the FEHA and the public police of the State of California which is embodied in the FEHA by creating a hostile work environment, and by discriminating and harassing Plaintiff because of Plaintiff's sex and gender.

171.   As a proximate result of the wrongful acts of Defendants, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damages to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages together with prejudgment interest pursuant to *Civil Code* Sections 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

172.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress and has incurred and will likely incur, medical expenses as a result.  Plaintiff will continue to experience said pain and mental and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

173.   The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

1

## XIV.

2

## ELEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII

3

(Against Defendants BIGLARI, MAXIM, and MEDIA)

4

5

174.    The allegations of each of the preceding paragraphs are re-alleged and incorporated

6

herein by reference.

7

175.    Title VII states in relevant part as follows:

8

"(a) Employer practices: It shall be an unlawful employment practice for an

9

employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise to

10

discriminate against any individual with respect to his compensation, terms,

11

conditions, or privileges of employment, because of such individual's race, color,

12

religion, sex, or national origin."

13

14

176.    This claim is authorized and instituted pursuant to the provisions of Title VII of the

15

Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the

16

unlawful employment practices of the above-named Defendants.

17

177.    This claim is authorized and instituted pursuant to the provisions of Title VII of the

18

Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the

19

unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants'

20

21

violation of Title VII's prohibition against discrimination in employment based, in whole or in part,

22

upon an employee's sex and gender.

23

178.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C.

24

2000e et seq., by harassing, allowing, and otherwise discriminating against Plaintiff because of

25

Plaintiff's sex and gender, and creating a hostile work environment.

26

179.    As a result of the above-described conduct, Plaintiff Doe has suffered and continues

27

to suffer great pain of mind and body, shock, emotional distress, physical manifestations of

28

emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

180.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

## XV.

## TWELFTH CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII

(Against All Defendants BIGLARI, MAXIM, and MEDIA)

181.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

182.   Title VII protects employees from being subjected to a Hostile Work Environment and Quid Pro Quo Sexual harassment.

183.   Unwelcome conduct constitutes sexual harassment when "submission to such conduct is made wither explicitly or implicitly a term or condition of any individual's employment." 29 C.F.R. 1604. 11(a)(2016).

184.   Where employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful quid pro quo sexual harassment.

185.   As discussed above, Plaintiff was subjected to both a hostile work environment and quid pro quo sexual harassment by her supervisors and employers, Defendant BIGLARI, MAXIM, MEDIA, T1, HOGAN, and HERD.

186.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by subjecting Plaintiff to a hostile work environment and quid pro quo sexual harassment.

187.    As a result of the above-described conduct, Plaintiff Doe has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

188.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## XVI.

### THIRTEENTH CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII

(Against All Defendants BIGLARI, MAXIM, and MEDIA)

189.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

190.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

191.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants,

including but not limited to continued discrimination, continued harassment, continued hostile work environment, and wrongful termination.

192.    As a result of the above-described conduct, Plaintiff Doe has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

193.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## XVII.

## FOURTEENTH CAUSE OF ACTION FOR NEGLIGENCE

(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

194.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

195.    Prior to and after the first incident of Defendant HOGAN's sexual harassment, assault and battery of Plaintiff through the present, Defendants HERD, MAXIM, MEDIA, T1 MEDIA, and BIGLARI, knew and/or had reason to know that Defendant HOGAN had and was capable of sexually, physically, and mentally harassing Plaintiff or other victims.

196.    Defendants never provided Plaintiff with any sexual harassment training.

197.    Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI, and their agents, independent contractors, and/or employees had a duty to provide Plaintiff a position free from discrimination, harassment, sexual assault, sexual battery, and retaliation.

198.     Defendants were aware that Plaintiff was subjected to discrimination and harassment based on Plaintiff's sex and gender, and sexual assault and battery, and failed to take appropriate and corrective action.

199.     Defendants, MAXIM, MEDIA, T1 MEDIA, and BIGLARI by and through their respective agents, servants and employees, knew or had reason to know of Defendant HOGAN's dangerous and illegal propensities. Despite such knowledge, Defendants negligently failed to supervise Defendant HOGAN in his position as a supervisor, where he was able to commit wrongful acts of sexual misconduct against Plaintiff. Defendants failed to provide reasonable supervision of Defendant HOGAN, failed to use reasonable care in investigating Defendant HOGAN, and failed to provide adequate warning to Plaintiff about Defendant HOGAN's dangerous propensities and unfitness. Defendants further failed to take reasonable steps to ensure the safety of Plaintiff, from sexual harassment, assault, and battery.

200.     Defendants HERD, HOGAN, MAXIM, MEDIA, T1 MEDIA, and BIGLARI owed Plaintiff a duty of care to act in a reasonable and ordinary manner so as not to cause Plaintiff any foreseeable harm.

201.     Defendants, and each of them, failed to use ordinary and reasonable care in order to avoid injury to Plaintiff.  This includes, but is not limited to, Defendants' failure to prevent the individually named Defendants from discriminating, harassing, sexually assaulting, sexually battering, and retaliating against Plaintiff.

202.     Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI should have known that Defendants HERD and HOGAN were discriminating, harassing, sexually assaulting, sexually battering, and retaliating against Plaintiff because of Plaintiff's sex and gender. Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI failed to take appropriate and corrective action.

203.    Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI had been informed of the discriminatory, harassing, and retaliatory conduct of Defendants and, despite being informed of their unlawful conduct, Defendants failed to discipline Defendants HERD and HOGAN and kept them in their employ, thereby ratifying said unlawful conduct.

204.    Defendants were put on notice, and had reason to know, that Defendant HOGAN had previously engaged and continued to engage in unlawful sexual conduct and sexual harassment with Plaintiff, and that it was, or had reason to know, it would have been foreseeable that he was engaging, or would engage, in illicit sexual harassment with Plaintiff, under the cloak of his authority, confidence, and trust, bestowed upon him through Defendants.

205.    Defendants were placed on actual or constructive notice that Defendants HERD and HOGAN had sexually harassed and discriminated against Plaintiff. Defendants had knowledge of inappropriate conduct and harassment committed by Defendant HOGAN during his employment yet chose to allow him to remain unsupervised where he sexually assaulted and battered Plaintiff.

206.    Defendants breached their duties of care to Plaintiff by allowing Defendant HOGAN to come into contact with Plaintiff, without supervision; and by failing to adequately hire, supervise and retain Defendant HOGAN whom they permitted and enabled to have access to Plaintiff.

207.    Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI breached their duties to Plaintiff by failing to investigate or otherwise confirm or deny such facts of sexual abuse by Defendant HOGAN, and by placing Defendant HOGAN into a position of authority.

208.    Defendants breached their duty to Plaintiff by failing to adequately monitor and supervise Defendant HOGAN and failing to prevent Defendant HOGAN from committing wrongful sexual acts with Plaintiff. Prior complaints of Plaintiff against Defendant HOGAN, in addition to Defendant HERD witnessing Defendant HOGAN's conduct caused Defendants to know, or gave them reason to know, of Defendant HOGAN's discriminatory and harassing behavior

209.   The conduct of Defendants HOGAN constitute negligence and is actionable under the laws of the State of California

210.   As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## XVIII.

### FIFTEENTH CAUSE OF ACTION FOR NEGLIGENT SUPERVISION

(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

211.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference

212.   Defendants HERD, HOGAN, MAXIM, MEDIA, T1 MEDIA, and BIGLARI, and their agents, independent contractors, and/or employees had a duty to provide Plaintiff a position free from discrimination, sexual harassment, threats of violence, sexual assault, sexual battery and retaliation.

213.   Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI were aware that Plaintiff was subjected to discrimination, harassment, and sexual harassment based on Plaintiff's sex and gender, and failed to take appropriate and corrective action.

214.   Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI owed Plaintiff a duty of care to act in a reasonable and ordinary manners so as not to cause Plaintiff any foreseeable harm.

215.     Defendants, and each of them, failed to use ordinary and reasonable care in order to avoid injury to Plaintiff.  This includes, but is not limited to, Defendants' failure to prevent the individually named Defendants from discriminating, harassing, sexually harassing, sexually assaulting, sexually battering, and retaliating against Plaintiff.

216.     Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI should have known that Defendants HERD and HOGAN was discriminating, harassing, sexually harassing, sexually assaulting, sexually battering, and retaliating against Plaintiff because of Plaintiff's sex and gender. Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI failed to take appropriate and corrective action.

217.     Defendants, by and through their respective agents, servants and employees, knew or had reason to know of Defendant HOGAN's dangerous and illegal propensities. Despite such knowledge, Defendants negligently failed to supervise Defendant HOGAN in his position as a supervisor, where he was able to commit wrongful acts of sexual misconduct against Plaintiff. Defendants failed to provide reasonable supervision of Defendant HOGAN, failed to use reasonable care in investigating Defendant HOGAN, and failed to provide adequate warning to Plaintiff about Defendant HOGAN's dangerous propensities and unfitness. Defendants further failed to take reasonable steps to ensure the safety of Plaintiff from discrimination, harassment, and sexual harassment.

218.     Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI had been informed of the discriminatory, harassing, and retaliatory conduct of Defendants and, despite being informed of their unlawful conduct, Defendants failed to discipline Defendant HOGAN and kept him in their employ, thereby ratifying said unlawful conduct.

219.     The conduct of Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI constitute negligence and is actionable under the laws of the State of California.  As a direct and proximate

result of the acts of Defendants HERD, HOGAN, MAXIM, MEDIA, T1 MEDIA, and BIGLARI, Plaintiff has suffered, without limitation, emotional distress, fear, embarrassment, anxiety, shame, humiliation, distress, shock, and severe emotional distress.

220.    Defendants HERD and HOGAN's conduct was reckless and with a conscious disregard of Plaintiff's rights.  Plaintiff is therefore entitled to an award of punitive damages against Defendants HERD, HOGAN, MAXIM, MEDIA, T1 MEDIA, and BIGLARI in an amount to be determined by proof at trial.

## XIX.

## SIXTEENTH CAUSE OF ACTION FOR NEGLIGENT FAILURE TO WARN, TRAIN, OR

## EDUCATE

(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

221.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

222.    Defendants owed Plaintiff a duty to take reasonable protective measures to protect Plaintiff from the risk of discrimination, and sexual harassment, assault, and battery by Defendant HOGAN by properly warning, training or educating Plaintiff about how to avoid and/or report such a risk.

223.    Defendants breached their duty to take reasonable protective measures to protect Plaintiff from the risk of sexual harassment, sexual assault, and sexual battery, by Defendant HOGAN, such as the failure to properly warn, train or educate Plaintiff about how to avoid such a particular risk.

224.    Defendants, by and through their respective agents, servants and employees, knew or had reason to know of Defendant HOGAN's dangerous and illegal propensities. Despite such

knowledge, Defendants negligently failed to supervise Defendant HOGAN in his position as a supervisor, where he was able to commit wrongful acts of sexual misconduct against Plaintiff. Defendants failed to provide reasonable supervision of Defendant HOGAN, failed to use reasonable care in investigating Defendant HOGAN, and failed to provide adequate warning to Plaintiff about Defendant HOGAN's dangerous propensities and unfitness. Defendants further failed to take reasonable steps to ensure the safety Plaintiff, from sexual harassment, assault, and battery.

225.    Defendants breached their duty to take reasonable protective measures to protect Plaintiff from the risk of sexual harassment, sexual assault, and sexual battery by Defendant HOGAN, by failing to supervise and stop employees of Defendants, from committing sexual harassment, discrimination, sexual assault, and sexual battery.

226.    As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## XX.

## SEVENTEENTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against All Defendants)

227.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

228.    By engaging in the above-described conduct, Defendants engaged in extreme and outrages conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress.

229.    Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and severe emotional distress.

230.    Plaintiff's damages were the actual and proximate causation of the emotional distress caused by Defendants' outrageous conduct.

231.    Defendants' conduct was reckless and with a conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to an award of punitive damages against Defendants in an amount to be determined by proof at trial.

## XXI.

## EIGHTEENTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(Against All Defendants)

232.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

233.    Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI knew or should have known that Defendants HERD and HOGAN were discriminating, harassing, sexually harassing, sexually assaulting, sexually battering, and retaliating against Plaintiff because of Plaintiff's sex and gender.  Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI failed to take appropriate and corrective action.

234.    Had Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI taken prompt and corrective action against Defendants HERD and HOGAN, that he would not have discriminated, harassed, sexually harassed, sexually assaulted, sexually battered, and retaliated against Plaintiff.

235.    Defendants, and each of them, owed Plaintiff a duty of care to act in a reasonable and ordinary manner so as not to cause Plaintiff any foreseeable harm.

236.    Defendants, and each of them, failed to use ordinary and reasonable care in order to avoid injury to Plaintiff.  This includes, but is not limited to, Defendants' failure to prevent the individually named Defendants from discriminating, harassing, sexually assaulting, sexually battering, and retaliating against Plaintiff.

237.    Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI had been informed of the discriminatory, harassing, and retaliatory conduct of Defendants and, despite being informed of their unlawful conduct, Defendants failed to discipline Defendant HOGAN and kept him in their employ, thereby ratifying said unlawful conduct, in addition to encouraging said conduct to continue.

238.    The conduct of Defendants HERD, HOGAN, MAXIM, MEDIA, T1 MEDIA, and BIGLARI constitute negligence and is actionable under the laws of the State of California.  As a direct and proximate result of the acts of Defendants HERD, HOGAN, MAXIM, MEDIA, T1 MEDIA, and BIGLARI, Plaintiff has suffered, without limitation, emotional distress, fear, embarrassment, anxiety, shame, humiliation, distress, shock, and severe emotional distress.

239.    WHEREAS, Plaintiff prays for judgment against Defendants as set forth below.

## XXII.

## NINETEENTH CAUSE OF ACTION FOR VIOLATION OF SAINT LUCIA'S EQUALITY OPPORTUNITY AND TREATMENT IN EMPLOYMENT AND OCCUPATION ACT

(Against All Defendants)

240.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

241.    Part 2 of Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act protects against unlawful discrimination by stating:

Definition and prohibited grounds of discrimination

3. (1)  For the purposes of this Act, a person discriminates against another person if the first-mentioned person makes, on any of the grounds specified in subsection (2), any distinction, exclusion or preference, the intent or effect of which is to nullify or impair equality of opportunity or treatment in occupation or employment.

3. (2) The grounds referred to in subsection (1) are—

(a) race, sex, religion, colour, ethnic origin, family responsibilities, pregnancy, marital status, or age except for purposes of retirement and restrictions on work and employment of minors or for the protection of minors; or

(b) any characteristic which appertains generally or is generally imputed to persons of a particular race, sex, religion, colour, ethnic origin, social origin, political opinion, disability, family responsibility, pregnant state, marital status, or age except for purposes of retirement and restrictions on work and employment of minors or for the protection of minors.

3. (3)  Any act or omission or any practice or policy that directly or indirectly results in discrimination against a person on the grounds referred to in subsection (2), is an act of discrimination regardless of whether the person responsible for the act or omission or the practice or policy intended to discriminate and constitutes an offence.

Prohibition on discrimination against applicant and employees

4. (1) This Act applies to all employees and employers in the public and private sectors who are engaged in an employment relationship.

4. (2) It is unlawful for any person who is an employer or any person acting or purporting to act on behalf of a person who is an employer, in relation to recruitment, selection or employment of any other person for purposes of training, apprenticeship or employment, to discriminate against that other person on the grounds specified under section 3(2)—

(a) in the advertisement of the job;

(b) in the arrangements made for the purpose of determining who should be offered that employment;

(c) in determining who should be offered employment;

(d) in the terms or conditions on which employment is offered;

(e) in the creation, classification or abolition of jobs;

4. (3) It is unlawful for an employer to discriminate against an employee on the grounds specified under section 3(2)—

(a) in terms or conditions of employment afforded to that employee by the employer;

(b) in conditions of work or occupational safety and health measures;

(c) in the provision of facilities related to or connected with employment;

(d) by denying access, or limiting access to opportunities for advancement, promotion, transfer or training, or to any other benefits, facilities or services associated with employment;

(e) by retrenching or dismissing the employee;

(f) by subjecting the employee to any other disadvantage.

242.    Part 2 Section 8 of Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act additionally protects against sexual harassment by stating:

8.  Any act of sexual harassment against an employee committed by an employer, managerial employee or co-employee shall constitute unlawful discrimination based on sex within the meaning of section 3 and constitutes an offence.

243.    Part 4 Section 20 of Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act additionally protects against Victimization of Plaintiff's by stating:

20. (1)  A person who victimises another person commits an offence and is liable on summary conviction to a fine not exceeding $5,000.

20. (2)  For the purposes of subsection (1), a person shall be taken to commit an act of victimisation against another person if the first-mentioned person subjects or threatens to subject the other person to any detriment—

(a) on the ground that the other person—

(i) has made, or proposes to make, a complaint under this Act,

(ii) has brought, or proposes to bring proceedings under this Act against any person,

(iii) has furnished or proposes to furnish, any information, or

has produced, or proposes to produce, any documents to a
person exercising or performing any power or function under
this Act,

(iv) has attended or proposes to attend an inquiry under this
Act or to provide evidence or testimony as a witness, or

(v) has made in good faith, allegation that a person has
committed an act of discrimination in contravention of this Act;

(b) on the ground that the first-mentioned person believes that the
other person has done, or proposes to do any of the things referred to
in paragraphs (a)(i) to (a)(v).

244.    As discussed above, Defendants discriminated against, sexually harassed, and

victimized Plaintiff and are therefore liable under and violated Saint Lucia's Equality Opportunity

and Treatment in Employment and Occupation Act.

245.    Plaintiff has suffered numerous damages as a result of Defendants conduct and

according Saint Lucia law is entitled to:

General penalty clause
23. (1) A person who contravenes a provision of this Act commits an
offence.

23. (2) A person found guilty of an offence under this Act for which no
penalty is prescribed is liable on summary conviction to a fine not exceeding $5,000.

Remedies
24.  Despite any other remedy that may be available in any court of
competent jurisdiction, any person who is aggrieved by any act or omission of
an employer in contravention of Part 2 is entitled to claim or apply for all or
any of the following remedies—
(a) damages from the employer, or any other person or body
covered under this Act, for any loss caused directly or indirectly as a
result of the contravention;

(b) an order directing the employer or other relevant person or body
covered under this Act to redress the contravention, including an order
to employ, re-employ or reinstate any person, although the vacancy in
question has already been filled and although the employer may be
liable to any claim arising from the need to dismiss or terminate the
services of any other employee who has been engaged;

(c) an order making any decision found to have been based on

unlawful discrimination voidable;

(d) any other order the court may deem fair and just to remedy the cause and effect of the discrimination.

246.    As a result of the above-described conduct, Plaintiff Doe has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

247.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for judgment as follows:

As to All Causes of Action

1.  For general, compensatory, and/or special damages in an amount according to proof for Plaintiff's injuries, mental and/or emotional distress, medical expenses, actual financial losses, consequential financial losses, incidental financial losses, loss of past and future earnings, loss of salary and benefits, and all damages flowing therefrom for an amount in excess of $10,000,000;

2.  For all general and special damages to compensate Plaintiff for an amount in excess of $10,000,000;

3.  For punitive damages, as allowed by law, that will sufficiently punish, make an example of, and deter future conduct by Defendants for an amount in excess of $10,000,000;

4.  For prejudgment and post-judgment interest according to any applicable provision of law, according to proof for an amount in excess of $10,000,000;

5. For attorney's fees and costs for an amount in excess of $10,000,000;

6. Costs of suit; and

7. For such other and further relief as the Court may deem just and proper.


Dated: June 8, 2022

**DEREK SMITH LAW GROUP, LLP**

*Attorneys for Plaintiff JANE DOE*

By:

*/s/ Matt E.O. Finkelberg*
MATT E.O. FINKELBERG, ESQ.

633 West 5th St., Suite 3250
Los Angeles, CA 90071
(310) 602-6050

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues to be tried, as provided by California Code of Civil Procedure section 631.


Dated: June 8, 2022

**DEREK SMITH LAW GROUP, LLP**
*Attorneys for Plaintiff JANE DOE*


By: _/s/ Matt E.O. Finkelberg_
MATT E.O. FINKELBERG, ESQ.
633 West 5th St., Suite 3250
Los Angeles, CA 90071
(310) 602-6050

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 03 2019**

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE LOS ANGELES SUPERIOR COURT ) | FIRST AMENDED GENERAL ORDER |
| — MANDATORY ELECTRONIC FILING ) | |
| FOR CIVIL ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"**  A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**  The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**  A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**  Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

1

e) **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

   i)    Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

   ii)   Bonds/Undertaking documents;

   iii)  Trial and Evidentiary Hearing Exhibits

   iv)   Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

   v)    Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

i) Depositions;

ii) Declarations;

iii) Exhibits (including exhibits to declarations);

iv) Transcripts (including excerpts within transcripts);

v) Points and Authorities;

vi) Citations; and

vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h)  Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i)  Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j)  Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7)  ELECTRONIC FILING SCHEDULE

a)  Filed Date

i)  Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing.  Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.    (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii)  Notwithstanding any other provision of this order, if a digital document is not filed in due course because of:  (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8)  EX PARTE APPLICATIONS

a)  Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

   i) Any printed document required pursuant to a Standing or General Order;

   ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

   iii) Pleadings and motions that include points and authorities;

   iv) Demurrers;

   v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

   vi) Motions for Summary Judgment/Adjudication; and

   vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

11)  SIGNATURES ON ELECTRONIC FILING

    For purposes of this General Order, all electronic filings must be in compliance with California

Rules of Court, rule 2.257.  This General Order applies to documents filed within the Civil

Division of the Los Angeles County Superior Court.

    This First Amended General Order supersedes any previous order related to electronic filing,

and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

Supervising Judge and/or Presiding Judge.

DATED:  May 3, 2019



KEVIN C. BRAZILE
Presiding Judge

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**06/08/2022**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ D. Williams _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>22STCV18854 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| | Michael L. Stern | 62 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 06/09/2022
    (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By D. Williams _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

Electronically FILED by Superior Court of California, County of Los Angeles on 06/09/2022 12:30 PM David W. Slayton, Executive Officer/Clerk of Court, by S. Tresvant, Deputy Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr><td></td><td>FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)*</td></tr>
</table>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*    MAXIM, INC.; MAXIM MEDIA, INC.; T1 ADVERTISING LLC;
BIGLARI HOLDINGS INC.; THOMAS HERD, individually; and
DIMETRI HOGAN, individually;

**YOU ARE BEING SUED BY PLAINTIFF:**    JANE DOE[1], an individual,
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

<table>
<tr><td>The name and address of the court is: *(El nombre y dirección de la corte es):*</td><td>LOS ANGELES COUNTY SUPERIOR COURT<br>111 NORTH HILL STREET<br>LOS ANGELES, CA 90012</td><td>CASE NUMBER: *(Número del Caso):*<br>22STCV18854</td></tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Matt E.O. Finkelberg, SBN 329503
(310) 602-4905
Derek Smith Law Group, LLI
633 W. 5th Street, Suite 3250
Los Angeles, CA 90071

<table>
<tr><td>DATE:<br>*(Fecha)* 06/09/2022</td><td>Clerk, by<br>*(Secretario)* S. Tresvant</td><td>, Deputy<br>*(Adjunto)*</td></tr>
</table>

David W. Slayton, Executive Officer / Clerk of Court

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100  [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

[SEAL]

| | | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

TELEPHONE NO.: (310)299-5503   FAX NO. (Optional): (310)602-6350

Matt E. O. Finkelberg (SBN 329503)
Derek Smith Law Group, PLLC
633 W. 5th Street, Suite 3250
Los Angeles, CA 90071

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS:
MAILING ADDRESS: 210 W. Temple St.
CITY AND ZIP CODE:
BRANCH NAME: Los Angeles, CA 90012

CASE NAME: Superior Court of California, County of Los Angeles

Jane Doe v. Maxim, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000) | [ ] Counter  [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 22STCV18854 |
| | | | | JUDGE: |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[x] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (*not specified above*) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (*not specified above*) (43)

2. This case [ ] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (*check all that apply*): a. [ ] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (*specify*): Nineteen (19)
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)
Date: June 8, 2022

(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.740;
Cal. Standards of Judicial Administration, std. 3.10

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]                    **CIVIL CASE COVER SHEET**                    **Page 2 of 2**

For your protection and privacy, please press the Clear

 **Superior Court of California, County of Los Angeles**

---

# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

## What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

## Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

## Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

## Main Types of ADR

1. **Negotiation**: Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation**: In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

**How to Arrange Mediation in Los Angeles County**

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

# Exhibit B

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 62

**22STCV18854**                                                             July 18, 2022
**JANE DOE vs MAXIM, INC., et al.**                                               3:59 PM

Judge: Honorable Michael L. Stern          CSR: None
Judicial Assistant: M. Alaniz               ERM: None
Courtroom Assistant: P. Figueroa            Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order

On the Court's own motion, the Order to Show Cause Re: Failure to File Proof of Service scheduled for 08/08/2022 is advanced to this date and continued to 09/15/22 at 11:30 AM in Department 62 at Stanley Mosk Courthouse.

On the Court's own motion, the Case Management Conference scheduled for 09/08/2022 is advanced to this date and continued to 09/15/22 at 11:30 AM in Department 62 at Stanley Mosk Courthouse.

Clerk is to give notice.

Certificate of Mailing is attached.

---

Minute Order                                                          Page 1 of 1