**DEREK SMITH LAW GROUP, LLP**
Matt E.O. Finkelberg, (SBN 329503)
633 West 5th Street, Suite 3250
Los Angeles, CA 90071
Telephone:      (310) 602-6050
Facsimile:      (310) 602-6350
Email:          matt@dereksmithlaw.com

*Attorneys for Plaintiff Jane Doe*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an Individual Woman,<br><br>       Plaintiff,<br><br>        vs.<br><br>MAXIM, INC.; MAXIM MEDIA, INC.; T1 ADVERTISING LLC; BIGLARI HOLDINGS INC.; THOMAS HERD, individually; and DIMETRI HOGAN, individually;<br><br>       Defendants. | Case No.  2:22-cv-05289-AS<br><br>FIRST AMENDED COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES<br><br>1.  Trafficking Victims Protection Act, 18 U.S.C. § 1591;<br>2.  Sexual Battery;<br>3.  Sexual Assault;<br>4.  Gender Violence;<br>5.  Sexual Harassment in Violation of the Fair Employment and Housing Act [Cal. Gov't Code §12940(j)]<br>6.  Discrimination [Cal Gov't Code §12940(a)];<br>7.  Failure to Prevent Harassment and Discrimination from Occurring in Violation of the Fair Employment and Housing Act;<br>8.  Retaliation in Violation of the FEHA [Cal. Gov't Code §12940(k)];<br>9.  Wrongful Termination in Violation of Public Policy;<br>10. Aiding and Abetting in Violation of Gov't Code §§12940 Et Seq; |

11. Negligence
12. Negligent Supervision
13. Intentional Infliction of Emotional Distress
14. Negligent Infliction of Emotional Distress
15. Violation of Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act

DEMAND FOR JURY TRIAL

Plaintiff Jane Doe, by and through her attorneys, the Derek Smith Law Group, LLP, hereby complains of Defendants MAXIM, INC.; MAXIM MEDIA, INC.; T1 ADVERTISING LLC; BIGLARI HOLDINGS INC.; THOMAS HERD, individually; and DIMETRI HOGAN, individually, upon information and belief, as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this action charging pursuant to, *inter alia*, the Trafficking Victims Protection Act 18 U.S.C. § 1591, the laws of the State of California, and the law of Saint Lucia based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being sexually assaulted, battered, retaliated against, and harassed.

## JURISDICTION AND VENUE

2.      Jurisdiction of this action is conferred upon this Court as this case involves a federal question under 18 U.S.C. § 1591 and 28 U.S.C. §1331 states that

– 2 –
FIRST AMENDED COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

3.      This Court has supplemental jurisdiction over Plaintiff's related state law and local ordinance claims pursuant to 28 U.S.C. § 1367(a) because her claims under California law form part of the same case or controversy under Article III of the United States Constitution.  Plaintiff's state law claims share all common operative facts with Plaintiff's federal law claims, and the parties are identical.

4.      Defendants MAXIM, MEDIA, T1, and BIGLARI are subject to suit under the California Fair Employment and Housing Act ("FEHA") as they regularly employ five or more persons in the State of California. [Gov't Code § 12926(d).] FEHA prohibits discrimination and retaliation on the basis of race, sex, color, national origin, ancestry and age, among other acts, by an employer against an employee.

5.      Defendants HERD and HOGAN are individuals subject to suit under FEHA.  [Gov't Code § 12940(j)(3)].

6.      Plaintiff has exhausted all administrative remedies necessary with the Department of Fair Employment and Housing and has timely brought this action.

7.      Venue properly lies in the Central District of California in that a substantial part of the events or omissions giving rise to the claim occurred in Los Angeles, CA pursuant to 28 U.S.C. 1391.

8.      This court has jurisdiction to hear both statutory and common law claims

against Defendants.

## **THE PARTIES**

9.     Plaintiff JANE DOE ("Plaintiff") is an individual resident of California.

10.     Plaintiff is a sexual assault victim and is identified herein as JANE DOE.

Please see *Doe v. Blue Cross & Blue Shield United of Wisc.,* 112 F.3d 869, 872 (7th

Cir. 1997) ("fictitious names are allowed when necessary to protect the privacy of ...

rape victims, and other particularly vulnerable parties or witnesses"). Additionally,

"the public generally has a strong interest in protecting the identities of sexual assault

victims so that other victims will not be deterred from reporting such crimes." *Doe*

*No. 2 v. Kolko,* 242 F.R.D. 193, 195 (E.D.N.Y. 2006); *see also Doe v. Evans,* 202

F.R.D. 173, 176 (E.D. Pa. 2001) (granting anonymity to sexual assault victim); *Doe v*

*Penzato*, No. 10 Civ. 5154 (MEJ), 2011 WL 1833007, at *3 (N.D. Cal. May 13,

2011).

11.     At all times material, Defendant MAXIM INC. ("MAXIM") was and has

been Plaintiff's employer and held supervisory authority over Plaintiff, controlling

various tangible aspects of her employment, and having the ability to hire and fire

Plaintiff.

12.     At all times material, Defendant MAXIM MEDIA INC. ("MEDIA") was

and has been Plaintiff's employer and held supervisory authority over Plaintiff,

controlling various tangible aspects of her employment, and having the ability to hire

and fire Plaintiff.

13.    At all times material, Defendant T1 ADVERTISING LLC ("T1") was and has been Plaintiff's employer and held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, and having the ability to hire and fire Plaintiff.

14.    At all times material, Defendant BIGLARI HOLDINGS INC. ("BIGLARI") was and has been Plaintiff's employer and held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, and having the ability to hire and fire Plaintiff

15.    At all times material, Defendant THOMAS HERD ("HERD") was and has been Defendant MAXIM, MEDIA, T1, and BIGLARI's employee, agent, representative, and servant.  As such, Defendant HERD was and is Plaintiff's employer and effectively held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, including the ability to hire and fire Plaintiff.

16.    At all times material, Defendant DIMETRI HOGAN ("HOGAN") was and has been Defendant MAXIM, MEDIA, T1, and BIGLARI's employee, agent, representative, and servant.  As such, Defendant HOGAN was and is Plaintiff's employer and effectively held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, including the ability to hire and fire Plaintiff.

17.    Defendants MAXIM, MEDIA, and BIGLARI allowed Defendants

HOGAN and HERD to operate as agents and representatives for Defendant MAXIM, MEDIA, and BIGLARI.

18. Defendants MAXIM, MEDIA, and BIGLARI were aware of Defendants HOGAN and HERD's scheme of quid pro quo sexual harassment, facilitated it, and allowed it to happen, using Defendants MAXIM, MEDIA, and BIGLARI's title and prestige as leverage.

19. Defendants MAXIM, MEDIA, T1, and BIGLARI are an "employer" as defined by California Government Code Sections 12926(d), 12940(a), 12940(h) and 12940(j)(4)(A) because they employed more than five persons.

20. Each Defendant sued in this action has acted, in all respects pertinent to this action, as the other Defendant's agent, and has carried out a joint scheme, enterprise, business plan, or policy in all respects pertinent hereto. The acts of each Defendant are therefore legally attributable to the other Defendant.

21. Defendants T1, HERD and HOGAN has an identity in interest with Defendants MAXIM, MEDIA, and BIGLARI.

22. Under California law, Defendants are jointly and severally liable as employers for the violations alleged herein because they have each exercised sufficient control over Plaintiff. Each Defendant had the power to hire and fire Plaintiff, supervise and control Plaintiff's work schedule and/or conditions of employment, determine Plaintiff's rate of pay, and maintain Plaintiff's employment

records.  Defendants suffer or permit Plaintiff to work and/or "engage" Plaintiff so as to create a common law employment relationship.  As Plaintiff's joint employers, Defendants are jointly and severally liable for all relief available to Plaintiff under the law.

23.     Moreover, Defendants MAXIM, MEDIA, and BIGLARI had the power to hire, fire, and conduct business with Defendants HERD and HOGAN.  Defendants MAXIM, MEDIA, and BIGLARI exercised sufficient control over Defendants HERD and HOGAN as they had the ability to not engage in business and the joint scheme and plan of Defendants to leverage, coerce, transport, entice, and recruit Plaintiff in for forced sexual acts in exchange for profiting off of photos of Plaintiff.

**FACTS COMMON TO ALL CAUSES OF ACTION**

24.     At all times material, Plaintiff was and is a female residing in the State of California.

25.     At all times material, Plaintiff was and is a model and social media influencer.

26.     Defendant HERD is a columnist, employee, and agent for Defendants MAXIM, MEDIA, and BIGLARI, with more than 25 published articles on the MAXIM.com website. https://www.maxim.com/author/thomas-herd.

27.     Defendants MAXIM, MEDIA, and BIGLARI directly profit off of the business they engage with Defendants HERD, HOGAN, and T1, including the

photoshoots that Defendants HERD, HOGAN, and T1 use to entice, recruit, transport, and force Plaintiff and other similarly situated women to be subjected to sexual battery and assault.

28.     Defendants MAXIM, MEDIA, and T1 profit off of the photoshoots and articles that are posted on their website by Defendants T1, HERD, and HOGAN.

29.     Defendants MAXIM, MEDIA, and T1 employ and engage in business with Defendants T1, HERD, and HOGAN.  Defendants MAXIM, MEDIA, and T1 profit off of the articles that are posted by Defendants T1, HERD, and HOGAN.

30.     Defendant HOGAN is Defendant HERD's business partner and go-to photographer, taking photos for Defendants HERD, MAXIM, MEDIA, and BIGLARI when Defendant HERD is writing for MAXIM, MEDIA, and BIGLARI. https://www.maxim.com/news/photographer-pays-tribute-to-classic-naomi-campbell-photos-2019-12.

31.     Around the summer of 2020, Plaintiff met Defendants HERD and HOGAN in Los Angeles, CA.  While in Los Angeles, Defendant HERD told Plaintiff that he is going to help her and is going to get Plaintiff a Maxim spread and article in Maxim, demonstrating his employment, agency, and business relationship with Defendants MAXIM, MEDIA, and BIGLARI.

32.     While Plaintiff was talking with Defendant HERD, Defendant HERD told Plaintiff something to the effect of, "*I write for and work for Maxim*."

Defendant HERD additionally showed Plaintiff the articles that he wrote for Defendants MAXIM, MEDIA, and T1, to show Plaintiff that he was working for and employed by Defendants MAXIM, MEDIA, and BIGALRI.

33.    Defendants MAXIM, MEDIA, and BIGLARI allowed for and were aware that Defendant HERD made himself out to be an employee, agent, and representative of Defendants MAXIM, MEDIA, and BIGLARI, giving both Defendants HERD and HOGAN actual and apparent authority to act on behalf of Defendants MAXIM, MEDIA, and BIGLARI.

34.    Defendants HOGAN, HERD, and T1 consistently engaged in business with Defendants MAXIM, MEDIA, and BIGLARI, and all of Defendants profited off of this business relationship and the common scheme and enterprise that Defendants HERD, HOGAN, and T1 were engaging with throughout their employment and business dealings with Defendants MAXIM, MEDIA, and BIGLARI.

35.    Around the beginning of July 2020, while Plaintiff and Defendants were in Los Angeles, CA, Defendants MAXIM, MEDIA, T1, BIGLARI, and HERD hired Plaintiff to pose for a MAXIM photo-shoot that would take place around July 26, 2020, in Florida. Defendant HERD told Plaintiff she would be featured in a MAXIM article for Defendants MAXIM, MEDIA, and BIGLARI., along with Plaintiff's photos.

36.    At the time of this meeting in Los Angeles, CA, Defendants knew that

they were enticing, recruiting, and luring Plaintiff to come meet with them for a "photo shoot" that was, in actuality, an opportunity for Defendants to sexually assault and batter Plaintiff.

37. Defendants MAXIM, MEDIA, and BIGLARI authorized, were aware of, and allowed for Defendants HERD and HOGAN to do this and gave them the actual and apparent authority to act on their behalf.

38. Defendants HERD, HOGAN, and T1 on their websites, biographies, and social media profiles boast their employment, business relations and dealings, and work with Defendants MAXIM, MEDIA, and BIGLARI. Defendants MAXIM, MEDIA, and BIGLARI were aware of and had knowledge that Defendants HERD and HOGAN publicly made themselves out to be employees, agents, and engaged in a business relationship with Defendants MAXIM, MEDIA, and BIGLARI.

39. As a result of this meeting in Los Angeles, CA and based on representations made by Defendants in Los Angeles, CA, Plaintiff met Defendants in Florida and St. Lucia where Defendants sexually harassed, assaulted, and battered Plaintiff.

40. Plaintiff flew to Florida and posed for the photo-shoot. Defendant HOGAN took the photos of Plaintiff for Defendants HERD, MAXIM, MEDIA, T1, and BIGLARI.

41. Throughout the time Plaintiff was in Florida for the photo-shoot,

Defendant HOGAN made romantic and sexual overtures to Plaintiff, which Plaintiff rebuffed.

42.     Defendant HERD and HOGAN's actions were sexually predatorial, as they held a position of power over Plaintiff.

43.     In retaliation for Plaintiff rebuffing Defendant HOGAN's advances, while Plaintiff was in California, Defendant HOGAN sent Plaintiff very aggressive and angry messages, including messaging Plaintiff that he is, "super disappointed with [Plaintiff], when [Plaintiff] could have had the world from [Defendant HOGAN]," and telling Plaintiff that he does not respect Plaintiff and Plaintiff would never have a professional relationship with him.

44.     Defendant HOGAN sexually harassed Plaintiff.

45.     Defendant HOGAN discriminated against and harassed Plaintiff because of Plaintiff's sex and gender.

46.     Defendants HERD, HOGAN, BIGLARI, MEDIA, T1, and MAXIM stripped Plaintiff of her MAXIM article and did not publish the article or the photo-shoot as promised to Plaintiff, because Plaintiff rebuffed Defendant HOGAN's sexual advances.

47.     Defendants MAXIM, MEDIA, BIGLARI, T1, and HOGAN subjected Plaintiff to quid pro quo sexual harassment.

48.     Defendants MAXIM, MEDIA, BIGLARI, T1, and HOGAN

discriminated against and harassed Plaintiff because of Plaintiff's sex and gender; retaliated against Plaintiff for refusing to engage in a sexually intimate relationship by failing to hire Plaintiff and wrongfully terminating Plaintiff by not including Plaintiff in the magazine.

49.     Defendants HOGAN and Herd leveraged their relationship, employment, apparent and actual authority, and agency of Defendants MAXIM, MEDIA, BIGLARI, and T1 to place themselves in a position of power and authority over Plaintiff to force Plaintiff to engage in sexual acts.

50.     Because Plaintiff worked for Defendants, Defendants HERD and HOGAN thought they were entitled to sexually abuse and harass Plaintiff. Moreover, Defendant HOGAN believed he was able to sexually assault and batter Plaintiff because he provided Plaintiff with work, work which Defendants all profited from.

51.     Defendants MAXIM, MEDIA, BIGLARI, T1, HERD, and HOGAN created a scheme and common enterprise of recruiting and coercing women to have sexual relations with them in exchange for employment opportunities.  At the very least, Defendants MAXIM, MEDIA, and BIGLARI were aware of, had knowledge of, and allowed for and gave Defendants HERD, HOGAN, and T1 actual and apparent authority to engage in this scheme and common enterprise.

52.     In short, it was Defendants' scheme and common practice for Defendant HOGAN and HERD to sexually harass, use, and exploit females interested in working

for Defendants, to Defendants HOGAN and HERD, thereby affecting interstate commerce.  This affected interstate commerce because Defendants sexually harassed, assaulted, and battered Plaintiff in exchange for putting Plaintiff in Defendants magazines, articles, and websites which are distributed nationally and worldwide. Defendants also would have profited off of pictures of Plaintiff, and would have obtained revenue, employment, and future employment for Plaintiff.

53.    Thereafter, Defendant HERD pursued Plaintiff romantically, including, for example, messaging Plaintiff while she was in California, ***"Baby girl*** (devil face and heart emojis) ***come on you have to love the combination of a young, handsome self made guy and thoroughbred stannions on the malibu coast*** (horse emojis).***"*** Plaintiff maintained a friendly relationship with Defendant HERD, not wanting to upset someone with so much clout at MAXIM.

54.    After some time had passed, around December 26, 2020, Defendant HERD reached out to Plaintiff with a new job/employment offer for a MAXIM photo-shoot.

55.    While Plaintiff was in California, Defendant HERD wrote to Plaintiff, "I wanted to write you today as ***I have a simply breathtaking New Years invitation for you that comes loaded with a Maxim Magazine COVER Feature as the cherry on top.*** For context, I've rented my own villa on the cliffs of St. Lucia's west coast from Dec 29- Jan 4. While I'm there, ***the Maxim Magazine Head Publisher Susan***

*McKinley asked me to do a travel inspiration piece to be published Jan 5 on the cover of Maxim.com.* Since *my VP Dimetri will be joining me (who doubles as a world class GQ & Maxim photographer)*, we decided why not shoot an amazing piece at the breathtaking promontory."

56.     Here, Defendant HERD is explicitly stating that "Maxim Magazine Head Publisher Susan Mckinly," asked Defendant HERD to do a travel inspiration piece for the cover of Defendants MAXIM, MEDIA, and BIGLARI's Maxim.com website. Defendants MAXIM, MEDIA, and BIGLARI instructed, hired, and authorized Defendant HERD to employ, engage with, entice, transport, coerce, and force Plaintiff to a photoshoot that they profited off of where Plaintiff was subjected to sexual assault and battery.  The Head Publisher for Defendants MAXIM, MEDIA, and BIGLARI directly granted, hired, authorized, and gave Defendant HERD actual and apparent authority to act on behalf of Defendants MAXIM, MEDIA, and HERD, and was aware that Defendant HERD was action as an employee of Defendants MAXIM, MEDIA, and HERD or at the very least as one of their agents and business partners.

57.     Defendant HERD also specifically texted Plaintiff that Defendant HOGAN is a "world class GQ & Maxim photographer," further illustrating and showing that Defendant HOGAN was employed by Defendants MAXIM, MEDIA, and BIGLARI as their photographer and was not only an employee of theirs but had actual and apparent authority to act on their behalf.

58.     Defendant HERD was therefore directed by his employer, Defendants MAXIM, MEDIA, and BIGLARI through Susan McKinley, Defendant MAXIM, MEDIA, and BIGLARI's "Head Publisher," to hire and work with Plaintiff.

59.     Defendant HERD told Plaintiff that the trip would be with her and a group of Defendants' friends, and would include, flights, villa stay, a chartered yacht, a private chef, a private masseuse, a DJ and a mixologist. The description reassured Plaintiff of the validity of the MAXIM photo-shoot being run by Defendants MAXIM, MEDIA, and BIGLARI.

60.     Plaintiff responded with interest and asked whether she would have her own room on the trip, particularly in light of the fact that Defendant HOGAN would be present. Defendant HERD assured Plaintiff that she would have her own room or would share a room with another female. Plaintiff accepted the job and Defendant HERD booked Plaintiff a ticket, hiring Plaintiff for the photoshoot.

61.     Around the December 31, 2020, Defendants MAXIM, MEDIA, T1, BIGLARI, and HERD hired Plaintiff to pose for a MAXIM magazine photo-shoot.

62.     Around December 31, 2020, Plaintiff arrived to St. Lucia and discovered that Defendant HERD lied about the accommodations and the invitees. Instead of a group of people, including other women, a private masseuse, DJ, mixologist, and personal chef, Plaintiff found herself alone with Defendants HERD and HOGAN. Plaintiff immediately asked if Defendants HERD and HOGAN were in fact shooting a

MAXIM photo-shoot. Defendants HERD and HOGAN assured Plaintiff that the MAXIM photo-shoot would take place as planned.

63.     That same day, immediately upon Plaintiff's arrival, Defendants HERD and HOGAN asked Plaintiff, ***"Are you going to make us food and dinner?"*** and insisted, ***"We are young gods," "We can make anyone popular if they asked,"*** and ***"Nobody can tell us what to do."*** Defendants HERD and HOGAN were incessantly rude and degrading towards Plaintiff and any staff on site to project superiority and power over Plaintiff.

64.     48.     That evening, Plaintiff and Defendants had dinner at a nearby hotel and returned to the villa. Plaintiff immediately went into her room early to avoid interaction with Defendants, particularly because Plaintiff was unexpectedly alone with both men and had been told a group was attending including other women.

65.     The next morning, around January 1, 2021, Plaintiff again asked Defendants HERD and HOGAN whether there would be a MAXIM photo-shoot. Defendant HOGAN stated the photo-shoot will be on January 2, 2021, at 11 AM.

66.     Defendants then left the villa and Plaintiff was relieved to be alone.

67.     Around 3:00 pm a young woman named "A", who Defendant HERD had been talking to online, arrived at the villa while the Defendants were out. "A" asked Plaintiff if Plaintiff is "there for Demitri" implying that Plaintiff was to engage in a sexual relationship with Defendant HOGAN while "A" pursued Defendant HERD.

Plaintiff explained that she was there for the MAXIM photo-shoot. "A" explained that she came to meet and pursue a romantic relationship with Defendant HERD.

68.     Soon thereafter Plaintiff and "A" met up with Defendants at the beach of a nearby hotel. "A" and Defendant HERD immediately became very affectionate and physical. Defendant HOGAN began making physical advances toward Plaintiff, including touching Plaintiff's back and pulling Plaintiff towards him. Plaintiff rebuffed these advances.

69.     After dinner, the group returned to the villa and Defendant HERD and "A" engaged in sexual acts on the couch. Plaintiff became uncomfortable and retreated to her room upstairs.

70.     Soon thereafter, Defendant HOGAN texted Plaintiff to come to his room and asked her ***"can you rub my back?"*** Plaintiff felt pressured and was fearful of losing the MAXIM cover shoot, as well as the power that Defendants had over Plaintiff's career, so Plaintiff went to Defendant HOGAN's room and gave him a massage. Defendant HOGAN immediately made sexual advances toward Plaintiff, including touching Plaintiff's breasts, buttocks, and vagina throughout the massage and telling Plaintiff that he wanted to ***"make [Plaintiff] squirt."*** Plaintiff rebuffed these advances stating, *"No, no, I'm not interested," "No, I'm on my period,"* and *"No, I have a boyfriend."* Defendant HOGAN refused to stop and badgered Plaintiff to perform oral sex on Defendant HOGAN. Specifically, Defendant HOGAN said to

Plaintiff, *"What, can you at least give me a fucking blow job."* Fearing for her career, Plaintiff gave in to the pressure and performed oral sex on Defendant HOGAN, but stopped and rebuffed it again before Defendant HOGAN ejaculated. When Plaintiff stopped, Defendant HOGAN became visibly upset.

71.     Defendant HOGAN then badgered Plaintiff to have sexual intercourse with him, and Plaintiff repeatedly refused, and eventually made an excuse and told Defendant HOGAN that she was on her period and feeling bloated. Plaintiff was then able to finally leave and retreated to her room.

72.     Feeling disgusted and ashamed, Plaintiff finally fell asleep for a few hours and woke up very early in the morning of January 2, 2021, and could not fall asleep. Plaintiff decided that Plaintiff was going to confront Defendant HOGAN and express that she was in fear that Defendants HOGAN and HERD will only put Plaintiff in Maxim if she has sex with Defendant HOGAN.  Plaintiff was afraid that because she rebuffed Defendant HOGAN's sexual advances she will no longer be put in the magazine.  Plaintiff texted Defendant HOGAN to see if he was awake, and he said he was, so Plaintiff went to Defendant HOGAN's room fully clothed. When Plaintiff arrived, Defendant HOGAN said *"Oh, you are wearing clothes," "Why are you wearing clothes?" and "Why are your clothes on?"* indicating that he expected Plaintiff to be nude and to have sex with him.

73.     Plaintiff became fearful of losing the MAXIM cover shoot and for

Plaintiff's career and stated, *"I am not feeling well, let's just talk,"* and changed the topic and talked about family and religious beliefs. Defendant HOGAN again attempted to initiate sex with Plaintiff and repeatedly placed Plaintiff's hand on Defendant HOGAN's groin. Terrified of Defendant HOGAN, Plaintiff again made an excuse that she is not feeling well, is feeling bloated, has a headache, and needs more rest.  Plaintiff was eventually able to get away and return to Plaintiff's room.

74.     Defendant HOGAN sexually harassed, assaulted, and battered Plaintiff.

75.     Defendant HOGAN discriminated against and harassed Plaintiff because of Plaintiff's sex and gender.

76.     Defendants HERD, HOGAN, BIGLARI, MEDIA, T1, and MAXIM stripped Plaintiff of her MAXIM article and did not publish the article or the photo-shoot as promised to Plaintiff, because Plaintiff rebuffed and refused to comply with Defendant HOGAN's sexual advances.

77.     Defendants MAXIM, MEDIA, BIGLARI, T1, and HOGAN subjected Plaintiff to quid pro quo sexual harassment.

78.     About an hour later, while Plaintiff was in Plaintiff's room, Plaintiff received a voice note message from Defendant HOGAN cancelling the MAXIM photo-shoot. Defendant HOGAN said, ***"I spoke to Tommy and I told him that you weren't feeling too well today, so him and I both agreed that you can just send in a couple photos to MAXIM along with a bio*** that you want us to include kind of talking

about some of the things that you have coming up and we will have one of the journalists kind of write up like an insert in there cuz the maxim story is going to be like a feature with like a few different girls included in it, and its going to have like a headline with your name on it. ***So, if you just want to send over like a couple of photos that are horizontal that maybe you have shot with other photographers that we could use those images for the shoot, because I know like everybody is tired today, and I know you are feeling bloated and like you have a headache, so I don't want to like force you to shoot. Either way like you will get MAXIM, 100 percent."***

79.     Plaintiff responded that they should still try to get some photos that day and that sending in other photos could be a backup. Plaintiff expressed that Plaintiff wanted to shoot with Defendants HOGAN, and that once Plaintiff was ready for the day, they could take some photos for at least a few minutes and see what they get.

80.     Despite Plaintiff's pleas to have a photo shoot so that she was able to perform the work she was asked to do, Defendants HOGAN and HERD refused to take any photos of Plaintiff in retaliation for Plaintiff rebuffing Defendant HOGAN's sexual advances and refusing to have sex with Defendant HOGAN.

81.     Defendants MAXIM, MEDIA, BIGLARI, T1, HERD, and HOGAN discriminated against and harassed Plaintiff because of Plaintiff's sex and gender; retaliated against Plaintiff for refusing to comply and rebuffing Respondent HOGAN's sexual harassment, assault, and battery by failing to hire Plaintiff and

wrongfully terminating Plaintiff by not including Plaintiff in the magazine.

82.     When Plaintiff left on January 3, 2021, she asked Defendants again about the photo-shoot and article, and Defendant HERD assured Plaintiff that it would proceed as planned, and that he would send her the interview questions for the article within a few days. Defendant HERD told Plaintiff that the cover feature of Plaintiff would be published by MAXIM on January 5, 2021.

83.     To this date, Plaintiff has not heard from Defendant HOGAN, HERD, BIGLARI, MEDIA, T1, or MAXIM, and has been stripped of the cover feature and article with MAXIM, because Plaintiff rebuffed Defendant HOGAN's sexual advances.

84.     Defendants discriminated against Plaintiff because of Plaintiff's sex and gender and retaliated against Plaintiff for rebuffing Defendants' sexual advances and for complaining of discrimination on a constant basis.

85.     Defendants sexually harassed, assaulted, and battered Plaintiff, disparately treated Plaintiff, disparately impacted Plaintiff, subjected Plaintiff to quid prop quo sexual harassment and retaliated against Plaintiff because of Plaintiff's sex and gender, as well as because of Plaintiff's complaints of discrimination and rebuffing Defendants' sexual advances.

86.     Defendants wrongfully terminated Plaintiff because she rebuffed, refused to comply, and complained of Defendant HOGAN's sexual advances, harassment,

assault, and battery.

87.    As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer from anxiety, loss of sleep, stress, depression, and severe emotional distress.

88.    Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

89.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

90.    Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

91.    Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting conditions as a result of Defendants' discriminatory conduct.

92.    Alternatively, Plaintiff claims constructive discharge.

93.    Plaintiff claims alternatively (in the event Defendant Claims so or that the Court determines) that Claimant is an Independent Contractor, Volunteer, or

Applicant, and Claimant makes all applicable claims for the above conduct and facts under the applicable laws pertaining to Independent Contractors, volunteers, or applicants.

94.     Furthermore, in such, case, Plaintiff claims that Defendant owed and breached its duty to Plaintiff to prevent the harassment/discrimination/retaliation and is liable therefore for negligence.

95.     The above are just some of the examples of the unlawful discrimination and disparate treatment to which the Defendants subjected the Plaintiff on a continuous and on-going basis throughout Plaintiff's employment.

### FIRST CAUSE OF ACTION
### TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
(Against All Defendants)

96.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

97.     In addition to what is stated above, Defendants BIGLARI, MAXIM, MEDIA, T1, HOGAN, and HERD engaged in interstate commerce as described herein through, inter alia, their use of the internet, magazines, phones, text messages, advertising, promotion, and interstate concerts. Furthermore, the above position, employment, and "Maxim Magazine COVER Feature" Defendants were using to entice Plaintiff for sex acts was a position which would have distributed Plaintiff's image on the internet and in print throughout the world from which Defendants would

have and do profit from.  Defendants, in effecting interstate commerce by producing, running, and creating a media company and magazine, through the enticement and recruitment of putting Plaintiff in their Magazine and Website, enticed and recruited Plaintiff to travel with Defendants and be sexually assaulted and battered in exchange for a "Maxim Magazine COVER Feature."  Thereafter, because Plaintiff was not a willing and enthusiastic participant in the sexual harassment, assault and battery, Defendants failed to place Plaintiff in the "Maxim Magazine COVER Feature," on Defendants website, or on any of Defendants articles, preventing Plaintiff from additionally being compensated for her work and all future work which would have come from it had she complied.  Defendants enticed and recruited Plaintiff for this position and committed the sexual assault and battery on Plaintiff by force.  Through Defendants' sexual assault and battery, Defendants all would have profited and obtained revenue from Plaintiff if she was included in the magazine, article, and website.  It was Defendants' scheme to profit from the exploitation of females by using them to obtain viewership and revenue from Defendants' readers and viewers.  Through this scheme and attempted prostitution of Plaintiff, Defendants continued to produce Maxim Magazine, made money off of the Magazine, and attempted to make money by using Plaintiff's photographs, had she not complained of and rejected the sexual assault and battery of Defendants.  Alternatively, Defendants MAXIM, MEDIA, and BIGLARI gave actual and apparent authority to, had knowledge of,

profited off of, and allowed Defendants HERD, HOGAN, and T1 to engage in the above.

98.     Plaintiff brings this claim pursuant to all applicable sections of 18 U.S.C.A. §§ 1591, 1595 in that "An individual who is a victim of a violation of Section 1589, 1590, or 1591 of title 18, United States Code, may bring a civil action in any appropriate district court of the United States. The court may award actual damages, punitive damages, reasonable attorneys' fees, and other litigation costs reasonably incurred." 18 U.S.C.A. §1595(a).

99.     18 USC § 1591. Sex trafficking of children or by force, fraud, or coercion states as follows:

**(a)** Whoever knowingly--
**(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
**(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).
**(b)** The punishment for an offense under subsection (a) is--
**(1)** if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or

**(2)** if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

**(c)** In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

**(d)** Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be fined under this title, imprisoned for a term not to exceed 25 years, or both.

**(e)** In this section:

**(1)** The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

**(2)** The term "coercion" means--

**(A)** threats of serious harm to or physical restraint against any person;

**(B)** any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

**(C)** the abuse or threatened abuse of law or the legal process.

**(3)** The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

**(4)** The term "participation in a venture" means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1).

**(5)** The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

**(6)** The term "venture" means any group of two or more individuals associated in fact whether or not a legal entity

100.   Additionally, 18 USCA § 1595. Civil remedy states as follows:

(a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by

receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

(b)(1) Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.

(2) In this subsection, a "criminal action" includes investigation and prosecution and is pending until final adjudication in the trial court.

(c) No action may be maintained under subsection (a) unless it is commenced not later than the later of--

(1) 10 years after the cause of action arose; or

(2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense

101.   Broad, expansive language is employed in Trafficking Victims Protection Act (TVPA) and its remedial provision, which permits civil actions for damages under TVPA. *Noble v Weinstein*, 335 F Supp 3d 504 [SDNY 2018], mot to certify appeal denied, 17-CV-09260 (AJN), 2019 WL 3940125 [SDNY Aug. 5, 2019].

102.   Defendants subjected Plaintiffs to commercial sex acts by force and coercion, including both physical and financial.

103.   18 U.S.C. 1591 § (e)(3) defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."

104.   A commercial sex act means any sex act, on account of which anything of value is given to or received by any person. The specific conditions are the use of force, fraud, or coercion, or conduct involving persons under the age of 18. See the Department of Justice's definition: https://www.justice.gov/crt/involuntary-servitude-

forced-labor-and-sex-trafficking-statutesenforced. "Section 1591 criminalizes sex trafficking, which is defined as causing a person to engage in a commercial sex act under certain statutorily enumerated conditions. A commercial sex act means any sex act, on account of which anything of value is given to or received by any person. The specific conditions are the use of force, fraud, or coercion, or conduct involving persons under the age of 18."

105.   Defendants conditioned Plaintiff's employment, on Defendants' ability to continue to sexually assault and engage in forced sex acts. Additionally, the financial aspect to the relationship was also an element of the "forced" sex acts.

106.   Defendants knowingly recruited, enticed, harbored, and/or obtained Plaintiff through means of force, threats of force, and by a combination of such forceful means, and forcibly caused Plaintiff to engage in an unwanted sexual act for a commercial benefit.

107.   18 USC 1594 further provides liability for "Whoever conspires with another to violate section 1591" Defendants further conspired to violate 1591 as stated herein.

108.   18 USC 1594 further states that it shall be unlawful for anyone who "obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section." Assuming Defendants take such retaliatory action as stated above, Plaintiff makes a claim for such.

109.   Defendants are liable to Plaintiffs under 18 USCA § 1591, 1594 and 1595.

## SECOND CAUSE OF ACTION
### FOR SEXUAL BATTERY
(Against Defendants BIGLARI, MAXIM, MEDIA, and HOGAN)

110.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

111.   As described herein above, Defendant HOGAN caused, and intended to cause, imminent apprehension of a harmful and offensive contact with an intimate part of another.  In doing these acts, Defendant HOGAN caused, and intended to cause, imminent apprehension of a harmful and offensive contact with Plaintiff, in violation of, inter alia, Civil Code section 1708.5, and related laws. At no time did Plaintiff consent to any of the acts of Defendant HOGAN described herein.

112.   As a result of Defendant HOGAN's conduct, Plaintiff was placed in apprehension and fear for Plaintiff's physical well-being.

113.   Defendant HOGAN's sexual battery involved actual physical contact.

114.   Defendant HOGAN did the aforementioned acts with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff's person and would offend a reasonable sense of personal dignity. Further, said acts did cause a harmful or offensive contact with an intimate part of Plaintiff's person that would offend a reasonable sense of personal dignity.

115.    Because of Defendant HOGAN's position of authority over Plaintiff, and Plaintiff's mental and emotional state, Plaintiff was unable to, and did not, give legal consent to such acts.

116.    As a direct, legal and proximate result of the acts of Defendant HOGAN, Plaintiff sustained serious and permanent injuries to Plaintiff's person, all of Plaintiff's damage in an amount to be shown according to proof and within the jurisdiction of the Court.

117.    Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI knew or should have known, of the assaults and batteries, but ratified the conduct, as described herein above, by failing to adequately, or at all take remedial steps against Defendant HOGAN, refusing to intervene to protect Plaintiff, among other acts of ratification. As Plaintiff's employers and by ratifying Defendant HOGAN's misconduct, Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI are liable to Plaintiff for battery and assault.

118.    As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages together with prejudgment interest

pursuant to Civil Code sections 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

119.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress.  Plaintiff has further experienced other physical symptoms arising from the wrongful acts of Defendants, and each of them.  Plaintiff will continue to experience said pain and physical and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

120.   The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner pursuant to California Civil Code Section 3294, in order to injure and damage Plaintiff, thereby justifying an award to them of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

## THIRD CAUSE OF ACTION
### FOR SEXUAL ASSAULT
(Against Defendants BIGLARI, MAXIM, MEDIA, T1, and HOGAN)

121.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

122.   Defendant HOGAN committed several overt acts of sexual abuse,

assault, and battery against Plaintiff.

123.   Defendant HOGAN intended to inflict a harmful or offensive conduct against Plaintiff and intended to cause Plaintiff to fear such contact.  Defendant HOGAN knew that the consequence of an offensive contact was certain to result, as Defendant HOGAN's sexual abuse was intentionally inflicted.

124.   Defendant HOGAN's actions placed Plaintiff in apprehension of an immediate harmful or offensive contact.

125.   Plaintiff did not consent to Defendant HOGAN's harmful or offensive contact with Plaintiff's person, or to Defendant HOGAN's conduct, putting Plaintiff in imminent apprehension of such contact.

126.   In doing the things herein alleged, Defendant HOGAN violated Plaintiff's right under California Civil Code § 43 of protection from bodily restraint or harm, and from personal insult. In doing the things herein alleged, Defendant HOGAN violated his duty, pursuant to California Civil Code §1708, to abstain from injuring the person of Plaintiff or infringing upon Plaintiff's rights.

127.   As a result of the above-described conduct and wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will

continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

128.   Defendant HOGAN's sexual assault is a substantial factor in bringing about these harms to Plaintiff.

129.   The conduct of Defendants was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and were carried out with a conscious disregard of Plaintiff's right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code section 3294, entitling Plaintiff to punitive damages against Defendant HOGAN's in an amount appropriate to punish and set an example of Defendants.

### FOURTH CAUSE OF ACTION
### FOR GENDER VIOLENCE
(Against Defendant HOGAN)

130.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

131.   Plaintiff was subjected to one or more acts of Defendant HOGAN that constituted a crime under California law involving the use, attempted use, or threatened use of physical force against Plaintiff. Specifically, Defendant HOGAN

committed the crime of sexual battery and sexual assault against Plaintiff, and those crimes involve the use, attempted use, or threatened use of physical force against the person of another.

132.   Defendant HOGAN committed the crime at least in part based on Plaintiff's gender.

133.   Plaintiff was subjected to Defendant HOGAN's physical intrusion or physical invasion of a sexual nature under coercive conditions. Defendant HOGAN made a physical intrusion of invasion of a sexual nature including, but not limited to, pressuring Plaintiff to perform oral sex on Defendant HOGAN, and the conditions were coercive because Defendant HOGAN was Plaintiff's supervisor.

134.   As a proximate result of Defendant HOGAN's acts, Plaintiff is entitled to actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. Plaintiff is also entitled to an award of attorney's fees and costs pursuant to Civil Code § 52.4, against Defendant HOGAN.

## FIFTH CAUSE OF ACTION
### FOR SEXUAL HARASSMENT IN VIOLATION OF THE FEHA [Cal Gov't Code §12940(j)]
(Against Defendants BIGLARI, MAXIM, MEDIA, T1, HERD, and HOGAN)

135.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

136.   At all times relevant for purposes of this Complaint, Gov't Code §12900

et seq. were in full force and effect and were binding on all Defendants.  Gov't Code §12940(j)(1) states that it is unlawful "[f]or an employer…or any other person, because of…sex, gender, national origin, race, and color…to harass an employee…."

137.   During Plaintiff's employment, Plaintiff was subjected to harassment from Defendants HERD and HOGAN.  Said conduct was severe, pervasive, constant and continuous, and was offensive, humiliating and harassing to Plaintiff and would have been offensive to a reasonable person under Plaintiff's circumstances.

138.   Defendants HERD and HOGAN subjected Plaintiff to quid pro quo sexual harassment.

139.   Defendants HERD and HOGAN engaged in sexually harassing conduct, and Defendants HERD and HOGAN harassed Plaintiff based on Plaintiff's sex and gender that included, but was not limited to comments, gestures, physical touching, and sexual battery.  Plaintiff complained to Defendants about this harassing conduct by Defendants HERD and HOGAN and Defendants failed to take action.

140.   By failing to conduct a reasonable investigation and not taking proper remedial action, Defendants MAXIM, MEDIA, T1, and BIGLARI ratified Defendants HERD and HOGAN's unlawful conduct.

141.   As a proximate result of Defendants' conduct, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment-related opportunities for

growth in Plaintiff's field and damage to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial.

142.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress and has incurred and will likely incur, medical expenses as a result.  Plaintiff will continue to experience said pain and mental and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

143.   The conduct of Defendants, and each of them, and their agents and employees as described herein, was malicious, fraudulent, and oppressive, and done with a willful and conscious disregard for Plaintiff's rights.

144.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute Plaintiff's claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith.  Plaintiff is entitled to recover such attorneys' fees and costs under California Government Code Section 12965(b).

145.   The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to Plaintiff of

punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

## SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION BASED ON SEX AND GENDER IN VIOLATION OF FEHA [Cal Gov't Code §12940(a)]
(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

146.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

147.   At all times relevant for purposes of this Complaint, the FEHA, Gov't Code §12940(a) was in full force and effect and binding on Defendants.  FEHA makes it unlawful for an employer, on the basis of sex, gender, national origin, race, color, and association "to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

148.   Plaintiff, a female, was subjected to harassment based on Plaintiff's sex and gender.  Defendants and each of them treated Plaintiff differently in the terms and conditions of employment in comparison to the other employees that were not of the same sex and gender as Plaintiff.

149.   Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI failed to take any remedial actions against Defendants HERD and HOGAN, even after Plaintiff complained and or rebuffed sexual harassment by Defendants HERD and.  Instead, Defendants ignored Plaintiff's complaints and rebuffs and as a result the harassment continued and worsened, leading to further retaliation, assault, battery, and Plaintiff's

wrongful termination.

150.   As a proximate result of Defendants' conduct, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code Sections 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

151.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress and has incurred and will likely incur, medical expenses as a result.  Plaintiff will continue to experience said emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

152.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute Plaintiff's claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover such attorneys' fees and costs under California Government Code Section 12965 (b).

153.   The acts taken toward Plaintiff were carried out by and/or ratified by

Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

**SEVENTH CAUSE OF ACTION**
**FOR FAILURE TO PREVENT HARASSMENT AND DISCRIMINATION IN VIOLATION OF THE FEHA [Cal. Gov't Code §12940(k)]**
(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

154.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

155.   At all times relevant for purposes of this Complaint, the FEHA, Gov't Code § 12900 et seq., was in full force and effect and binding on Defendants.  FEHA requires Defendants, among other things, "to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

156.   In perpetrating the above-described acts and failures to act, Defendants violated California *Government Code* § 12940 by failing to ensure a workplace free of harassment.  Defendants are responsible for assuring that DFEH provisions are followed, including provisions prohibiting sexual harassment against employees.

157.   In perpetrating the above-described acts and failures to act, Defendants violated California *Government Code* § 12940 by failing to take all reasonable steps necessary to prevent such discrimination based on sex from occurring.

158.   Instead, Defendants created and fostered a hostile, offensive, inappropriate and intolerable work environment, where harassment was condoned, encouraged, tolerated, sanctioned, and ratified.

159.   Defendants repeatedly violated Gov't Code § 12940(k).  Defendants failed to provide Plaintiff with any sexual harassment training.  Additionally, Defendants' acts and failures to act include, but are not limited to, the following:

(a)   Having no policies, practices and procedures and/or failing to implement

policies, practices and procedures and/or having ineffective policies, practices, and procedures regarding Defendants' obligations to refrain from discrimination nd harassment;

(b)   Having no policies, practices and procedures and/or failing to implement policies, practices and procedures and/or having ineffective policies, practices, and procedures regarding the handling of complaints Of discrimination and harassment;

(c)   Failing to investigate when discrimination and harassment were reported, despite there being such reports;

(d)   Failing to provide any and/or adequate training, education, or information to their personnel, and most particularly to

– 40 –

management and supervisory personnel with regard to policies and procedures regarding preventing discrimination and harassment;

(e)     Failing to appoint a qualified, neutral third party to investigate an employee's allegations;

(f)     Failing to transfer employee to a new supervisor under the same terms and conditions of employment;

(g)     Failing to review the employer's anti-harassment policy with the harassed and imposing counseling or discipline as appropriate; and

(h)     Failing to take permanent remedial steps reasonably calculated to end the current harassment and deter future harassment from the same offender or others

160.   As a proximate result of Defendants' conduct, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial.

161.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress and has incurred and will likely

incur, medical expenses as a result.  Plaintiff will continue to experience said pain and mental and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

162.   The conduct of Defendants, and each of them, and their agents and employees as described herein, was malicious, fraudulent, and oppressive, and done with a willful and conscious disregard for Plaintiff's rights.

163.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has been forced to hire attorneys to prosecute Plaintiff's claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith.  Plaintiff is entitled to recover such attorneys' fees and costs under California *Government Code* Section 12965(b).

The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

### EIGHTH CAUSE OF ACTION
### FOR RETALIATION IN VIOLATION OF FEHA [Cal. Gov't Code §§12940(h)]
(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

164.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

– 42 –

165.   It is an unlawful employment practice to discharge, expel, or otherwise discriminate against any person because the person has engaged in protected activity under *Government Code* §12940.  [Cal. Gov't Code §12940(h)].  Plaintiff engaged in protected activity by making complaints of sexual harassment and discrimination, and by taking disability leave as set forth above.

166.   When Plaintiff would reject the advances of Defendants HERD and HOGAN, they would retaliate against Plaintiff.  For example, when Plaintiff rejected Defendant HERD, the sexual harassment worsened as Defendant HERD continued to make sexually abusive comments and sexually battered Plaintiff.  Moreover, when Plaintiff complained and /or objected to Defendants HOGAN and HERD's discrimination, sexual harassment, assault, and battery, Defendants took no corrective action which resulted in Plaintiff being subjected to continued discrimination, harassment, sexual harassment, sexual assault, and sexual battery.

167.   Plaintiff made complaints and/or objected to Defendants HERD and HOGAN's conduct, yet the harassment, discrimination, sexual battery, and retaliation continued.

168.   As a result of engaging in protected activity, Plaintiff suffered adverse employment actions by Defendants as set forth above.

169.   There is a causal link between Plaintiff's protected activity and the adverse employment actions taken against Plaintiff due to Defendants' knowledge of

– 43 –

Plaintiff's protected activity, the proximity of time between said protected activities and the retaliatory employment actions, the pattern of Defendants' conduct, and the pretextual reason for terminating Plaintiff.

170.   Defendants' conduct as alleged above constituted unlawful retaliation in violation of the FEHA.

171.   As a proximate result of the wrongful acts of Defendants, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damage to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to *Civil Code* Sections 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

172.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress and has incurred and will likely incur, medical expenses as a result. Plaintiff will continue to experience said pain and mental and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

173.   As a proximate result of the wrongful acts of Defendants, and each of

them, Plaintiff has been forced to hire attorneys to prosecute Plaintiff's claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover such attorneys' fees and costs under California *Government Code* Section 12965(b) and/or any other provision of law providing for attorney's fees and costs.

174.   The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendants.

## NINTH CAUSE OF ACTION
## FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

175.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

176.   At all times mentioned in this Complaint, the FEHA was in full force and effect and was binding on Defendants. This law requires Defendants to refrain, among other things, from discriminating or retaliating against any employee on the basis of engagement in protected activity, sex, gender, and any complaints of sexual harassment, sexual assault, sexual battery, and retaliation.

177.   At all times mentioned in this Complaint, it was a fundamental policy of

the State of California that Defendants cannot discriminate and/or retaliate against any employee on the basis of engagement in protected activity, sex, gender, and any complaints of sexual harassment, sexual assault, sexual battery, and retaliation.

178.   Plaintiff's engagement in protected activities such as complaining of/objection to sexual harassment, quid pro qui sexual harassment, sexual assault, sexual battery, harassment, and discrimination based on Plaintiff's sex and gender, discrimination and retaliation, and/or some combinations thereof, were factors in Defendants' conduct as alleged hereinabove.

179.   Such discrimination and retaliation, resulting in the wrongful termination of Plaintiff's employment on the basis of Plaintiff's sex, gender, engagement in protected activity, and/or some combinations thereof, were a proximate cause in Plaintiff's damages as stated below.

180.   The above said acts of Defendants constitute violations of the Government Code and the public policy of the State of California embodied therein as set forth above. Defendants violated these laws by discriminating and retaliating against Plaintiff and terminating Plaintiff's employment in discrimination of Plaintiff's protected classes and in retaliation for Plaintiff's exercise of protected rights.

181.   As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain

substantial losses of earnings and other employment benefits.

182.   As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to Plaintiff's damage in a sum according to proof.

The foregoing conduct of Defendants individually, or by and through their managing agents, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's right to be free from interference by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, such as to constitute malice, oppression, or fraud under Civil Code §3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

## TENTH CAUSE OF ACTION
### FOR HARASSMENT AND AIDING AND ABETTING IN VIOLATION OF CAUSE OF GOV'T CODE §§12940 ET SEQ.
(Against All Defendants)

183.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

184.   At all times relevant for purposes of this Complaint, the FEHA, Gov't Code § 12940 et seq., was in full force and effect and binding on Defendants.  FEHA states that it is an unlawful employment practice "(i) for any person to aid abet, incite,

compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so."

185. As such term is used under FEHA, "any of the acts forbidden under this part this part" means or refers to discrimination and harassment on the bases of one or more of the protected characteristics under FEHA such as sex and gender.

186. Defendants aided and abetted each other in the discrimination, harassment, sexual harassment and retaliation that Defendants HERD and HOGAN subjected Plaintiff to.

187. These laws set forth in the preceding paragraph require Defendants to refrain from harassing, or creating, or maintaining a hostile work environment against an employee based upon Plaintiff's sex and gender, and for aiding and abetting harassment and retaliation.

188. Defendants' harassing conduct was severe and pervasive, was unwelcome by Plaintiff, and a reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile and abusive.

189. Defendants violated the FEHA and the public police of the State of California which is embodied in the FEHA by creating a hostile work environment, and by discriminating and harassing Plaintiff because of Plaintiff's sex and gender.

190. As a proximate result of the wrongful acts of Defendants, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential and incidental

financial losses, including without limitation loss of salary and benefits, and the intangible loss of employment-related opportunities for growth in Plaintiff's field and damages to Plaintiff's professional reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as damages together with prejudgment interest pursuant to *Civil Code* Sections 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

191.   As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress and has incurred and will likely incur, medical expenses as a result.  Plaintiff will continue to experience said pain and mental and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

192.   The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agent employees of Defendants acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to Plaintiff of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

//

//

## ELEVENTH CAUSE OF ACTION
## FOR NEGLIGENCE
(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

193. The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

194. Prior to and after the first incident of Defendant HOGAN's sexual harassment, assault and battery of Plaintiff through the present, Defendants HERD, MAXIM, MEDIA, T1 MEDIA, and BIGLARI, knew and/or had reason to know that Defendant HOGAN had and was capable of sexually, physically, and mentally harassing Plaintiff or other victims.

195. Defendants MAXIM, MEDIA, and BIGLARI were aware of Defendants HOGAN, HERD, and T1's harassing, discriminatory, and illegal conduct, allowed it to continue, profited off of it, and gave Defendants HOGAN, HERD, and T1 the actual and apparent authority to act on their behalf and continue their common enterprise and scheme.

196. Defendants never provided Plaintiff with any sexual harassment training.

197. Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI, and their agents, independent contractors, and/or employees had a duty to provide Plaintiff a position free from discrimination, harassment, sexual assault, sexual battery, and retaliation.

198. Defendants were aware that Plaintiff was subjected to discrimination and harassment based on Plaintiff's sex and gender, and sexual assault and battery, and

failed to take appropriate and corrective action.

199.   Defendants, MAXIM, MEDIA, T1 MEDIA, and BIGLARI by and through their respective agents, servants and employees, knew or had reason to know of Defendant HOGAN's dangerous and illegal propensities. Despite such knowledge, Defendants negligently failed to supervise Defendant HOGAN in his position as a supervisor, where he was able to commit wrongful acts of sexual misconduct against Plaintiff. Defendants failed to provide reasonable supervision of Defendant HOGAN, failed to use reasonable care in investigating Defendant HOGAN, and failed to provide adequate warning to Plaintiff about Defendant HOGAN's dangerous propensities and unfitness. Defendants further failed to take reasonable steps to ensure the safety of Plaintiff, from sexual harassment, assault, and battery.

200.   Defendants HERD, HOGAN, MAXIM, MEDIA, T1 MEDIA, and BIGLARI owed Plaintiff a duty of care to act in a reasonable and ordinary manner so as not to cause Plaintiff any foreseeable harm.

201.   Defendants, and each of them, failed to use ordinary and reasonable care in order to avoid injury to Plaintiff.  This includes, but is not limited to, Defendants' failure to prevent the individually named Defendants from discriminating, harassing, sexually assaulting, sexually battering, and retaliating against Plaintiff.

202.   Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI should have known that Defendants HERD and HOGAN were discriminating, harassing, sexually

assaulting, sexually battering, and retaliating against Plaintiff because of Plaintiff's sex and gender. Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI failed to take appropriate and corrective action.

203.    Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI had been informed of the discriminatory, harassing, and retaliatory conduct of Defendants and, despite being informed of their unlawful conduct, Defendants failed to discipline Defendants HERD and HOGAN and kept them in their employ, thereby ratifying said unlawful conduct.

204.    Defendants were put on notice, and had reason to know, that Defendant HOGAN had previously engaged and continued to engage in unlawful sexual conduct and sexual harassment with Plaintiff, and that it was, or had reason to know, it would have been foreseeable that he was engaging, or would engage, in illicit sexual harassment with Plaintiff, under the cloak of his authority, confidence, and trust, bestowed upon him through Defendants.

205.    Defendants were placed on actual or constructive notice that Defendants HERD and HOGAN had sexually harassed and discriminated against Plaintiff. Defendants had knowledge of inappropriate conduct and harassment committed by Defendant HOGAN during his employment yet chose to allow him to remain unsupervised where he sexually assaulted and battered Plaintiff.

206.    Defendants breached their duties of care to Plaintiff by allowing

Defendant HOGAN to come into contact with Plaintiff, without supervision; and by failing to adequately hire, supervise and retain Defendant HOGAN whom they permitted and enabled to have access to Plaintiff.

207.    Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI breached their duties to Plaintiff by failing to investigate or otherwise confirm or deny such facts of sexual abuse by Defendant HOGAN, and by placing Defendant HOGAN into a position of authority.

208.    Defendants breached their duty to Plaintiff by failing to adequately monitor and supervise Defendant HOGAN and failing to prevent Defendant HOGAN from committing wrongful sexual acts with Plaintiff. Prior complaints of Plaintiff against Defendant HOGAN, in addition to Defendant HERD witnessing Defendant HOGAN's conduct caused Defendants to know, or gave them reason to know, of Defendant HOGAN's discriminatory and harassing behavior.

209.    The conduct of Defendants HOGAN constitutes negligence and is actionable under the laws of the State of California.

210.    As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily

activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## TWELFTH CAUSE OF ACTION
## FOR NEGLIGENT SUPERVISION
(Against Defendants BIGLARI, MAXIM, MEDIA, and T1)

211.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

212.   Defendants HERD, HOGAN, MAXIM, MEDIA, T1 MEDIA, and BIGLARI, and their agents, independent contractors, and/or employees had a duty to provide Plaintiff a position free from discrimination, sexual harassment, threats of violence, sexual assault, sexual battery and retaliation.

213.   Defendants MAXIM, MEDIA, and BIGLARI were aware of Defendants HOGAN, HERD, and T1's harassing, discriminatory, and illegal conduct, allowed it to continue, profited off of it, and gave Defendants HOGAN, HERD, and T1 the actual and apparent authority to act on their behalf and continue their common enterprise and scheme.

214.   Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI were aware that Plaintiff was subjected to discrimination, harassment, and sexual harassment based on Plaintiff's sex and gender, and failed to take appropriate and corrective action.

215.   Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI owed Plaintiff a duty of care to act in a reasonable and ordinary manners so as not to cause Plaintiff

any foreseeable harm.

216.    Defendants, and each of them, failed to use ordinary and reasonable care in order to avoid injury to Plaintiff.  This includes, but is not limited to, Defendants' failure to prevent the individually named Defendants from discriminating, harassing, sexually harassing, sexually assaulting, sexually battering, and retaliating against Plaintiff.

217.    Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI should have known that Defendants HERD and HOGAN was discriminating, harassing, sexually harassing, sexually assaulting, sexually battering, and retaliating against Plaintiff because of Plaintiff's sex and gender.  Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI failed to take appropriate and corrective action.

218.    Defendants, by and through their respective agents, servants and employees, knew or had reason to know of Defendant HOGAN's dangerous and illegal propensities. Despite such knowledge, Defendants negligently failed to supervise Defendant HOGAN in his position as a supervisor, where he was able to commit wrongful acts of sexual misconduct against Plaintiff. Defendants failed to provide reasonable supervision of Defendant HOGAN, failed to use reasonable care in investigating Defendant HOGAN, and failed to provide adequate warning to Plaintiff about Defendant HOGAN's dangerous propensities and unfitness. Defendants further failed to take reasonable steps to ensure the safety of Plaintiff from discrimination,

harassment, and sexual harassment.

219.   Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI had been informed of the discriminatory, harassing, and retaliatory conduct of Defendants and, despite being informed of their unlawful conduct, Defendants failed to discipline Defendant HOGAN and kept him in their employ, thereby ratifying said unlawful conduct.

220.   The conduct of Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI constitute negligence and is actionable under the laws of the State of California.  As a direct and proximate result of the acts of Defendants HERD, HOGAN, MAXIM, MEDIA, T1 MEDIA, and BIGLARI, Plaintiff has suffered, without limitation, emotional distress, fear, embarrassment, anxiety, shame, humiliation, distress, shock, and severe emotional distress.

221.   Defendants HERD and HOGAN's conduct was reckless and with a conscious disregard of Plaintiff's rights.  Plaintiff is therefore entitled to an award of punitive damages against Defendants HERD, HOGAN, MAXIM, MEDIA, T1 MEDIA, and BIGLARI in an amount to be determined by proof at trial.

### THIRTEENTH CAUSE OF ACTION
### FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against All Defendants)

222.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

223.   By engaging in the above-described conduct, Defendants engaged in

extreme and outrages conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress.

224.    Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and severe emotional distress.

225.    Plaintiff's damages were the actual and proximate causation of the emotional distress caused by Defendants' outrageous conduct.

226.    Defendants' conduct was reckless and with a conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to an award of punitive damages against Defendants in an amount to be determined by proof at trial.

## FOURTEENTH CAUSE OF ACTION
## FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

227.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

228.    Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI knew or should have known that Defendants HERD and HOGAN were discriminating, harassing, sexually harassing, sexually assaulting, sexually battering, and retaliating against Plaintiff because of Plaintiff's sex and gender.  Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI failed to take appropriate and corrective action.

229.    Defendants MAXIM, MEDIA, and BIGLARI were aware of Defendants HOGAN, HERD, and T1's harassing, discriminatory, and illegal conduct, allowed it to continue, profited off of it, and gave Defendants HOGAN, HERD, and T1 the actual

and apparent authority to act on their behalf and continue their common enterprise and scheme.

230.    Had Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI taken prompt and corrective action against Defendants HERD and HOGAN, that he would not have discriminated, harassed, sexually harassed, sexually assaulted, sexually battered, and retaliated against Plaintiff.

231.    Defendants, and each of them, owed Plaintiff a duty of care to act in a reasonable and ordinary manner so as not to cause Plaintiff any foreseeable harm.

232.    Defendants, and each of them, failed to use ordinary and reasonable care in order to avoid injury to Plaintiff.  This includes, but is not limited to, Defendants' failure to prevent the individually named Defendants from discriminating, harassing, sexually assaulting, sexually battering, and retaliating against Plaintiff.

233.    Defendants MAXIM, MEDIA, T1 MEDIA, and BIGLARI had been informed of the discriminatory, harassing, and retaliatory conduct of Defendants and, despite being informed of their unlawful conduct, Defendants failed to discipline Defendant HOGAN and kept him in their employ, thereby ratifying said unlawful conduct, in addition to encouraging said conduct to continue.

234.    The conduct of Defendants HERD, HOGAN, MAXIM, MEDIA, T1 MEDIA, and BIGLARI constitute negligence and is actionable under the laws of the State of California.  As a direct and proximate result of the acts of Defendants HERD,

HOGAN, MAXIM, MEDIA, T1 MEDIA, and BIGLARI, Plaintiff has suffered, without limitation, emotional distress, fear, embarrassment, anxiety, shame, humiliation, distress, shock, and severe emotional distress.

## FIFTEENTH CAUSE OF ACTION
### FOR VIOLATION OF SAINT LUCIA'S EQUALITY OPPORTUNITY AND TREATMENT IN EMPLOYMENT AND OCCUPATION ACT
(Against All Defendants)

235.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

236.    Part 2 of Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act protects against unlawful discrimination by stating:

> Definition and prohibited grounds of discrimination
> 3. (1)  For the purposes of this Act, a person discriminates against another person if the first-mentioned person makes, on any of the grounds specified in subsection (2), any distinction, exclusion or preference, the intent or effect of which is to nullify or impair equality of opportunity or treatment in
> occupation or employment.
>
> 3. (2) The grounds referred to in subsection (1) are—
>
> (a) race, sex, religion, colour, ethnic origin, family responsibilities, pregnancy, marital status, or age except for purposes of retirement and restrictions on work and employment of minors or for the protection of minors; or
>
> (b) any characteristic which appertains generally or is generally imputed to persons of a particular race, sex, religion, colour, ethnic origin, social origin, political opinion, disability, family responsibility, pregnant state, marital status, or age except for purposes of retirement and restrictions on work and employment of minors or for the protection of minors.

3. (3)  Any act or omission or any practice or policy that directly or indirectly results in discrimination against a person on the grounds referred to in subsection (2), is an act of discrimination regardless of whether the person responsible for the act or omission or the practice or policy intended to discriminate and constitutes an offence.

Prohibition on discrimination against applicant and employees
4. (1) This Act applies to all employees and employers in the public and private sectors who are engaged in an employment relationship.

4. (2) It is unlawful for any person who is an employer or any person acting or purporting to act on behalf of a person who is an employer, in relation to recruitment, selection or employment of any other person for purposes of training, apprenticeship or employment, to discriminate against that other person on the grounds specified under section 3(2)—

(a) in the advertisement of the job;

(b) in the arrangements made for the purpose of determining who should be offered that employment;

(c) in determining who should be offered employment;

(d) in the terms or conditions on which employment is offered;

(e) in the creation, classification or abolition of jobs;

4. (3) It is unlawful for an employer to discriminate against an employee on the grounds specified under section 3(2)—

(a) in terms or conditions of employment afforded to that employee by the employer;

(b) in conditions of work or occupational safety and health measures;

(c) in the provision of facilities related to or connected with employment;

(d) by denying access, or limiting access to opportunities for

FIRST AMENDED COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

advancement, promotion, transfer or training, or to any other benefits, facilities or services associated with employment;

(e) by retrenching or dismissing the employee;

(f) by subjecting the employee to any other disadvantage

237.    Part 2 Section 8 of Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act additionally protects against sexual harassment by stating:

8. Any act of sexual harassment against an employee committed by an employer, managerial employee or co-employee shall constitute unlawful discrimination based on sex within the meaning of section 3 and constitutes an offence.

238.    Part 4 Section 20 of Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act additionally protects against Victimization of Plaintiff's by stating:

20. (1)  A person who victimises another person commits an offence and is liable on summary conviction to a fine not exceeding $5,000.

20. (2)  For the purposes of subsection (1), a person shall be taken to commit an act of victimisation against another person if the first-mentioned person subjects or threatens to subject the other person to any detriment—

(a) on the ground that the other person—

(i) has made, or proposes to make, a complaint under this Act,

(ii) has brought, or proposes to bring proceedings under this Act against any person,

(iii) has furnished or proposes to furnish, any information, or has produced, or proposes to produce, any documents to a

person exercising or performing any power or function under
this Act,

(iv) has attended or proposes to attend an inquiry under this
Act or to provide evidence or testimony as a witness, or

(v) has made in good faith, allegation that a person has
committed an act of discrimination in contravention of this Act;

(b) on the ground that the first-mentioned person believes that the
other person has done, or proposes to do any of the things referred to in
paragraphs (a)(i) to (a)(v).

239.    As discussed above, Defendants discriminated against, sexually harassed, and victimized Plaintiff and are therefore liable under and violated Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act.

240.    Plaintiff has suffered numerous damages as a result of Defendants conduct and according Saint Lucia law is entitled to:

General penalty clause
23. (1)  A person who contravenes a provision of this Act commits an
offence.

23. (2)  A person found guilty of an offence under this Act for which no
penalty is prescribed is liable on summary conviction to a fine not exceeding
$5,000.

Remedies
24.  Despite any other remedy that may be available in any court of
competent jurisdiction, any person who is aggrieved by any act or omission of
an employer in contravention of Part 2 is entitled to claim or apply for all or
any of the following remedies—
(a) damages from the employer, or any other person or body
covered under this Act, for any loss caused directly or indirectly as a
result of the contravention;

(b) an order directing the employer or other relevant person or body covered under this Act to redress the contravention, including an order to employ, re-employ or reinstate any person, although the vacancy in question has already been filled and although the employer may be liable to any claim arising from the need to dismiss or terminate the services of any other employee who has been engaged;

(c) an order making any decision found to have been based on unlawful discrimination voidable;

(d) any other order the court may deem fair and just to remedy the cause and effect of the discrimination.

241.   As a result of the above-described conduct, Plaintiff Doe has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

242.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for judgment as follows:

As to All Causes of Action

1.  For general, compensatory, and/or special damages in an amount according

to proof for Plaintiff's injuries, mental and/or emotional distress, medical expenses, actual financial losses, consequential financial losses, incidental financial losses, loss of past and future earnings, loss of salary and benefits, and all damages flowing therefrom for an amount to be determined at trial;

2. For all general and special damages to compensate Plaintiff for an amount to be determined at trial;

3. For punitive damages, as allowed by law, that will sufficiently punish, make an example of, and deter future conduct by Defendants for an amount to be determined at trial;

4. For prejudgment and post-judgment interest according to any applicable provision of law, according to proof for an amount to be determined at trial;

5. For attorney's fees and costs for an amount to be determined at trial;

6. Costs of suit; and

7. For such other and further relief as the Court may deem just and proper.

Dated: August 26, 2022

**DEREK SMITH LAW GROUP, LLP**
*Attorneys for Plaintiff JANE DOE*

By:  _/s/ Matt E.O. Finkelberg_
MATT E.O. FINKELBERG, ESQ.
633 West 5th St., Suite 3250
Los Angeles, CA 90071
(310) 602-6050

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues to be tried and all causes of action and claims with respect to which Plaintiff has a right to jury trial.

Dated: August 26, 2022

**DEREK SMITH LAW GROUP, LLP**
*Attorneys for Plaintiff JANE DOE*

By: _/s/ Matt E.O. Finkelberg_
MATT E.O. FINKELBERG, ESQ.
633 West 5th St., Suite 3250
Los Angees, CA 90071
(310) 602-6050

FIRST AMENDED COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES