**DEREK SMITH LAW GROUP, LLP**
Matt E.O. Finkelberg, State Bar No. 329503
633 West 5th Street, Suite 3250
Los Angeles, CA 90071
Telephone:     (310) 602-6050
Facsimile:      (310) 602-6350
Email:          matt@dereksmithlaw.com

Attorney for Plaintiff Jane Doe,

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an Individual,<br><br>      Plaintiff,<br><br>  v.<br><br>MAXIM, INC.; MAXIM MEDIA, INC.; T1 ADVERTISING LLC; BIGLARI HOLDINGS INC.; THOMAS HERD, individually; and DIMETRI HOGAN, individually,<br><br>      Defendants. | No. 2:22-cv-05289-MEMF-PD<br><br>Judge:  Hon. Maame Ewusi-Mensah Frimpong<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1), 12(b)(3), 12(b)(6), MOTION TO STRIKE UNDER FRCP 129F0 OR FOR A MORE DEFINITIVE STATEMENT UNDER FRCP 12(e)**<br><br>DATE:      February 16, 2023<br>TIME:      10:00 a.m.<br>CRTRM:    8B, 8th Floor |

# TABLE OF CONTENTS

**PAGE**

ARGUMENT…………………………………………………………………... 1

I.     THIS COURT IS THE PROPER VENUE FOR THIS CASE…………………………...1

II.     PLAINTIFF HAS PROPERLY PLEADED HER CAUSES OF ACTION…………… .3

A.  Plaintiff Has Pleaded a TVPA Claim…………………………………………..3

1.   Herd and Hogan's Scheme Benefitted Defendants Financially……………..3

2.   Defendants Knew or Should Have Known of Herd and Hogan's Scheme Under the TVPA's Negligence Standard………………………………......6

B.  Plaintiff's Sexual Assault and Battery Claims Are Properly Pleaded…………......8

C.  Maxim *Did* Employ Plaintiff, Herd, and Hogan…………………………….....12

D.  Plaintiff's FEHA Claims are Properly Pleaded……………………………14

1.   Plaintiff *Has* Pleaded Cognizable Conduct in California…………………...14

2.   Maxim Media *Is* Subject to FEHA……………………………………16

3.   Plaintiff's FEHA Claims *Are* Validly Pleaded…………………………...16

E.  Workers' Compensation Does Not Preclude Plaintiff's Negligence Claims……….18

F.  Plaintiff Pleads Intentional and Negligent Infliction of Emotional Distress……….21

III.     MAXIM IS SUBJECT TO FEHA SO SHOULD NOT BE STRICKEN………………21

IV.     AMENDMENT MUST BE ALLOWED IN LIEU OF DISMISSAL…………………23

V.     PLAINTIFF NEED NOT PROVIDE MORE DEFINITE FACTS………………………24

CONCLUSION…………………………………………………………………...25

# TABLE OF AUTHORITIES

## Cases

*Abundant Living Family Church v. Live Design, Inc.*,
No. 22 Civ. 140 (RSW) (LMRWX), 2022 WL 14708949 (C.D. Cal. Oct. 24, 2022)………24

*Accardi v. Superior Court*,
17 Cal. App. 4th 341 (Cal. App. 2d Dist. 1993) …………………………………………20

*Ardolf v. Weber*,
332 F.R.D. 467 (S.D.N.Y. 2019) ………………………………………………………4

*Bureerong v. Uvawas*,
922 F. Supp. 1450 (C.D.Cal.1996) ……………………………………………….......25

*Castillo v. Norton*,
219 F.R.D. 155 (D. Ariz. 2003) ………………………………………………………25

*David v. Weinstein Co. LLC*,
431 F. Supp. 3d 290 (S.D.N.Y. 2019) ……………………………………………4, 5

*Daniels v. Cal. Dep't of Corr. & Rehab.*,
No. 2:10 Civ. 03 (MCE) (AC), 2013 WL 6859536 (E.D. Cal. Dec. 30, 2013) ……………10

*Davison v. Santa Barbara High Sch. Dist.*,
48 F. Supp. 2d 1225, (C.D. Cal. 1998) ………………………………………………25

*Ducolombier v. Royal Entmt., Inc.*,
No. 14 Civ. 1371 (JLS) (RNBX), 2014 WL 12966964 (C.D. Cal. Dec. 16, 2014) …………16

*Elfand v. Freitas*,
No. 11 Civ. 863 (WHA) (PR), 2012 WL 850737 (N.D. Cal. Mar. 13, 2012) …………….....10

*Fermino v. Fedco, Inc.*,
7 Cal. 4th 701 (1994) …………………………………………………………………19

*Fourth Dimension Software v. Der Touristik Deutschland GMBh*,
No. 19 Civ. 5561 (CRB) (AGT), 2021 WL 4170693 (N.D. Cal. Sept. 14, 2021) …………13

*G.G. v. Salesforce.com, Inc.*,
20 Civ. 2335, 2022 WL 1541408 (N.D. Ill. May 16, 2022) ………………………………7

*Gonsalves v. Infosys Techs., Ltd.*,
No. 09 Civ. 4112 (MHP), 2010 WL 11578735 (N.D. Cal. Jan. 6, 2010) ………………….15

*Good v. Diskeeper Corp.*,
No. 09 Civ. 6048 (AHM) (FFMX), 2009 WL 3806328 (C.D. Cal. Nov. 11, 2009) ………..25

*Greenfield v. Am. W. Airlines, Inc.*,
No. 03 Civ. 5183 (MHP), 2004 WL 2600135 (N.D. Cal. Nov. 16, 2004) …………….......20

*Hart v. Nat'l Mortg. & Land Co.*,
189 Cal. App. 3d 1420 (1987) …………………………………………………………20

*J. B. v. G6 Hosp., LLC*,
No. 19 Civ. 7848 (HSG), 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) ……………………7

*Livitsanos v. Superior Court*,
2 Cal. 4th 744 (1992) …………………………………………………………………19

*Lurie v. Konica Minolta Business Solutions, U.S.A., Inc.*,
No. 16 Civ. 787 (RGK) (GJS), 2016 WL 7508183 (C.D. Cal. Mar. 14, 2016) …………….20

*Muniz v. United Parcel Serv., Inc.*,
731 F. Supp. 2d 961 (N.D. Cal. 2010) …………………………………………………20

*Myers v. Bennett Law Offices*,
238 F.3d 1068 (9th Cir. 2001) …………………………………………………………2

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018) ………………………………………………4, 5

*Ramsbottom v. Ashton*,
No. 21 Civ. 272, 2022 WL 106733 (M.D. Tenn. Jan. 11, 2022) ………………………….7

*Ratcliff v. The Roman Cath. Archbishop of L.A.*,
79 Cal. App. 5th 982 (2d Dist. 2022) …………………………………………………..9

*Real Estate Disposition Corp. v. Nat'l Home Auction Corp.*,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

No. 08 Civ. 1331 (SJO) (EX), 2008 WL 11336112 (C.D. Cal. May 21, 2008) …….........25
*SEC v. Sands,*
     902 F. Supp. 1149 (C.D. Cal. 1995) ………………………………………………22
*SmartPhoneRecords, LLC v. Univ. of S.C.,*
     No. 17 Civ. 479 (KJM) (AC), 2018 WL 3993288 (E.D. Cal. Aug. 21, 2018) …………2, 3
*Talley v. County of Fresno,*
     51 Cal. App. 5th 1060 (5th Dist. 2020) …………………………………………………12
*Torres v. Parkhouse Tire Serv., Inc.,*
     26 Cal. 4th 995 (2001) …………………………………………………………...19
*Trujillo v. Skaled Consulting, LLC,*
     No. 21 Civ. 1106 (CAB) (BGS), 2021 WL 4150380 (S.D. Cal. Sept. 13, 2021) …………15
*Vogel v. Huntington Oaks Del. Partners, LLC,*
     291 F.R.D. 438 (C.D. Cal. 2013) …………………………………………………22
*Wallace v. Dejoy,*
     No. 21 Civ. 8885 (RSWL) (SKX), 2022 WL 14746303 (C.D. Cal. Oct. 24, 2022) ……….22
*Yanowitz v. L'Oreal USA, Inc.,*
     131 Cal. Rptr. 2d 575 (Ct. App.) …………………………………………...……19
*2TheMart.com, Inc. Sec. Litig.,*
     114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) ……………………………………..……22

**Statutes**
Cal. Lab. Code § 3602(a)……………………………………………………...……19
Fed. R. Civ. P. 15 …………………………………………………………………….2
Moore's Federal Practice (3rd ed.) § 12.36[1] ……………………………………………25
18 U.S.C. § 1591(e)(3) ……………………………………………………………4, 6, 7
28 U.S.C. § 1391 …………………………………………………………………....... 1
28 U.S.C. § 1406(a) ……………………………………………………………………3

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Jane Doe respectfully submits this memorandum of law in opposition to "Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(1), 12(b)(3), 12(b)(6), Motion Strike Under FRCP 12(f), or For a More Definitive Statement Under FRCP 12(e)," by Defendants Maxim, Inc., Maxim Media, Inc., and Biglari Holdings Inc. (collectively, "Maxim").

## ARGUMENT

## I.  THIS COURT IS THE PROPER VENUE FOR THIS CASE

Maxim's first argument asserts that even though they concededly "reside in California because they do business in California," Plaintiff nonetheless "cannot establish that this Court is a proper venue" under 28 U.S.C. § 1391, because "not all defendants reside in California," Herd and Hogan, and because Plaintiff "failed to plead even a single fact that occurred in California," much less "a substantial part of the events or omissions giving rise to the claim." (Deft. Br. at 12.) This argument fails.

The text of Section 1391 – the provision Maxim cites – is clear: generally, an action may be brought in "(2)  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; _**OR**_ "(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

Thus, venue lies in this district by pleading _a substantial part_ – and _not all_ – of the events giving rise to this claim occurred here – or if not, then in any district where

1

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*any Defendant* is subject to jurisdiction. Both factors support laying venue here.

While they emphasize that Herd and Hogan are Floridians, not even Maxim denies that Maxim, Inc., Maxim Media, Inc., and Biglari Holdings Inc. are each subject to this Court's jurisdiction in this District. Instead, they insist that because the photo shoots occurred in Florida and Saint Lucia, "*all* of the events 'giving rise to a claim' occurred outside California." (Deft. Br. at 12-13.) But that is simply false. The FAC repeatedly describes[1] how Maxim solicited, enticed, and coerced Plaintiff's sexual abuse and exploitation *while in California.* Specifically, as recited *supra*, Plaintiff alleges *both* conduct and ratification of conduct that took place here: a summer 2020 meeting with Herd and Hogan in Los Angeles (FAC ¶ 31), her July 2020 hiring with promises to be featured in a Maxim magazine article and photographs (FAC ¶ 35), her December 2020 employment offer from Herd (FAC ¶ 55), and resultant travels to Florida. (FAC ¶ 40.) These allegations are more than sufficient to establish a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

More importantly, when a defendant's tortious acts damage a plaintiff's California-based business, venue is proper here. *See, e.g., SmartPhoneRecords, LLC v. Univ. of S.C.*, No. 17 Civ. 479 (KJM) (AC), 2018 WL 3993288, at *2 (E.D. Cal. Aug. 21, 2018) (citing *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001)

---

[1] In the interests of brevity, this brief does not repeat all of the factual allegations contained in the FAC, only certain of the most significant ones. To the extent that the Court finds the facts pleaded insufficient to support any of Plaintiff's causes of action, it should grant Plaintiff leave to amend the FAC in order to cure any such deficiencies. *See* Fed. R. Civ. P. 15.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

(reversing dismissal for improper venue because "at least one of the 'harms' suffered by Plaintiffs . . . was felt in Nevada," and thus a substantial part of the events giving rise to the claim occurred in Nevada). Even if defendant remained in another state the entire time (which is *not* even the case here), that does not change this conclusion. *SmartPhoneRecords*, 2018 WL 3993288, at *2.

There cannot be the slightest doubt that Defendants' tortious acts harmed Plaintiff in this District, where she lives, usually works, and maintains her modeling career. As Defendants knew. For this reason as well, venue is properly laid here.[2]

## II.   PLAINTIFF HAS PROPERLY PLEADED HER CAUSES OF ACTION

Defendants next argue that various of Plaintiff's causes of action are improperly pleaded. But here too, their myriad arguments are misplaced.

### A.   Plaintiff Has Pleaded a TVPA Claim

#### 1.   Herd and Hogan's Scheme Benefitted Defendants Financially

Maxim first argues that Plaintiff cannot maintain her TVPA claims. Primarily they insist that the law requires a TVPA defendant be a "perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew of should have known has engaged in an act in violation of" the TVPA." (Deft. Br. at 15.) Yet, they insist, "no facts in the FAC establish that Maxim financially benefitted or received anything of value as a result of

---

[2]      Per 28 U.S.C. § 1406(a), if venue is improper here, the Court should "in the interest of justice, transfer such case to any district or division in which it could have been brought."

the conduct alleged," particularly since "no facts even allege that her photographs were used by Maxim for any purpose or in any publication." (Deft. Br. at 15.) But a critical case shows the TVPA cannot be neatly cabined within a directly profitable venture.

In *David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290, 301 (S.D.N.Y. 2019), an "aspiring actress" sued Harvey Weinstein under the TVPA, alleging he made "fraudulent promises and offers of career success" in order to twice lure her to his hotel room. During their meetings, he asked her "to discuss a prospective acting job on a television show," made statements indicating that he wanted to hire her for "voiceover work" and "another movie role," and asked to meet with the plaintiff "to celebrate her upcoming role" on the television series." *Id* at 302. Ultimately, though, she "never received a job offer" for show, nor for any of the "other projects that HW had discussed with her," meaning Defendants did not profit off of her since she was not hired. *Id.*

Weinstein argued that his conduct fell outside the TVPA, because if his victim never actually received any roles, there was no "commercial sex act," as the TVPA requires. *Id.* (citing 18 U.S.C. § 1591(e)(3)). But the court stressed that Congress had drafted the statute with "expansive language," particularly in defining "commercial sex act," and the law thus required a "liberal reading." *Id.* The court "agree[d] with the other judges who have considered this issue that these meetings, as well as the promises of professional opportunities and success attendant to these meetings, are things of value for the purposes of a TVPA claim." *Id.* (citing, *inter alia*, *Noble v. Weinstein*, 335 F. Supp. 3d 504, 521 (S.D.N.Y. 2018) and *Ardolf v. Weber*, 332 F.R.D. 467, 478

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

(S.D.N.Y. 2019) (denying motion to dismiss TVPA claim by former models who alleged sexual assault in connection with photographer's offer of valuable career advancement, including future modeling jobs; "Defendant's alleged fondling of Plaintiffs' genitals was commercial in nature because he offered them valuable career advancement, including future modeling jobs, to allow it to happen").

The *David* court reasoned that although Plaintiff never received the role Weinstein had promised her, she nonetheless received a "thing of value" from meeting with him – the promise of and opportunity for career advancement. *Id.* at 304.[3] Although *David* focused on whether the plaintiff received "something of value," there is no reason why its logic should not apply equally to the question of whether Defendants "benefitted financially" from cajoling, tricking, and pressuring Plaintiff to engage in sexual acts with Hogan in exchange for publication in Defendants' prominent magazine. Logically, just as an actress who meets with a producer inherently receives something of value even without ultimately appearing on screen, similarly a magazine publishing cabal benefits financially from enticing a model to attend a photo shoot, even if her photos are not published in retaliation for her rebuffing of sexual advances.

---

[3] The court rejected Weinstein's assertion that a "commercial sex act" must be "economic in nature," as "the TVPA contains no such requirement," and "courts have routinely rejected this argument." *Id.* It reasoned: "the fact that [Weinstein] did not ultimately deliver on his promises to cast Plaintiff in *Marco Polo*, or any other television or movie roles, does not mean that Plaintiff was not given anything of value"; " '[e]ven if the prospect[s] of a film role ... were not 'things of value' sufficient to satisfy [the] commercial aspect of the sex act definition, [Plaintiff's] reasonable expectation of receiving those things in the future, based on [Weinstein's] repeated representations that she would, is sufficient.' " *Id.* at 304-05 (quoting *Noble*, 335 F. Supp. 3d at 521). In short, the *David* Court concluded, because the plaintiff had received "something of value" (at least notionally) in exchange for sex acts, and because Weinstein knew he would use fraud and/or force to cause the plaintiff to engage in those sex acts, the plaintiff had adequately pleaded a "commercial sex act," and thus sex trafficking, under the TVPA. *Id.* at 305.

The ability to choose models to feature from among a wide variety of women desperate for publication is inherently conducive to profits for Defendants. As is the ability to retain a top photographer's services by offering him the perquisite of countless attractive models ready and willing to trade sexual favors for career advancement.

### 2. Defendants Knew or Should Have Known of Herd and Hogan's Scheme Under the TVPA's Negligence Standard

Defendants' second argument against Plaintiff's TVPA claim is that "nothing in the FAC establishes Maxim knew or should have known about either Herd or Hogan's conduct," and "nowhere in the FAC does Plaintiff indicate that she complained to any of the Maxim Defendants or otherwise put them on notice of the conduct she alleges against Herd or Hogan." (Deft. Br. at 15.) It is not clear how Defendants can make such an assertion, since the plain words of the FAC squarely refute it.

As indicated earlier, the FAC repeatedly states that Plaintiff "complained to Defendants about th[e] harassing conduct by [Herd and Hogan] and Defendants failed to take action," and "when Plaintiff complained and/or objected to [Hogan and Herd's] discrimination, sexual harassment, assault, and battery, Defendants took no corrective action which resulted in Plaintiff being subjected to continued discrimination, harassment, sexual harassment, sexual assault, and sexual battery." (FAC ¶¶ 139, 166.)

TVPA's Section 1595 not only authorizes civil lawsuits against perpetrators of sex trafficking in violation of Section 1591 – its subsection (a) also authorizes suits against those who benefit (or as stated above, would have benefited) from participation

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

in a venture that they "knew or should have known" engaged in sex trafficking. As the wording suggests, and multiple federal courts (in this Circuit and elsewhere) have concluded, this is a negligence standard of liability that does not require the knowing beneficiary actually have committed a crime in violation of Section 1591. *See, e.g., J.B. v. G6 Hosp., LLC*, No. 19 Civ. 7848, 2021 WL 4079207, at *16 (N.D. Cal. Sept. 8, 2021) ("Plaintiff brings a claim under § 1595(a), which uses the words 'should have known,' and therefore invokes a negligence standard.") (internal quotations omitted). *See also Ramsbottom v. Ashton*, No. 21 Civ. 272, 2022 WL 106733, at *9-10 (M.D. Tenn. Jan. 11, 2022); *G.G. v. Salesforce.com, Inc.*, 20 Civ. 2335, 2022 WL 1541408, at *13 (N.D. Ill. May 16, 2022) ("Courts interpreting § 1595 regularly describe the 'knew or should have known' language as establishing a negligence standard.")

Even if the FAC somehow falls short of alleging that all Defendants actually knew about Herd and Hogan's sexual misconduct, it clearly adequately alleges that they reasonably *should have known*. (See FAC ¶¶ 202, 217.) As noted, the FAC alleges at the time of Plaintiff's meeting with them in Los Angeles, all Defendants knew Herd and Hogan were enticing, recruiting, and luring Plaintiff to a "photo shoot" that was, in actuality, merely an opportunity to sexually assault and batter Plaintiff. (FAC ¶ 36.) Thus, the FAC alleges, Maxim authorized, was aware of, and allowed Herd and Hogan to entice Plaintiff, and gave Herd and Hogan the actual and apparent authority to act on Maxim's behalf. (FAC ¶ 37.) The FAC further alleges that Defendants instructed, authorized, and conferred actual and apparent authority upon Herd to engage with,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

entice, transport, and coerce Plaintiff to do a photo shoot for Defendants' direct profit – at which Plaintiff would be subjected to sexual assault and battery. (FAC ¶ 56.) And the FAC alleges that Hogan and Herd repeatedly leveraged their Maxim employment's, apparent and actual authority, and agency to place themselves in a position of power and authority over Plaintiff, forcing her to engage in sexual acts that the other Defendants were aware of and condoned – and that this was part of a larger scheme or common enterprise by Defendants to recruit and coerce women to have sexual relations with them in exchange for employment opportunities. (FAC ¶¶ 49, 51-52.)

Finally, the FAC alleges that the Defendants have a broader practice of using and exploiting females interested in working for them in exchange for compensation and career advancement in the form of appearances in magazines, articles, and websites – which are distributed nationally and worldwide. (FAC ¶ 52.) The FAC alleges Maxim in particular was aware of and tolerated Herd and Hogan's scheme of *quid pro quo* sexual harassment, by leveraging Maxim Magazine's name and prestige. (FAC ¶ 18.)

This is all far more than sufficient to support Plaintiff's TVPA claim against all the Defendants. For these reasons as well, the Court should reject Defendants' arguments that Plaintiff fails to state a cognizable TVPA claim.[4]

### B.   Plaintiff's Sexual Assault and Battery Claims Are Properly Pleaded

Maxim next takes aim at the FAC's assault and battery claims, insisting that

---

[4]   Defendants also argue that Plaintiff has not filed this action in "an appropriate" court because no actionable conduct is alleged to have occurred in California. This is addressed in Part I, *supra*.

corporate entities could not have assaulted or battered Plaintiff, and should not bear responsibility for the individuals who did. But the law is not so constrained.

An employer may be liable for an employee's tort where the employer either authorized a tortious act or subsequently ratified an unauthorized such act. *Ratcliff v. The Roman Cath. Archbishop of L.A.*, 79 Cal. App. 5th 982, 1002 (2d Dist. 2022). "The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery." *Id.* "Ratification is not itself a tort, but a doctrine that holds the ratifying party liable for the tort committed by another party"; nor is it "an element of a claim," but "a choice to adopt someone's act as one's own." *Id.* "Evidence of the ratification may come in many forms, for example where an employer fails to terminate, investigate, or respond to charges that an employee has committed an intentional tort." *Id.* And "[w]hether an employer has ratified an employee's conduct is generally a factual question." *Id.* Therefore, it is generally *not* appropriate to decide on a motion to dismiss.

As already indicated, Plaintiff pleads Maxim authorized or ratified Herd and Hogan's tortious activities. As Maxim concedes, FAC paragraph 117 states that it "knew or should have known, of the assaults and batteries, but ratified the conduct, as described herein above, by failing to adequately, or at all take remedial steps against Defendant HOGAN, refusing to intervene to protect Plaintiff, among other acts of ratification." (Deft. Br. at 16.) Plaintiff obviously cannot prove that until she has had the opportunity to take full discovery from all the Defendants – which they naturally

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

seek to avoid. It would be fundamentally unfair to make a fact-intensive determination as to whether the Maxim ratified Herd and Hogan's conduct before discovery.

As a fallback, Maxim asserts that even if Hogan engaged in the conduct alleged (and he did), "the issue is whether [his] conduct may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer." (Deft. Br. at 16 (internal quotations omitted).) Maxim insists that " 'the incident leading to injury must be an outgrowth of the employment . . . [or] the risk of tortious injury must be inherent in the working environment,' " and "the intentional tort must have a 'causal nexus to the employee's work.' " (*Id.* (internal quotations omitted).) But Plaintiff meets this test.

Maxim Magazine is widely recognized as an "adult" publication. For example, in 2005 California's Department of Corrections and Rehabilitation deemed it sexually explicit and therefore "contraband." *Daniels v. Cal. Dep't of Corr. & Rehab.*, No. 10 Civ. 03, 2013 WL 6859536, at *2 (E.D. Cal. Dec. 30, 2013). Numerous other courts, in California and elsewhere, have noted similar policies by jail and prison facilities. *See, e.g. Elfand v. Freitas*, No. 11 Civ. 863, 2012 WL 850737, at *1 (N.D. Cal. Mar. 13, 2012) (noting Sonoma County Men's Adult Detention Facility policy prohibiting "publications depicting sexually oriented material," including Maxim). It defies belief that in a hyper-sexualized and exploitative business such as Maxim Magazine, its own owners and publishers were unaware that its own agents and photographers were enticing models to pose and then sexually harassing them (or worse). Hogan and Herd's behavior was apparently only part of a much larger pattern.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Maxim likewise argues that Plaintiff "fails to plead facts establishing any employment relationship between Maxim and Herd and Hogan." (Deft. Br. at 16.) Once again, Plaintiff pleads all the facts that she can realistically know. She is not privy to the extent to which Maxim controls and compensates Herd and Hogan – that is what discovery is for. But certainly, an employment relationship is reasonably contemplated, given Herd and Hogan's repeated comments to Plaintiff indicating their work for and control over the Magazine's contents. The Court should not fall for Maxim's desperate and transparent ploy to dodge any discovery while simultaneously complaining that Plaintiff does not have enough facts about their inner workings at her fingertips.

Finally, Maxim contends that while Plaintiff claims that they "knew or should have known" about the assault and battery she "fails to provide any facts to explain how or why." But as indicated earlier, the FAC plainly and repeatedly states that Plaintiff "complained to Defendants about th[e] harassing conduct by [Herd and Hogan] and Defendants failed to take action," and that "when Plaintiff complained and/or objected to [Hogan and Herd's] discrimination, sexual harassment, assault, and battery, Defendants took no corrective action which resulted in Plaintiff being subjected to continued discrimination, harassment, sexual harassment, sexual assault, and sexual battery." (FAC ¶¶ 139, 166.) That is more than sufficient to plead a claim, and if Defendants want further details they – just like Plaintiff – should be allowed to discover them. Their argument only underscores that dismissal at this early stage, before a single interrogatory or document request has been exchanged, a single

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

document produced, or a single deposition taken, is woefully premature.

## C.    Maxim *Did* Employ Plaintiff, Herd, and Hogan

Maxim also argues that Plaintiff has not pleaded that it employed her, or that it employed Herd or Hogan, for that matter. As Maxim notes, FEHA and wrongful termination claims require an employment relationship between them and Plaintiff, Herd, and Hogan. (Deft. Br. at 18.)  But Maxim's very next sentence – conceding that "[t]he existence of an employment relationship under FEHA requires a consideration of the totality of the circumstances" – only shows (again) that its motion is premature; its employment relationship with Plaintiff, Herd, and Hogan requires discovery.

Maxim's main sub-argument is that Plaintiff cannot be their "employee" without "remuneration," which must be of a " 'quantifiable, financial nature that is significant and not merely incidental to the work activities performed.' "  (Deft. Br. at 18-19 (quoting *Talley v. Cty. of Fresno*, 51 Cal. App. 5th 1060, 1083-86 (5th Dist. 2020). To the extent Defendants are suggesting that employment-demonstrative "remuneration" can only be via a regular weekly paycheck, they are way off. Obviously, self-evidently, there are thousand – millions – of "employees" who are paid only per gig, per piece of work, by commission, on contingency, on an as-needed basis, part-time, whatever. Their alternative work arrangements do not doom them to non-employee status, and entitle their employers to get away with sexually harassing them. And to the extent that Defendants are asserting that because Plaintiff was ultimately denied the money she had been promised, she cannot be Defendants' employee, that too is outlandish.

It cannot be the case that a defendant is able to avoid complying with FEHA (or any other employment law) simply by withholding promised payments, then claiming that the would-be recipient was never an "employee" because she never actually got paid. Surely the law is not so Kafkaesque. Defendants lured Plaintiff with promises of lucrative photo shoots, then fired her when she protested Herd and Hogan's sexual harassment. If that maneuver sufficed to immunize Defendants from suit, it would simply be a miscarriage of justice. If the Court agrees with Maxim here, it will create a dangerous precedent: Defendants will not be responsible for any sexual harassment that occurs towards the featured models in their magazine unless they received a weekly paycheck, or Defendants themselves classify them as employees, allowing Defendants to hire models, sexually harass them, and fire them before they are paid. Similarly specious are Maxim's protests that Plaintiff cannot point to particular documents she signed or received. But much like Maxim's failure to pay Plaintiff, their own reckless practices and failure to document what they were doing (or not doing) should not serve to insulate Defendants from the consequences of their unlawful acts and shoddy paperwork practices, doing so would again create a dangerous precedent.

Additionally, Maxim states, "there are not even any allegations that [Plaintiff] ever communicated with the Maxim Defendants in any manner." (Deft. Br. at 19.) Of course not, they are corporate entities, which "can only receive communications from its attorney by means of human agency officers, agents, and employees of the corporation [authorized] to act on its behalf." *Fourth Dimension Software v. Der*

*Touristik Deutschland GMBh*, No. 19 Civ. 5561, 2021 WL 4170693, at *2 (N.D. Cal. Sept. 14, 2021) (internal quotations omitted). Plaintiff could *only* have spoken to Maxim through its agents and representatives – like Herd and Hogan. As the FAC repeatedly alleges, they recruited her, they hired her, and promised to compensate her – all on behalf of Maxim. Maxim also blames Plaintiff for "at most" only establishing that Herd and Hogan "falsely claimed that they 'worked for' the Maxim Defendants," when "there are no allegations showing that any of the Maxim Defendants actually gave them any authority nor were the Maxim Defendants aware that Herd and Hogan made any representations to Plaintiff."  (Deft. Br. at 19-20.) Yet again, Maxim blames Plaintiff for not being privy to their private communications and machinations, which is obviously not Plaintiff's fault, and is information which can only be obtained through discovery. Plaintiff has amply alleged, based upon information and belief, Maxim *did* give Herd and Hogan the actual or apparent authority to hire and employ Plaintiff, and Maxim *were* aware of Herd and Hogan's resulting unlawful behavior.

In sum, the FAC has sufficient allegations, requiring discovery to corroborate, that Maxim acted via Herd and Hogan to employ and discriminate against Plaintiff.

**D.    Plaintiff's FEHA Claims Are Properly Pleaded**

**1.    Plaintiff *Has* Pleaded Cognizable Conduct in California**

As with its venue-related argument, Maxim's first anti-FEHA argument misstates both the law and the contents of the FAC.

Maxim insists that FEHA "does not apply to conduct that occurs outside

14

California even if the plaintiff is a California resident." (Deft. Br. at 20.) But the law is hardly as absolutist as Maxim wishes. "FEHA can, however, apply to California residents where the tortious conduct at issue occurred partially in the state of California and partially or mostly outside the state of California." *Trujillo v. Skaled Consulting, LLC*, No. 21 Civ. 1106 (CAB) (BGS), 2021 WL 4150380, at *4 (S.D. Cal. Sept. 13, 2021). Alternatively, a FEHA claimant need only allege that unlawful conduct was *ratified* by decisionmakers within California. *See, e.g., Gonsalves v. Infosys Techs., Ltd.*, No. 09 Civ. 4112 (MHP), 2010 WL 11578735, at *5 (N.D. Cal. Jan. 6, 2010). Thus, Plaintiff need *not* allege that 100% of the conduct at issue have occurred within the borders of California in order to maintain her FEHA claims.

Maxim further asserts that Plaintiff "alleges that all relevant conduct occurred either in Florida or Saint Lucia," so her claims must fail. (Deft. Br. at 20.) Again, the truth is hardly as absolute as Defendant portray it. As already noted earlier, Plaintiff alleges *both* conduct and ratification of conduct that took place in this State: a summer 2020 meeting with Herd and Hogan in Los Angeles (FAC ¶ 31), her July 2020 hiring by them with promises to be featured in a Maxim article and photographs (FAC ¶ 35), her December 2020 employment offer from Herd (FAC ¶ 55), and resultant travels to Florida. (FAC ¶ 40.) Just as these allegations establish that a substantial portion of the events giving rise to Plaintiff's claims occurred in this District, these allegations also demonstrate that all the Defendants are subject to suit under FEHA.

Thus, contrary to Maxim's wishful thinking, Plaintiff *has* pleaded sufficient facts

to support her FEHA and FEHA-derivative claims, namely the Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh and Twelfth Causes of Action.

### 2.    Maxim Media *Is* Subject to FEHA

Maxim also asserts that "Maxim Media, Inc. is not subject to FEHA because it did not regularly employ five or more persons during the relevant period." But the only basis for saying so is the self-serving "Declaration of Kai Olderog, which is part of the administrative charge," and "for the purposes of a motion to dismiss, the Court cannot consider a self-serving declaration because it would require the Court to consider evidence outside of the pleadings." *Ducolombier v. Royal Entmt., Inc.*, No. 14 Civ. 1371 (JLS) (RNBX), 2014 WL 12966964, at *3 (C.D. Cal. Dec. 16, 2014). Thus the Court should simply disregard this argument.

### 3.    Plaintiff's FEHA Claims *Are* Validly Pleaded

As with its first anti-FEHA argument, Maxim's third has already been squarely refuted *supra*. Maxim insists that it cannot be liable under Plaintiff's harassment, retaliation, or aiding and abetting FEHA claims because an employer "must know (or should know) of the unlawful and harassing conduct, and it must know of Plaintiff's protected activity (i.e. FACs of harassment)," but "there are no facts" indicating Maxim was "made aware of the actions of Herd and Hogan." (Deft. Br. at 22.)

As described in prior sections of this brief, the FAC plainly and repeatedly states that Plaintiff "complained to Defendants about th[e] harassing conduct by [Herd and Hogan] and Defendants failed to take action," and that "when Plaintiff complained

and/or objected to [Hogan and Herd's] discrimination, sexual harassment, assault, and battery, Defendants took no corrective action which resulted in Plaintiff being subjected to continued discrimination, harassment, sexual harassment, sexual assault, and sexual battery." (FAC ¶¶ 139, 166.) The FAC also clearly adequately alleges that Maxim reasonably *should have known* about Herd and Hogan's sexually predatory tendencies – particularly, since at the time of Plaintiff's meeting with them in Los Angeles, it knew that Herd and Hogan were enticing, recruiting, and luring Plaintiff to attend a "photo shoot" that was, in actuality, merely an opportunity to sexually assault and batter Plaintiff. (FAC ¶¶ 36, 202, 217.) Thus, the FAC alleges, Maxim was aware of Herd and Hogan enticing Plaintiff, allowed it, and gave Herd and Hogan the actual and apparent authority to act on Maxim's behalf. (FAC ¶ 37.) The FAC further alleges that Maxim instructed, authorized, and conferred actual and apparent authority upon Herd to engage with, entice, transport, and coerce Plaintiff to do a photo shoot for Maxim's direct profit – at which Plaintiff would be subjected to sexual assault and battery. (FAC ¶ 56.) And the FAC alleges that Hogan and Herd repeatedly leveraged their employment, apparent and actual authority, and agency of Maxim to place themselves in a position of power and authority over Plaintiff, forcing her to engage in sexual acts that the other Defendants were aware of and condoned – and that this was part of a larger scheme or common enterprise by Defendants to recruit and coerce women to have sexual relations with them in exchange for employment opportunities. (FAC ¶¶ 49, 51-52.) Finally, the FAC alleges that Maxim has a broader practice of

using and exploiting females interested in working for it in exchange for compensation and career advancement in the form of appearances in Maxim's magazines, articles, and websites – which are distributed nationally and worldwide. (FAC ¶ 52.) The FAC alleges that Maxim knew of and tolerated Herd and Hogan's scheme of *quid pro quo* sexual harassment, using Maxim's name and prestige as leverage. (FAC ¶ 18.)

So contrary to Maxim's spurious assertions, the FAC includes more than enough facts to demonstrate that Plaintiff told Maxim about the conduct in Florida or St. Lucia, and/or that it knew or should have known of such conduct.

### E.   Workers' Compensation Does Not Preclude Plaintiff's Negligence Claims

Maxim next baselessly argues that any of Plaintiff's "[i]njuries caused by employer negligence, including claims based on an employer's alleged negligence in hiring or supervision, or without employer fault, are subject to workers' compensation exclusivity," so "if Plaintiff alleges that the Maxim Defendants employed Herd, Hogan, and herself, then her negligence and negligent supervision claims must be dismissed as they are barred by the workers' compensation exclusivity doctrine." (Deft. Br. at 22-23.) Unfortunately for Maxim, the doctrine does not apply to discrimination and sexual harassment claims like Plaintiff's.

As California's courts have explained again and again, the basis for the Workers' Compensation exclusivity rule is the "compensation bargain," whereby employers assume liability for industrial injury or death without regard to fault, in exchange for

18
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

limitations on the amount of that liability – and employees receive relatively swift and certain payment of benefits to relieve the effects of injuries without having to prove fault but lose wider range of damages potentially available in tort. *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 708 (1994). Thus, California Labor Code section 3600 provides that an employer is liable under California's workmen's compensation law for injuries that an employee sustains that "arise out of and in the course of employment," and "[w]hen an injury is compensable under section 3600, 'the sole and exclusive remedy of the employee' is through Workmen's Compensation and the employee may not 'bring an action at law for damages against the employer' " Cal. Lab. Code § 3602(a), or " 'against fellow employees acting within the scope of employment.' " *Torres v. Parkhouse Tire Serv., Inc.*, 26 Cal. 4th 995, 1002 (2001)).)

However, this exclusivity rule only applies to conduct that is a normal risk of the employment relationship; the California Supreme Court has expressly concluded that there is no workers' compensation preemption when the "defendants' misconduct exceeded the normal risks of the employment relationship." *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 756 (1992). "Unlawful discrimination is not one of those risks," so workers' compensation exclusivity does not bar FEHA discrimination or retaliation claims," since "the conduct involved is not part of the normal risks attendant to the employment relationship. *Yanowitz v. L'Oreal USA, Inc.*, 131 Cal. Rptr. 2d 575, 600-01 (Ct. App.), *aff'd*, 36 Cal. 4th 1028 (2005).

Likewise, negligence claims arising out of intentional sexual misconduct fall

outside Workers' Compensation exclusivity. *See, e.g., Greenfield v. Am. W. Airlines, Inc.*, No. 03 Civ. 5183 (MHP), 2004 WL 2600135, at *8 (N.D. Cal. Nov. 16, 2004) ("Plaintiff's cause of action for negligent supervision with regard to sexual harassment" is a form of "intentional misconduct which [is either] not a normal risk of employment or contrary to fundamental public policy," so "injuries arising therefrom fall outside the workers' compensation system.") (citing *Accardi v. Superior Court*, 17 Cal. App. 4th 341 (Cal. App. 2d Dist. 1993) (claim for emotional and psychological damage arising out of employment is not barred by Workers' Compensation, where distress is engendered by employer's illegal discrimination and sexual harassment)). *See also Lurie v. Konica Minolta Business Solutions, U.S.A., Inc.*, No. 16 Civ. 787 (RGK) (GJS), 2016 WL 7508183, at *4 (C.D. Cal. Mar. 14, 2016) (denying motion to dismiss claim for negligent hiring, supervision, and retention to extent based on discrimination allegations); *and Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 961, 976 (N.D. Cal. 2010) ("Plaintiff's negligence claim rests on facts supporting her claim for gender discrimination. Because such discrimination raises fundamental public policy considerations, [Workers' Compensation] does not preempt this cause of action.")

In this case, Plaintiff's causes of action *all* arise out of her sexual assault, battery, and harassment.[5] Accordingly, Workers' Compensation cannot preempt such claims.

---

[5]    For the avoidance of any doubt, even intentional tort claims cannot be precluded or preempted by the Workers' Compensation Act either, as the "compensation bargain" likewise does not include intentional sexual torts, like sexual battery, by an employer or its agents. *See, e.g., Hart v. Nat'l Mortg. & Land Co.*, 189 Cal. App. 3d 1420, 1432 (1987) ("the exclusivity doctrine does not apply to prevent Hart from stating a cause of action against National for assault and battery. . . .").

**F.    Plaintiff Pleads Intentional and Negligent Infliction of Emotional Distress**

Maxim makes the unremarkable observation that a claim for either intentional or negligent infliction of emotional distress requires pleadings "facts establishing a duty, breach, causation and damages." (Deft. Br. at 23.) Maxim insists that because "Plaintiff was not an employee," it owed her only a "greatly diminished" duty, and likewise, because it employed neither Herd nor Hogan, had no legal duty as principal for the unauthorized acts of independent contractors. (Deft. Br. at 23.) Additionally, Maxim insists that Plaintiff never notified it of Herd or Hogan's conduct, and that such conduct was not reasonably foreseeable. (Deft. Br. at 24.)

All of these arguments have already been addressed and refuted in prior sections of this brief, which need not be rehashed. In short, Herd and Hogan were effectively Maxim employees or agents, as was Plaintiff; Herd, Hogan, and Maxim thus owed Plaintiff a duty of care, Maxim can certainly be held responsible for Herd and Hogan's sexual misconduct, and Plaintiff repeatedly complained about such misconduct to Maxim – which, along with the sexualized nature of Maxim Magazine, makes such misconduct entirely predictable. For all of these reasons that were alleged in the FAC, Plaintiff's intentional and negligent infliction of emotional distress claims must stand.

## III.    <u>MAXIM IS SUBJECT TO FEHA SO SHOULD NOT BE STRICKEN</u>

FRCP 12(f) allows the Court to strike "an insufficient defense or any redundant, immaterial, impertinent or scandalous matter" from the pleadings. "Courts have long

disfavored Rule 12(f) motions, granting them only when necessary to discourage parties from making completely tendentious or spurious allegations," and "[i]f there is any doubt as to whether the allegations might be an issue in the action, courts will deny the motion." *Wallace v. Dejoy*, No. 21 Civ. 8885, (SKX), 2022 WL 14746303, at *2 (C.D. Cal. Oct. 24, 2022) (internal citations and quotations omitted). "The grounds for a motion to strike must appear on the face of the pleading under attack or from matters which the court may judicially notice. *Id.* (citing *SEC v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995). The Court must also "view the pleadings in the light most favorable to the pleading party." *Id.* (citing *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)). "As a result, motions to strike are infrequently granted," and "courts frequently require the moving party to demonstrate prejudice before granting the requested relief." *Id.* (internal quotations and citation omitted). Finally, "if a claim is stricken, leave to amend should be freely given when doing so would not prejudice the opposing party." *Id.* (citing *Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 440 (C.D. Cal. 2013)).

Maxim's argument section D reads, in its entirety: "If the court will not dismiss the FEHA and derivative causes of action, Maxim Media, Inc. should at least be stricken from the fifth, sixth, seventh, eighth, ninth, tenth, eleventh and twelfth causes of action because it is not subject to FEHA," per FRCP 12(f). There is no further exposition of this point. That surely cannot be enough to satisfy Rule 12(f)'s rigorous standards, or to make this a rare case where 12(f) relief is actually granted.

In any event, Maxim is presumably reiterating its argument B.5.b, titled "Maxim Media, Inc. Is Not Subject to FEHA." This has already been addressed and refuted *supra*, in section D.2. So again, Maxim cannot possibly have met its burden of proving that any portion of the FAC should be stricken. But if the Court disagrees, then *at the very least* Plaintiff should be given leave to amend the FAC to cure any deficiencies – Maxim does not even try to assert, nor could it, any cognizable prejudice from that.

## IV.    AMENDMENT MUST BE ALLOWED IN LIEU OF DISMISSAL

In perhaps its boldest argument, Maxim argues that Plaintiff should not be permitted to amend her FAC again. Astoundingly, it does this this after conceding that "amendments to pleadings are to be liberally granted" absent "undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." (Deft. Br. at 25.) Maxim then offers no explanation whatsoever of how it would actually be unduly prejudiced by a further amendment to the FAC, or how such would be made in bad faith, futile, or unduly delaying. Instead, it argues without any support that Plaintiff's "persistence in perpetuating false allegations in the FAC unduly prejudices the Maxim Defendants, are [*sic*] made in bad faith and futile." In other words, because Maxim views Plaintiff's claims as meritless, and because Plaintiff has the temerity to continue pursuing those claims, any further amendment would inherently likewise be futile and prejudicial. But as with Maxim's Rule 12(f) argument, there is no further discussion – and certainly no citations to any authority.  Nor is Plaintiff aware of any such authority. Maxim's argument flies in the face of the spirit of FRCP 15 and the cases interpreting

23

it – which uniformly hold that "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *Abundant Living Family Church v. Live Design, Inc.*, No. 22 Civ. 140, 2022 WL 14708949, at *6 (C.D. Cal. Oct. 24, 2022).

Maxim postulates that a "second amended FAC would be plaintiff's fifth attempt to properly plead claims," if one counts her administrative charges. (Deft. Br. at 25.) But once again, it does not offer – and Plaintiff cannot locate – any authority for the wildly imaginative theory that administrative complaints should be weighed against Rule 15's liberal pleading amendment standards. Nor would any such rule be logical. Administrative complaints are a different animal than federal court pleadings. They are preliminary and non-public. They only require the pleadings of causes of action that fall under the administrative bodies' purview. And most significantly, they are never actually *adjudicated* on the merits – typically, the administrative body dismisses them without any findings, or on rare occasions pursues their claims itself, but after issuing its own complaint. Given all this, the notion that Plaintiff's administrative complaints should somehow be counted against her entitlement to freely amend her claims here (where no actual prejudice, bad faith, or futility has been shown) is frankly ludicrous.

For these reasons, the Court should reject the notion that Plaintiff cannot amend her FAC further. If the Court decides to grant any portion of Maxim's motion, it should grant Plaintiff the opportunity to cure any deficiencies in the FAC through amendment.

## V.    <u>PLAINTIFF NEED NOT PROVIDE MORE DEFINITE FACTS</u>

Maxim's final argument demands that if her claims are not dismissed, Plaintiff

be compelled to provide a more definitive statement. Yet again, as with its Rule 12(f) argument and opposition to letting Plaintiff amend her pleadings, Maxim's argument here shamelessly disregards the law and the cases interpreting it.

Rule 12(e) motions "are not favored by the courts since pleadings in the federal courts are only required to fairly notify the opposing party of the nature of the claim." *Castillo v. Norton*, 219 F.R.D. 155, 163 (D. Ariz. 2003) (internal quotations omitted). In other words, given the liberal pleading standards of Rule 8(a), motions for a more definite statement are rarely granted. *Good v. Diskeeper Corp.*, No. 09 Civ. 6048 (AHM) (FFMX), 2009 WL 3806328, at *1 (C.D. Cal. Nov. 11, 2009) (citing 2 *Moore's Federal Practice* (3rd ed.) § 12.36[1]). "If the moving party could obtain the missing detail through discovery, the motion should be denied." *Davison v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998). In short, a motion for a more definite statement should not be granted "unless the defendant literally cannot frame a responsive pleading." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D.Cal.1996).

Maxim wants "to be informed of every facet of Plaintiff's case at the pleadings stage" – but has no such entitlement, only to "enough detail to be informed of the nature of the claims…to be able to form a responsive pleading." *Good*, 2009 WL 3806328, at *1. The FAC satisfies this – and the details sought by Maxim are obtainable only in discovery; so this Court should deny the motion for a more definite statement, allowing the parties to engage in discovery. *See, e.g., Real Estate Dispos. Corp. v. Nat'l Home Auction Corp.*, No. 08 Civ. 1331, 2008 WL 11336112, at *11 (C.D. Cal. May 21, 2008).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## <u>CONCLUSION</u>

For all of the foregoing reasons, the motion by Defendants Maxim, Inc., Maxim Media, Inc., and Biglari Holdings Inc. should be denied in its entirety; or in the alternative, Plaintiff should be granted leave to amend.


Dated:       Los Angeles, California
             November 10, 2022


                                        **DEREK SMITH LAW GROUP, LLP**

                                        *Attorneys for Plaintiff JANE DOE*

                                  By:   */s/ Matt E.O. Finkelberg*
                                        MATT E.O. FINKELBERG, ESQ.

                                        633 West 5th St., Suite 3250
                                        Los Angeles, CA 90071
                                        matt@dereksmithlaw.com
                                        (310) 602-6050

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on November 10, 2022, I electronically filed the foregoing Plaintiff's Opposition to PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1), 12(b)(3), 12(b)(6), MOTION TO STRIKE UNDER FRCP 129F0 OR FOR A MORE DEFINITIVE STATEMENT UNDER FRCP 12(e) with the Clerk of the Central District of California using the CM/ECF system, which will send notice of electronic filing to the following:

**Michael William Nelson**
Littler Mendelson PC
1255 Treat Boulevard Suite 600
Walnut Creek, CA 94597
925-932-2468
Fax: 925-946-9809
Email: mwnelson@littler.com

**William Hays Weissman**
Littler Mendelson PC
1255 Treat Boulevard Suite 600
Walnut Creek, CA 94597
925-927-4545
Fax: 925-891-2551
Email: wweissman@littler.com

Dated: November 10, 2022

**DEREK SMITH LAW GROUP, LLP**

*Attorneys for Plaintiff JANE DOE*

By: */s/ Matt E.O. Finkelberg*
_____
MATT E.O. FINKELBERG, ESQ.