1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10

11  JANE DOE,                              Case No.:  2:22-cv-05289-MEMF(ASx)

12                          Plaintiff,     **ORDER GRANTING IN PART REQUEST**
                                           **FOR JUDICIAL NOTICE, GRANTING IN**
13              v.                         **PART MOTION TO DISMISS, DENYING**
                                           **MOTION TO STRIKE, AND DENYING**
14                                         **MOTION FOR MORE DEFINITE**
    MAXIM, INC.; MAXIM MEDIA, INC.; T1     **STATEMENT [ECF NO. 16]**
15  ADVERTISING LLC; BIGLARI HOLDINGS
16  INC.; THOMAS HERD; DIMETRI HOGAN

17                          Defendants.

18

19         Before the Court are a Motion to Dismiss the First Amended Complaint, a Request for

20  Judicial Notice, a Motion to Strike, and a Motion for a More Definite Statement filed by Defendants

    Maxim, Inc., Maxim Media, Inc., and Biglari Holdings Inc.  ECF No. 16; ECF No. 16-2.  For the
21
    reasons stated herein, the Court GRANTS IN PART the Request for Judicial Notice, GRANTS IN
22
    PART the Motion to Dismiss, DENIES the Motion to Strike, and DENIES the Motion for a More
23
    Definite Statement.
24

25
    / / /
26
    / / /
27
    / / /
28

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BACKGROUND**

I.   **Factual Background**[1]

Plaintiff Jane Doe[2] ("Doe") is a model who lives and works in California.  ¶¶ 24, 25.  In the summer of 2020, Doe met Defendant Thomas Herd ("Herd") in Los Angeles.  ¶ 31.  Herd is a columnist whose articles have been published on the website of the magazine Maxim. ¶ 26.  Herd told Doe that he worked for Maxim and showed her his articles.  ¶ 32.  Herd also told Doe about an opportunity to be part of a Maxim photo shoot that would take place in Florida in July 2020, and told Doe that she could be featured in a Maxim article that would include photos of Doe. ¶ 35.  Herd knew at the time that this photo shoot was in reality an opportunity for Herd or others to sexually assault Doe.  ¶ 36.  Herd hired Doe for the photo shoot.  ¶ 35.  Based on the representations Herd made to her in Los Angeles, Doe flew to Florida for the photo shoot.  ¶¶ 39-40.

At the photo shoot in Florida, Defendant Dimetri Hogan ("Hogan") took photos of Doe.  ¶ 40.  Hogan is Herd's "business partner and go-to photographer" and takes photos for Herd when Herd writes for Maxim.  ¶ 30.  Throughout the time in Florida, Hogan made "romantic and sexual overtures" to Doe, which Doe rebuffed.  ¶ 41.  Hogan was in a position of power over Doe as he did this.  ¶ 42.  Afterwards, Hogan sent Doe "aggressive and angry" messages, including that he was "super disappointed" with her.  ¶ 43.  The photos from this shoot were not published in Maxim, despite Herd's promises, which Doe alleges was caused by her rejection of Hogan's advances.  ¶ 46.

After this, Herd and Doe stayed in contact.  ¶ 53.  Herd pursued Doe romantically, including sending a message that began with "Baby girl."  ¶ 53.  Doe, believing that Herd had "clout" at Maxim, sought to maintain a friendly relationship with him.  *Id.*  In December 2020, when Doe was back in California, Herd invited Doe to a multi-day photoshoot in Saint Lucia.  ¶ 55.  He explained that a specific "Maxim Magazine Head Publisher" had asked him to do a cover story for Maxim.  *Id.*  Herd also explained that Hogan would be there to take the photos, and described Hogan as "my VP"

---

[1] All facts stated herein are taken from the allegations in Plaintiff Jane Doe's First Amended Complaint unless otherwise indicated. ECF No. 1.

[2] Doe brings her claims anonymously as a victim of sexual assault.  ¶ 10.

and a "world class GQ & Maxim photographer." *Id.*  Herd told Doe that the trip would include, among other perks, "a private chef, a private masseuse, a DJ and a mixologist." ¶ 59.  Doe asked whether she would have her own room, and Herd assured Doe that she would either have her own room or share one with another woman, which led Doe to accept the offer.  ¶ 60.  Herd hired Doe for the Saint Lucia shoot, and Herd booked Doe a plane ticket.  ¶¶ 60-61.

Doe arrived in Saint Lucia and found herself alone with Herd and Hogan.  ¶ 62.  There was no masseuse, DJ, mixologist, or chef. *Id.*  But Herd and Hogan assured Doe that the Maxim photo shoot would proceed as planned.  *Id.*  The first evening, Herd and Hogan asked Doe to make them dinner, and were "rude and degrading" towards her. ¶ 63.  The following day, another woman, "A," arrived.  ¶ 67.  A made clear to Doe that A was there to "pursue a romantic relationship" with Herd, and A implied that Doe was there to do the same with Hogan.  *Id.*  A and Herd engaged in sexual conduct, and Hogan made repeated advances towards Doe.  ¶ 68-71.  Fearing for her career, Doe eventually agreed to join Hogan in his room and massage him.  ¶ 70.  Once she was there, Hogan made further sexual advances towards Doe.  *Id.*  Under pressure, Doe agreed to perform oral sex on Hogan, but stopped before Hogan ejaculated, which angered him.  *Id.*  Hogan pressured Doe further to have sexual intercourse with him, which Doe refused.  ¶ 71.  The next day, Doe attempted to talk to Hogan, fearing that she would lose the cover shoot and her career would suffer.  ¶ 73.  Hogan responded by further attempting to have sex with Doe, including by placing her hand on his groin; she again refused his advances.  *Id.*

The following day, Hogan sent a voice message indicating that he understood Doe "[was not] feeling too well" and that she should send in photos instead of taking any in Saint Lucia.  ¶ 78.  The message concluded with "Either way like you will get MAXIM, 100 percent."  *Id.*  Doe responded that she wanted to still take photos with Hogan while in Saint Lucia, and offered to pose for some.  ¶ 79.  Herd and Hogan refused to take any photos of Doe, which Doe alleges was retaliation.  ¶ 79.  Doe left on January 3, 2021, and was assured by Herd that the cover story would still occur and that he would send her interview questions for an article.  Doe was never featured in a cover story for Maxim. ¶ 82.  Doe has not heard from Herd or Hogan since.  ¶ 83.  She has not received the income or growth in her career that she would have if she had been featured on the cover of Maxim.  ¶ 88.

At all times throughout this story, Herd and Hogan were employed by and acting on behalf of the various Maxim entities. *See* ¶ 15-17. It was "common practice" for Herd and Hogan to "sexually harass, use, and exploit females interested in working." ¶ 52. The Maxim entities were aware of Herd and Hogan's "scheme of quid pro quo sexual harassment," these entities created the scheme alongside Herd and Hogan and allowed it to happen. ¶¶ 18, 52. Doe "complained to Defendants" about Herd and Hogan's conduct, and "Defendants failed to take action." ¶¶ 139, 166.

## II.    Procedural History

Doe filed suit in Los Angeles County Superior Court on June 8, 2022. *See* ECF No. 1. The Defendants removed to this Court on July 29, 2022. *Id.* Doe filed her First Amended Complaint ("FAC") in this Court on August 26, 2022. In her First Amended Complaint, Doe named as defendants: Maxim, Inc.; Maxim Media, Inc. ("Maxim Media"); Biglari Holdings Inc. ("Biglari"); T1 Advertising Inc. ("T1"); Herd; and Hogan. FAC at 2. The FAC includes fifteen causes of action: (1) violations of the Trafficking Victims Protection Act (TVPA), against all defendants; (2) Sexual Battery, against Biglari, Maxim, Inc., Maxim Media, and Hogan; (3) Sexual Assault, against Biglari, Maxim, Inc., Maxim Media, T1, and Hogan; (4) Gender Violence, against Hogan; (5) Sexual Harassment in Violation of FEHA (California Government Code §12940(j)), against all defendants; (6) Discrimination Based on Sex in violation of FEHA, against Maxim, Inc., Maxim Media, Biglari, and T1; (7) Failure to Prevent Harassment and Discrimination in Violation of FEHA, against Maxim, Inc., Maxim Media, Biglari, and T1; (8) Retaliation in Violation of FEHA, against Maxim, Inc., Maxim Media, Biglari, and T1; (9) Wrongful Termination in Violation of Public Policy, against Maxim, Inc., Maxim Media, Biglari, and T1; (10) Harassment and Aiding and Abetting in Violation of Cause of Government Code §§12940 et seq., against all defendants; (11) Negligence, against Maxim, Inc., Maxim Media, Biglari, and T1; (12) Negligent Supervision, against Maxim, Inc., Maxim Media, Biglari, and T1; (13) Intentional Infliction of Emotional Distress, against all defendants; (14) Negligent Infliction of Emotional Distress, against all defendants; and (15) Violation of Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act, against all defendants. *See* FAC ¶¶ 96-242.

1   On September 9, 2022, Defendants Maxim, Inc., Maxim Media, and Biglari (collectively, the
2   "Maxim Defendants") filed a Motion to Dismiss the FAC, to Strike, or for a More Definite
3   Statement ("Motion"), a Memorandum of Points and Authorities ("MPA"), and a Request for
4   Judicial Notice.  ECF Nos. 16, 16-1, 16-2.  Defendant Herd, Hogan, and T1 do not join this Motion,
5   and there is no indication that Doe ever served these defendants with process.  *See generally*, ECF
6   Nos. 1-23.  Doe filed an Opposition ("Opp.") to the Maxim Defendants' Motion on November 10,
7   2022.  ECF No. 20.  The Maxim Defendants filed a Reply in Support of their Motion ("Reply") on
8   November 17, 2022.  The Court held a hearing on the Maxim Defendants' Motions on May 18,
9   2023.

## REQUEST FOR JUDICIAL NOTICE

### I.      Applicable Law

12      A court may judicially notice facts that: "(1) [are] generally known within the trial court's
13   territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy
14   cannot reasonably be questioned."  Fed. R. Evid. 201(b). Under this standard, courts may judicially
15   notice "undisputed matters of public record," but generally may not notice "disputed facts stated in
16   public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other
17   grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

18      On a motion to dismiss, courts are generally prohibited from "consider[ing] any material
19   beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011)
20   (quoting *Lee*, 250 F.3d at 688).  Courts generally only consider the complaint and other materials
21   "submitted with and attached to the Complaint."  *Id.* at 999.  Documents not attached to the
22   complaint—including documents that might otherwise be subject to judicial notice—may only be
23   considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's
24   claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450
25   F.3d 445, 448 (9th Cir.2006)).  Thus, public records may not be considered on a motion to dismiss
26   unless the complaint references the record, the record is central to the complaint, and its authenticity
27   is undisputed. *See Corinthian Colleges*, 655 F.3d at 998-99.  A court considering a motion to

28

1    dismiss should not take judicial notice of material that cannot be considered for the motion. *See Lee*,

2    250 F.3d at 689.

3         The three-part test above applies to *documents*, but not to "matters of public record." *Lee* 250

4    F.3d at 689 (laying out separate tests for documents and "matters of public record").  Matters of

5    public record can be noticed, and relied upon in evaluating a motion to dismiss, so long as they are

6    either generally known or easily ascertainable.  But for a *document* to be judicially noticeable, it

7    must meet the three-part standard described above.  *See Lee* 250 F.3d at 688 ("If the documents are

8    not physically attached to the complaint, they may be considered if the documents' authenticity ... is

9    not contested and the plaintiff's complaint necessarily relies on them") (ellipses in original, internal

10   quotations and citations omitted).  In some cases, a court might take judicial notice of the fact that a

11   document exists, but not take judicial notice of the document's contents.  *See, e.g.*, *Corinthian*

12   *Colleges*, 655 F.3d at 999 ("we can consider the *existence* of the reports . . . we may not, on the basis

13   of these reports, draw inferences") (emphasis in original).

14   **II.    Discussion**

15        The Maxim Defendants request judicial notice of four attached exhibits ("the Exhibits") and

16   certain facts.  *See* ECF 16-2.  Doe did not address the Maxim Defendants' Request for Judicial

17   Notice in her Opposition to the Motion to Dismiss, or in any other filing.  *See* ECF No. 20.

18        The Exhibits all relate to administrative proceedings Doe initiated against the Maxim

19   Defendants, which have large factual overlap with the allegations in Doe's complaint.  Specifically,

20   the Exhibits are: (A) the administrative record for Doe's charge against Maxim, Inc. before the

21   Florida Commission on Human Relations (ECF No. 26-3); (B) the administrative record for Doe's

22   charge against Maxim Media before the Florida Commission on Human Relations (ECF No. 26-4);

23   (C) Doe's administrative complaint against Biglari before the Florida Commission on Human

24   Relations, and the Commission's determination regarding that complaint (ECF No. 26-5); and (D)

25   Doe's administrative complaint to the California Department of Fair Employment and Housing (ECF

26   No. 26-6).  In addition to the Exhibits, the Maxim Defendants seek notice of two facts: (1) "Saint

27   Lucia is not a United States territory;" and (2) "Saint Lucia's Equality Opportunity and Treatment in

28   Employment and Occupation Act is not a federal (or state) statute."  ECF No. 26-2.

Assuming without deciding that it is an undisputed matter of public record that these documents exist, and that the documents are what the Maxim Defendants claim they are, it does not necessarily follow that the Court may consider the contents of the exhibits in analyzing a motion to dismiss.[3]  *See Corinthian Colleges*, 655 F.3d at 998-99.

This Court will not consider the contents of the Exhibits because: (1) Doe's FAC does not refer to any of the Exhibits; and (2) the Exhibits are not central to Doe's claims.  *See Corinthian Colleges*, 655 F.3d at 999.  Doe's FAC has only one line that could be construed as a reference to the exhibits: "Plaintiff has exhausted all administrative remedies necessary with the [California] Department of Fair Employment and Housing and has timely brought this action."  FAC, ¶ 6.  This relates only to the fourth Exhibit, which is "Doe's administrative complaint to the California Department of Fair Employment and Housing."  *See* ECF 26-2; ECF 26-6.  But the language in Doe's FAC at most refers to the existence of this Exhibit, it does not refer to any of its contents.[4]  *See Corinthian Colleges*, 655 F.3d at 999.  And the Maxim Defendants have made no attempt to

_____

[3] The Maxim Defendants pointed to *Mack v. S. Bay Beer Distributors*, where the Ninth Circuit held in 1986 that a court may "look beyond the complaint to matters of public record" in evaluating a motion to dismiss, and did not apply the three part test described here.  ECF No. 16-2 at 3; *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279 (9th Cir. 1986), abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991).  This precedent appears in direct conflict with the more recent Ninth Circuit cases *Lee* and *Corinthian Colleges*, and the Court finds that the more recent cases control.  *See Lee*, 250 F.3d at 690 (overturning district court's decision to take notice of and rely on public record documents in evaluating motion to dismiss); *Corinthian Colleges*, 655 F.3d at 998-99 (applying three-part test, and only allowing judicial notice of documents referenced in complaint).

[4] In the hearing on May 18, 2023, The Maxim Defendants directed the Court's attention to two cases, which the Maxim Defendants argue show that the Court may take judicial notice of the contents of documents from administrative proceedings in evaluating a motion to dismiss.  *See Hsu v. Donahoe*, No. 5:13-CV-02253-PSG, 2014 WL 1153912 (N.D. Cal. Mar. 20, 2014); *Demekpe v. Cnty. of Los Angeles*, No. CV 15-6007-DDP (KES), 2015 WL 13237302 (C.D. Cal. Dec. 8, 2015).  Neither is binding on this Court.  Beyond that, neither stands for the rule that the Maxim Defendants claim.  First, this Court has determined that the *Corinthian Colleges* test controls this issue, and the courts in *Hsu* and *Demekpe* did not discuss application of that test.  In addition, in neither case did the court consider the *facts asserted* in administrative proceeding records.  In *Hsu*, the court relied on the records only to determine which issues were covered in administrative proceedings, as part of an exhaustion inquiry, and did not rely on any *facts* from the records.  2014 WL 1153912 at *2.  Similarly, the court in *Demekpe* examined records as part of an exhaustion inquiry, checked filing dates of the records to confirm proper exhaustion, and looked at the facts from the records only to determine whether the issue of retaliation had been raised, not to see whether any facts from the records undermined the allegations in the plaintiff's complaint.  2015 WL 13237302 at *7. These cases are inapposite.

argue that the Exhibits, let alone their contents, are central to Doe's claims. *See* ECF 16-2. Accordingly, these documents fail both the first and second parts of the test. *See Corinthian Colleges*, 655 F.3d at 999. Although Doe has not contested the Exhibits' authenticity, that alone is not sufficient. *See id*. Because the FAC does not refer to the contents of the Exhibits and the contents are not central to the FAC, the contents of these documents cannot be considered. *See Corinthian Colleges*, 655 F.3d at 999.

The Court might be permitted to judicially notice the existence of the Exhibits, without taking notice of their contents (*see Corinthian Colleges*, 655 F.3d at 999), but that is not what the Maxim Defendants seek. The Maxim Defendants asked the Court to "take judicial notice of [the attached documents] submitted as evidence" (ECF No. 16-2), and the Motion to Dismiss cites the content of the documents as fact. *See,* ECF 16-1 at 9, 10, 11, 12, 13, 19, 20, 21. The court cannot consider the contents of the Exhibits, even if the documents are in the public record. *See Corinthian Colleges*, 655 F.3d at 998-99. The Request for Judicial Notice is DENIED as to the Exhibits.

The facts regarding Saint Lucia are different. Here, the Maxim Defendants seek only to notice facts, not documents. It is an undisputed matter of public record that Saint Lucia is a foreign country and its laws are foreign laws. Thus, these facts meet the test for judicial notice. *See Lee*, 250 F.3d at 689. Although this is not part of the test, it is worth noting that the FAC alleges a cause of action under Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act, making these facts potentially relevant. *See* ECF No. 14 at 59-63. These two facts will be noticed and considered on the Motion to Dismiss. The Request for Judicial Notice is GRANTED as to the facts that: (1) "Saint Lucia is not a United States territory" and (2) "Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act is not a federal (or state) statute."

## **MOTION TO DISMISS**

### I.   **Applicable Law**

The Maxim Defendants bring their motion pursuant to Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), 12(b)(3) ("Rule 12(b)(3)"), and 12(b)(6) ("Rule 12(b)(6)"). The standards for each are laid out below.

/ / /

**A.  Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction.  A federal court must have subject matter jurisdiction pursuant to Article III of the United States constitution to hear a case or claim.  In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

**B.  Rule 12(b)(3)**

Federal Rule of Civil Procedure 12(b)(3) provides that a party may move to dismiss a case for "improper venue."  Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws . . ." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).  Venue may be proper in: "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;" or in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(1)-(2).  If no district would be proper pursuant to either option above, then venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3).

If a case is brought in a district that is not the proper venue, then the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "These provisions . . . authorize dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought." *Atl. Marine*, 571 U.S. at 55 (2013); *see also In re Hall, Bayoutree Assocs.*, 939 F.2d 802, 804 (9th Cir. 1991) (determining that dismissal for improper venue must be without prejudice).

/ / /

/ / /

**C.  Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient.  *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff.  *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  But a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment.  Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**II.    Discussion**

The Maxim Defendants raised a series of arguments in support their motion.  For the reasons discussed below, each argument fails.

**A.  Venue is Proper in This Court**

The Maxim Defendants argue that venue is not proper in the Central District of California.  MPA at 12.  The Maxim Defendants argue that some defendants—particularly Defendants Herd and

Hogan, who did not join this Motion—are not alleged to reside in California.[5]  Hence, the Maxim

Defendants argue that the first venue prong ("judicial district in which any defendant resides, if all

defendants are residents of the State in which the district is located," *see* 28 U.S.C. § 1391(b)(1)) is

not met.  Next, the Maxim Defendants argue that the "operative facts" occurred in Florida and Saint

Lucia, not California.  MPA at 12.  Hence, the Maxim Defendants argue that the second prong ("a

judicial district in which a substantial part of the events or omissions giving rise to the claim

occurred," *see* 28 U.S.C. § 1391(b)(2)) is not met.

   Doe alleged that the chain of events that led to this litigation began in Los Angeles in

summer 2020, when Herd met Doe, FAC ¶ 31, and several key events occurred within the Central

District of California: Herd told Doe that he worked for Maxim, and showed Doe that his photos and

articles appeared in Maxim, which demonstrated to Doe that Herd was employed by Maxim.  FAC

¶¶ 31-32.  Herd described the photo shoot that would take place in Florida to Doe while they were in

Los Angeles, and allegedly knew at that time that he was luring Doe into a situation where he

intended to sexually assault her.  FAC ¶¶ 35-36.  Herd hired Doe in Los Angeles, allegedly on behalf

of the Maxim Defendants.  FAC ¶ 35.  Doe alleges that the Maxim Defendants were aware that Herd

undertook these actions, and that the Maxim Defendants gave him authority to undertake them.

FAC ¶ 37.   Further, after the Florida trip, Herd wrote to Doe while she was in California and enticed

her to go on the Saint Lucia trip.  FAC ¶ 55.  And Doe alleges that her California-based modeling

career suffered harm.  *See* FAC ¶¶ 24-25, 116, 190.

   In sum, Doe alleges that the Defendants came to California, targeted a California resident

with misleading statements, took actions in California to lure the resident out of state, committed

torts against her outside of California, and caused harm that was felt in California.  The venue statute

does not require that all, or even a majority, of the events occur in a judicial district for that district

to be a proper venue.  *See* 28 U.S.C. § 1391(b)(2).  It only requires a "substantial part."  *Id.*  Doe's

allegations are sufficient for this Court to be a proper venue.  *See Myers v. Bennett L. Offs.*, 238 F.3d

---

[5] The Maxim Defendants argue the Exhibits show Herd and Hogan reside in Florida.  MPA at 12.  The court
will not consider the contents of the Exhibits, as discussed above.  The same is true for the many other
references to the contents of the Exhibits discussed throughout the Maxim Defendants' Motion.

1068, 1075-76 (9th Cir. 2001) (finding venue proper in Nevada for a suit based on conduct that occurred in Utah but "at least one of the harms . . . was felt in Nevada.").

**B. Doe Plausibly Alleged Liability Under the Trafficking Victims Protection Act (1st Cause of Action)**

The Maxim Defendants argue that they cannot be liable under the Trafficking Victims Protection Act ("TVPA"). The TVPA only allows civil liability in "an appropriate court" if the perpetrator "knowingly benefits financially or by receiving anything of value from participation" in sex trafficking.[6] 18 U.S. Code § 1595(a). The Maxim Defendants argue that (1) they received nothing of value from the alleged acts; (2) they had no knowledge of Herd and Hogan's alleged conduct, and so are not liable for it; and (3) this Court is not "an appropriate court" because venue is improper. The third argument was already addressed above: venue is proper in the Court. The first and second arguments each fail.

First, as alleged, the Maxim Defendants received the benefit of the photographs taken. Doe alleges that the Maxim Defendants had an ongoing relationship with Herd and Hogan, where Herd and Hogan would take photos and Maxim would host the photos on its platform. *See* FAC ¶¶ 26-30; 33-34. Doe alleges that Hogan took photos of Doe. FAC ¶ 40. Doe alleges that Doe alleges that Maxim "would have profited off of pictures of Plaintiff." FAC ¶ 52. That she does not allege that the Maxim Defendants used the photos, *see* MPA at 15, is of no moment, as she has plausibly alleged that they had the photos, which are obviously something of value. Because Doe has alleged that photos of her were taken, and made other allegations that show that Maxim could have used the photos, she has alleged that the Maxim Defendants received something "of value." *See* 18 U.S. Code § 1595(a). Doe's allegations, taken as true as they must at this stage, are sufficient to state a claim for a civil action under the TVPA. Defendants provided no authority suggesting that these facts are not sufficient to trigger TVPA liability. *See* MPA at 14-15; Reply at 4-5.

---

[6] In 2023, the TVPA was amended to include "or attempts or conspires to benefit." *See* ABOLISH TRAFFICKING REAUTHORIZATION ACT OF 2022, PL 117-347, January 5, 2023, 136 Stat 6199. The Court will apply the version of the statute that was current as of the time of the alleged conduct, as its text does not suggest any intent from Congress that changes should apply retroactively.

Second, Doe has properly alleged that the Maxim Defendants were aware of the conduct, contrary to the Maxim Defendants' argument.  Defendants support their argument by noting that "nowhere in the FAC does Plaintiff indicate that she complained to any of the Maxim Defendants or otherwise put them on notice."  MPA at 15.  To the contrary, Doe alleges that she complained to the Maxim Defendants. *See* FAC ¶¶ 139, 166; Opp. at 6. Furthermore, she has plausibly alleged that they had knowledge that Herd and/or Hogan were coercing women into sex as part of photoshoots, and that photos from such shoots were leading to profits for the Maxim Defendants.  For example, she alleged that the Maxim Defendants "were aware of [Herd and Hogan's] scheme of quid pro quo sexual harassment, facilitated it, and allowed it to happen."  FAC ¶ 18.  This allegation appears conclusory, and so alone is likely not sufficient.  *See* Twombly, 550 U.S. at 545.  Similarly, she alleged that all of the defendants "created a scheme and common enterprise of recruiting and coercing women to have sexual relations with them in exchange for employment opportunities."  FAC ¶ 51.  In addition, Doe alleged that it was "common practice" for Herd and Hogan to "sexually harass, use, and exploit females interested in working for Defendants."  FAC ¶ 52.  And finally, Doe alleged that Herd has published more than twenty-five articles on Maxim's website, and that Herd frequently works with Hogan on at least some of those articles.  FAC ¶ 26.  These, taken together with the more specific allegations of how Herd and Hogan enticed and then assaulted Doe, create a plausible allegation that the Maxim Defendants were aware that Herd and Hogan would engage in conduct prohibited by the TVPA against women such as Doe.

In sum, Doe has alleged sufficient facts that the Maxim Defendants could be liable for violations of the TVPA.

### C. Doe Plausibly Alleged that Herd and Hogan were Employees or Agents of the Maxim Defendants

The Maxim Defendants argue that they never employed Herd or Hogan, and therefore that any claims based on an employment relationship with Herd or Hogan (and corresponding liability) must fail.  MPA at 18-20.  This issue is relevant for various claims where the Maxim Defendants' liability is predicated on their liability for the conduct of Herd and/or Hogan, and also relevant to claims that depend on an employment relationship between Doe and the Maxim Defendants, as her

allegations suggest she was hired by Herd on behalf of the Maxim Defendants, which could only occur if Herd had authority to hire on the Maxim Defendants' behalf.  The Court finds that Doe has plausibly alleged that Herd and Hogan were employees or agents of the Maxim Defendants.

Doe alleged the following facts that are relevant to this inquiry:  Maxim's website includes more than 25 articles written by Herd.[7]  FAC ¶ 26.  The Maxim Defendants engage in business with Herd and Hogan on a consistent basis.  FAC ¶¶ 29, 32.  Herd showed Doe the articles that he had written for Maxim. FAC ¶ 31. Hogan is Herd's "business partner and go-to photographer."  FAC ¶ 30.  Herd told her Doe he "write[s] for and work[s] for Maxim.  FAC ¶ 32.  Herd told Doe that he would "get [Doe] a Maxim spread and article in Maxim."  FAC ¶ 31. Herd told Doe about an opportunity to be part of a "a Maxim Magazine COVER Feature."  FAC ¶ 55.  Herd told Doe that a specific high-level Maxim employee had asked him "do a travel inspiration piece." *Id.*  Herd told Doe that Hogan was "[Herd's] VP" and "a world class GQ & Maxim photographer." *Id.*

Taking these facts as true, it is plausible that Herd and Hogan were Maxim's employees and/or agents.  The exact nature of the relationship is a question of fact to be conclusively determined at a later stage of the litigation.

Even if this Court were to determine that Doe had not plausibly alleged that Herd and Hogan were employees of any Maxim Defendants, this Court would still find that she has plausibly alleged that there was at the very least an ostensible agency relationship—which arises where a principal takes actions that lead a reasonable third party to believe an agency relationship occurs, and the third party relies on this reasonable belief.  This requires (1) the third party reasonably believed the ostensible agent was an agent; (2) this belief was generated by an act of the principal; and (3) the third party was not negligent. *Associated Creditors' Agency v. Davis*, 13 Cal. 3d 374, 375 (1975). The basis for the belief must be conduct by the principal, not just representations by the ostensible

---

[7] The Maxim Defendants explained that they did not pay Herd or Hogan for Herd's articles on Maxim's website, and that Herd actually paid Maxim for his articles to be hosted. *See* Motion at 10.  The Maxim Defendants use this to argue that Herd was not their employee, and to distance themselves from Herd's conduct. *See id.*  Regardless of the truth of this fact, the Court will not consider it, as it is not in the FAC, and comes from the contents of the Exhibits that the Court cannot judicially notice.  As discussed above, the Court's analysis of the Motion to Dismiss is limited to the FAC and the two judicially noticed facts.

1    agent.  *Am. Way Cellular, Inc. v. Travelers Prop. Cas. Co. of Am.*, 216 Cal. App. 4th 1040, 1053

2    (2013).  Doe's allegation that the Maxim Defendants decided to host more than 25 of Herd's articles

3    on the Maxim website is a plausible basis for ostensible agency at this stage as it could create a

4    reasonable perception that Herd has authority hire models to pose for Maxim.  *See* FAC ¶ 26.

5    Whether Doe actually had such a perception, whether it was reasonable, and whether she was

6    negligent are questions of fact; at this state, Doe's allegation regarding the Maxim entities' conduct

7    is sufficient to allege ostensible agency.

8         **D.  Doe Has Plausibly Alleged that the Maxim Defendants May be Vicariously Liable**

9              **for Herd and/or Hogan's Torts (2nd and 3rd Causes of Action)**

10        The Maxim Defendants argue that they are not liable for the alleged conduct of Herd and/or

11   Hogan, and therefore argue that the Maxim Defendants cannot be liable for the sexual assault or

12   sexual battery claims.  *See* MPA at 15-17.  The Maxim Defendants' arguments on these issues are

13   that: (1) the Maxim Defendants did not engage in the conduct (MPA at 15), (2) even if there was an

14   employment relationship, this conduct is outside the scope of that employment relationship (MPA at

15   16-17) (3) the Maxim Defendants had no knowledge or reason to know of this conduct (MPA at 17).

16   These arguments fail, for the reasons discussed below.

17        At the outset, the Maxim Defendants are correct that Doe has not alleged any of the corporate

18   entities sexually assaulted or sexually battered her.  *See* MPA at 15.  But this is not the end of the

19   analysis.  A corporation can be liable for the torts of its employees or agents in certain

20   circumstances.  The question is whether the facts alleged here can trigger such liability.

21        There are multiple ways an employer might be liable for the acts of an employee or agent.

22   An employer may be vicariously liable for the torts of an employee if those torts occurred within

23   "the scope of the employment."  *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 967 (1986).

24   Alternatively, an employer might be liable if the employer "either authorized the tortious act or

25   subsequently ratified an originally unauthorized tort."  *Ratcliff v. The Roman Cath. Archbishop of*

26   *Los Angeles*, 79 Cal. App. 5th 982, 1002 (2022), *as modified* (June 15, 2022), *review denied* (Aug.

27   10, 2022).  As discussed above, Doe has plausibly alleged that Herd and Hogan were employees

28   and/or agents of the Maxim Defendants.  And examining Doe's allegations through the lenses of the

two theories above, it is plausible that the Maxim Defendants might be liable for Herd's and Hogan's alleged conduct.

The determination of whether an employee acted within the scope of employment is ordinarily "a question of fact" unless the facts are undisputed. *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1019 (1995). Given the numerous open factual questions, the Court need not decide at this stage, and does not decide, whether Herd and Hogan acted within the scope of their employment. As discussed below, Doe's allegations provide a sufficient based under the ratification theory to state a claim.

Doe has plausibly alleged ratification. Ratification is "is the voluntary election by a party to adopt, as its own, an act purportedly done on its behalf by another." *Ratcliff*, 79 Cal. App. 5th at 1002-03. Doe alleged that all of the defendants "created a scheme and common enterprise of recruiting and coercing women to have sexual relations with them in exchange for employment opportunities." FAC ¶ 51. Doe alleged that it was "common practice" for Herd and Hogan to "sexually harass, use, and exploit females interested in working for Defendants." FAC ¶ 52. Doe alleged that the Maxim Defendants have worked with Herd for some time. *See* FAC ¶ 26. Finally, she alleged that she complained to the Defendants and they took no action.[8] *See* FAC ¶ 139. These collectively amount to a plausible allegation that the Maxim Defendants ratified Herd and Hogan's conduct.

Doe alleged sufficient facts to create a plausible inference that the Maxim Defendants may be liable for sexual assault or sexual battery by Herd or Hogan.

**E. Doe Plausibly Alleged an Employment Relationship with the Maxim Defendants (5th, 6th, 7th, 8th, 9th, 10th and 15th Causes of Action)**

The Maxim Defendants argue that Doe was never their employee, and that she has not plausibly alleged that she was. MPA at 18-20. According to the Maxim Defendants, Doe's claims under the FEHA and the Saint Lucia EOTEOA both require that Doe be an employee. So, they

---

[8] At the hearing, counsel for Doe confirmed that the references to "Defendants" throughout the FAC refer to all Defendants—including the Maxim Defendants—and Doe's allegation in Paragraph 139 is that she complained to Defendants Herd and Hogan as employees and/or agents of the Maxim Defendants.

1  argue that the fact Doe was not one defeats those claims.  In support of their arguments, the Maxim

2  Defendants note that they never paid Doe, never communicated with her, and never took "any

3  affirmative actions" to "create or maintain an employment relationship" with her. MPA at 19.

4       These assertions cannot defeat Doe's well-pleaded allegations.  As discussed above, Doe

5  plausibly alleged that Herd and Hogan were employees and/or agents of the Maxim Defendants.  Or,

6  at minimum, Doe has plausibly alleged that she reasonably believed that Herd was an agent, and

7  Maxim's actions gave him ostensible authority.  And Doe alleged that Herd hired Doe in on behalf

8  of the Maxim Defendants.  FAC ¶ 35.  Further, Doe alleged that Herd told her that Maxim had asked

9  him to do a cover story, and that Herd hired Doe for that story.  FAC ¶ 55.  Doe alleged that Herd

10 and Hogan were acting on Maxim's behalf throughout their interactions with her.  *See generally*

11 FAC.  This amounts to a plausible allegation that Herd had the authority to hire Doe for a job with

12 the Maxim Defendants, and that he did so.  It does not matter that Doe has not alleged that the

13 Maxim Defendants took affirmative actions with Doe directly.  She has plausibly alleged that they

14 took affirmative actions—such as publishing Herd's articles and asking Herd to do a "travel

15 inspiration piece"—that gave Doe the impression that Herd had the authority to hire Doe to work for

16 Maxim.  If she is able to prove her allegations, and show that she reasonably believed that Herd had

17 this authority, it is plausible that the Maxim Defendants could be bound by Herd's actions in hiring

18 her.  *See Associated Creditors' Agency*, 13 Cal. 3d at 375.  Therefore, at this stage, the Court cannot

19 dismiss the claims as inadequately pleaded.

20      **F.  Doe Has Plausibly Alleged Sufficient Conduct in California to Trigger Application**

21           **of FEHA (5th, 6th, 7th, 8th, 9th and 10th Causes of Action)**

22      The Maxim Defendants next argue that the alleged conduct occurred outside California, and

23 so cannot give rise to a claim under FEHA.  Similar to their venue argument, the Defendants argue

24 that "[n]o actionable conduct is alleged to have occurred in California."  MPA at 20.  As with the

25 venue argument, the Court is not persuaded.

26      The leading California case on this issue held that FEHA does not apply to "non-residents"

27 of California, where "the tortious conduct took place out of this state's territorial boundaries."

28 *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1852 (1996).  Applying that rule, the

1    *Campbell* court held that FEHA did not apply to harassment of a Washington resident that took place

2    on a ship that occasionally had "brief stopovers" at California ports.  *Id.* at 1858.  Federal courts

3    have applied this precedent to a broad range of fact patterns, and at times extended it.  The Maxim

4    Defendants cite one such case, *Gulaid v. CH2M Hill, Inc.*, for the proposition that "FEHA does not

5    apply to conduct that occurs outside California even if the plaintiff is a California resident."  MPA at

6    20-21, citing *Gulaid v. CH2M Hill, Inc.*, No. 15-CV-04824-JST, 2016 WL 5673144 (N.D. Cal. Oct.

7    3, 2016).  The *Gulaid* court held that FEHA does not apply to discrimination that occurred in

8    Djibouti, even when the victim was a resident of California, and the defendant corporation had

9    offices in California, because there was not sufficient "factual nexus" between "the California-based

10   activities and the discriminatory conduct."  *Id.* at *9.  Another federal court similarly held that there

11   must be "a factual nexus between [defendant's] California-based activities and the alleged

12   discriminatory conduct."  *Gonsalves v. Infosys Techs., LTD.*, No. C 09-04112 MHP, 2010 WL

13   1854146, *6 (N.D. Cal. May 6, 2010).  Doe, in her Opposition, points to federal cases that found

14   FEHA applied where conduct "occurred partially in the state of California," or was "ratified in

15   California."  Opp. at 15, citing *Trujillo v. Skaled Consulting, LLC*, No. 21 Civ. 1106, 2021 WL

16   4150380, at *4 (S.D. Cal. Sept. 13, 2021); *Gonsalves v. Infosys Techs., Ltd.*, No. 09 Civ. 4112, 2010

17   WL 11578735, at *5 (N.D. Cal. Jan. 6, 2010).  None of these federal cases are binding on this Court,

18   but the Court finds their reasoning useful in determining the bounds of where FEHA applies.

19        The Court finds that FEHA applies because the First Amended Complaint alleges a clear

20   nexus between the California-based conduct and the discriminatory conduct outside of California.

21   The Court agrees with the reasoning of the other federal district courts that have applied the nexus

22   test, as it is consistent with the analysis in *Campbell*.  *See* 42 Cal. App. 4th at 1858 (examining the

23   "relationship with California," and noting that FEHA would raise constitutional questions if it

24   applies to conduct "where there are no significant contacts" to California).  Herd met Doe in

25   California, described the opportunity to participate in a specific photo shoot to her in California, and

26   hired her for that photo shoot in California.  FAC ¶ 35.  At that photo shoot, she suffered

27   discriminatory conduct.  FAC ¶¶ 40-42.  Doe alleged that when Herd hired her in California, he

28   knew the photo shoot would be "an opportunity for Defendants to sexually assault and batter" Doe.

FAC ¶ 36.  The Court finds this allegation plausible when examined in conjunction with the alleged conduct as a whole.  Hiring someone in California with knowledge that they will suffer discriminatory conduct out of state creates a nexus between the in-state conduct and the discriminatory conduct, and FEHA therefore applies.  Even the reasoning of *Gulaid*, relied upon by the Maxim Defendants, leads to this conclusion.  *See* 2016 WL 5673144 at *9.  Thus, the Court holds that FEHA applies to the conduct as alleges.

### G. Doe Sufficiently Alleged that Maxim Media is Subject to FEHA (5th, 6th, 7th, 8th, 9th, and 10th Causes of Action)

The Maxim Defendants argue that Maxim Media cannot be subject to FEHA because "it did not regularly employ five or more persons during the relevant period."  MPA at 21.  But the only evidence for the Maxim Defendants' contention is the contents of the exhibits, which the Court may not consider in analyzing this motion.

Doe alleged that Maxim Media "regularly employ[s] five or more persons in the State of California."  FAC ¶ 4.  At this stage, that allegation is sufficient.  Although the Maxim Defendants argue that this is factually incorrect, the Court must accept Doe's allegations as true on a motion to dismiss.  *See Park*, 851 F.3d at 918

### H. Worker's Compensation Exclusivity Doctrine Does Not Bar Doe's Claims

The Maxim Defendants briefly argue that Doe's claims for negligence and negligent supervision are barred by the workers' compensation exclusivity doctrine.  *See* MPA at 22-23.  The Maxim Defendants point to California authorities purportedly showing that negligent supervision claims are typically barred.  *See* MPA at 23, citing *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 713-714 (1994); *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal.App.4th 1595, 1606 (1993).  The Court does not read *Fermino* or *Coit Drapery* as helpful to the Maxim Defendants' argument.  In *Fermino*, the Supreme Court of California held that false imprisonment claims are not barred by the workers' compensation exclusivity doctrine.  The court explained that the key question is "not the label that might be affixed to the employer conduct, but whether the conduct itself, concretely, is of the kind that is within the compensation bargain."  *Fermino*, 7 Cal.4th at 701.  In other words, "whether [the alleged tortious conduct] is the sort of employer conduct that can ever be viewed as a

normal aspect of the employment relationship." *Id.*  Risks of workplace injuries are a normal aspect, but risk of false imprisonment by one's employer is not.  *See id.*  In *Coit Drapery*, the court held that claims for "mere negligence" were barred, but that a "claim for negligence arising from her sexual harassment" was not.  *See* 14 Cal.App.4th at 1605-06.  The court explained that the allegations at issue suggested ratification of the intentional torts, and that it would be contrary to public policy to shift the risks of such conduct on to a workers' compensation insurer.  *See id.* at 1606-07.

The negligence and negligent supervision claims are predicated on allegations that the Maxim Defendants were aware of Herd and Hogan's harassing conduct and allowed it to continue. *See* FAC ¶¶ 195, 203-205, 213, 217-219.  And as discussed above, Doe has plausibly alleged ratification.  The Court finds that *Coit Drapery* controls.  *See* 14 Cal.App.4th at 1605-06.  Claims for negligent supervision based on sexual harassment that include plausible allegations of ratification are not barred by workers' compensation doctrine.  Under the test laid out in *Fermino*, it is not part of the employment bargain that one's employer will hire a supervisor who sexually harasses employees, and then ratify that supervisor's conduct. *See Fermino*, 7 Cal.4th at 701.  When this occurs, the workers' compensation exclusivity doctrine does not bar the claim.

## I.  Doe Has Properly Pleaded a Claim For Intentional Infliction of Emotional Distress (13th Cause of Action)

The Maxim Defendants argue that the claim for Intentional Infliction of Emotional Distress must fail because "the Maxim Defendants owed Plaintiff no legal duty to prevent the conduct of Herd or Hogan."  MPA at 23-24.  The Maxim Defendants argue there was no duty for three reasons: (1) Doe was not an employee of the Maxim Defendants; (2) Herd and Hogan were not employees of the Maxim Defendants; and (3) Doe did not notify the Maxim Defendants of Hogan and Herd's conduct.  *See id.*  These arguments fail.

As discussed above, Doe has plausibly alleged that she was hired by Herd on Maxim's behalf, and was an employee of the Maxim Defendants.  There are factual questions as to whether what occurred was actually sufficient to trigger an employment relationship, and the Court understands that the Maxim Defendants believe it is a fact that Doe was not an employee.  However, at this stage, the Court must take Doe's allegations as true, and cannot consider facts from outside

her FAC that are not subject to judicial notice.  This factual dispute will be settled later.  At this stage, her plausible allegation of employment is sufficient.  Employers owe duties to protect their employees, as the Maxim Defendants appear to concede. *See* MPA at 23-24; *see also* Cal. Lab. Code § 6400.

Doe has also plausibly alleged that Herd and Hogan were employees and/or agents of the Maxim Defendants.  Similar to above, there are factual questions, but the Court must accept plaintiff's plausible allegations as true at this stage.  *See Iqbal*, 556 U.S. at 678.  The Defendants' argument that there is no duty because Herd and Hogan were not employees fails.

The Court need not reach the third argument—whether Doe notified the Maxim Defendants—as the discussion above establishes that the Maxim Defendants owed a duty.

**J. Doe's Claim Based on Saint Lucia's Law Must be Dismissed (15th Cause of Action)**

The Maxim Defendants argue that Doe's cause of action based on the laws of Saint Lucia must be dismissed pursuant to Rule 12(b)(1), as the court does not have subject matter jurisdiction to hear it.  MPA at 24.  Doe did not address this argument at all in her Opposition, and thus appears to have conceded it.  *See John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (deeming issue waived where party "failed to develop any argument").  Based on this concession, the Fifteenth Cause of Action (for violation of Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act) will be dismissed without leave to amend.

**K. Leave to Amend**

As to the only claim dismissed—the 15th cause of action for violations of Saint Lucia's Equality Opportunity and Treatment in Employment and Occupation Act—Doe is denied leave to amend.  No amendment would cure the fundamental issues with this claim, which Doe waived any argument as to. *See Manzarek*, 519 F.3d at 1031.

## MOTION TO STRIKE

**I.   Applicable Law**

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating

spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). Motions to strike "are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Gaines v. AT&T Mobility Servs., LLC*, 424 F. Supp. 3d 1004, 1014 (S.D. Cal. 2019) (internal quotation marks omitted).

## II.   Discussion

The Maxim Defendants request that the Court strike "the Maxim Defendants . . . or at least Maxim Media" from the FEHA Claims.  Motion at 3.  This is based on arguments addressed above already, that the conduct is not sufficiently tied to California for FEHA to apply, and that Maxim Media is not subject to FEHA because it purportedly does not have five employees.  For the reasons discussed above, these arguments are without merit.  Accordingly, the Motion to Strike is DENIED.

## MOTION FOR MORE DEFINITE STATEMENT

## I.   Applicable Law

Pursuant to Federal Rule of Civil Procedure 12(e), a party "may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. Pro. 12(e).

## II.   Discussion

The Maxim Defendants request that, if the Court does not dismiss the claims, the Court order a more definite statement that clarifies several issues.  MPA at 25.  Specifically, the Maxim Defendants seek a statement describing:

> "all facts that occurred in California, all facts showing that Maxim Media, Inc. is subject to FEHA, all facts showing that the Maxim Defendants are her employer and Herd and Hogan's employer, all facts demonstrating how the Maxim Defendants "knew" or should have known about Herd or Hogan's conduct, all facts showing that the Maxim Defendants both received something of value relating to the alleged conduct, and all facts establishing a legal duty to Plaintiff on the part of the Maxim Defendants."

*Id.* The Court sees no basis for ordering such a statement.  A description of all facts supporting Doe's arguments can be requested via discovery such as interrogatories.  Doe need not provide this as part of her complaint at the motion to dismiss stage.  The Maxim Defendants cited no authority in support of this request, and the Court does not find Doe's FAC "so vague or ambiguous"

that the Maxim Defendants are not reasonably able to prepare a response.  *See* Fed. R. Civ. Pro.

12(e). The Motion for a More Definite Statement is DENIED.

<u>**CONCLUSION**</u>

For the reasons discussed herein, the court will take judicial notice of the two request facts

about Saint Lucia, but not of the contents of the Maxim Defendants' Exhibits.  The Fifteenth Cause

of Action is ORDERED dismissed, without leave to amend.  The Motion to Dismiss is DENIED as

to all other claims.  The Motion to Strike and Motion for a More Definite Statement are each

DENIED.


IT IS SO ORDERED.


Dated: May 19, 2023

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge